UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

CECIL THOMAS AND JOHN DEAN, on  :
behalf of themselves and all others similarly  :
situated,  :
   :
              Plaintiffs,  :      **Case 2:13-CV-02789-SJF-WDW**
   :
      -against-  :
   :
TXX SERVICES, INC. and PATRICIA  :
DOUGAN HUNT,  :
   :
           Defendants.  :

--------------------------------------------------------- x

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Jeffrey W. Pagano
Ira M. Saxe
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
(212) 223-4000
(212) 223-4134 (fax)

Attorneys for Defendants TXX Services, Inc.
and Patricia Hunt

# TABLE OF CONTENTS

I.      Introduction ........................................................................................................... 1

II.     Argument ............................................................................................................... 1

     A.      Plaintiffs Entered into Independent Contractor Agreements with TXX .............. 1

     B.      Plaintiffs have not disputed any of the elements of the FLSA independent
           contractor analysis ........................................................................................... 3

          1.      Defendants did not control the manner and means of the services
               provided by Plaintiffs .......................................................................... 3

          2.      Plaintiffs have failed to present evidence to dispute the fact that
               they had opportunity for profit and loss ................................................ 12

          3.      Plaintiffs do not dispute that they have significant skills and use
               independent initiative ........................................................................... 15

          4.      Plaintiffs have failed to dispute that their relationship with TXX
               was not permanent ............................................................................... 15

          5.      Plaintiffs have failed to create a genuine issue of material fact that
               they are integral to TXX's business ...................................................... 16

     C.      Plaintiffs have not disputed facts that support the NYLL independent
           contractor analysis ........................................................................................... 17

III.    Conclusion ........................................................................................................... 17

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bonnetts v. Arctic Exp., Inc.*
  7 F. Supp. 2d 977 (S.D. Ohio 1998) ........................................................... 15

*Luxama v. Ironbound Exp., Inc.*
  No. 11-2224(ES), 2013 WL 3286081 (D.N.J. June 27, 2013) ................... 14

*Major League Baseball Props. v. Salvino, Inc.*
  542 F.3d 290 (2d Cir. 2008)................................................................... 5, 16

*Martin v. Selker Bros*
  949 F.2d 1286 (3d Cir. 1991)...................................................................... 14

*Molina v. Coca-Cola Enters., Inc.*
  No. 08-6370, 2009 WL 1606433 (W.D.N.Y. June 8, 2009)......................... 2

*Ruiz v. Affinity Logistics Corp.*
  887 F. Supp. 2d 1034 (S.D. Cal. 2012)...................................................... 12

*Zents v. Baylor Trucking Co.*
  No. 5:11CV1941, 2013 WL 1500678 (N.D. Ohio Apr. 11, 2013) .............. 12

**STATE CASES**

*Rudbart v. N. Jersey Dist. Water Supply Comm'n*
  605 A.2d 681 (N.J. 1992).............................................................................. 2

*Shklovskiy v. Khan*
  709 N.Y.S.2d 208 (N.Y. App. Div. 2000) .................................................... 2

*Sofio v. Hughes*
  556 N.Y.S.2d 717, 719 (N.Y. App. Div. 1990) ........................................... 2

**REGULATIONS**

21 C.F.R. §1301.71, *et seq.* ............................................................................. 6

N.J. Admin. Code §13:45H-2.1, *et seq.* ........................................................... 6

N.Y. Comp. Codes R. & Regs. tit. 10, §80.110, *et seq.* .................................. 6

I.     **INTRODUCTION**

The undisputed evidence submitted to the Court demonstrates that Plaintiffs were independent contractors providing services for TXX, and that they were not employees under the Fair Labor Standards Act ("FLSA") or New York Labor Law ("NYLL").  Plaintiffs have not disputed any of the evidence presented by Defendants.  Indeed, Plaintiffs' own evidence contains admissions that demonstrate that they were not employees of TXX.

II.    **ARGUMENT**

A. <u>**Plaintiffs Entered into Independent Contractor Agreements with TXX**</u>

Plaintiffs have admitted that their business entities each entered into one or more Owner/Operator Agreements ("Agreements") with TXX, which indicated that they were independent contractors and dictated the terms of the independent contractor relationship.  Opp. at 9.  Plaintiffs' business entities, and other entities that provide delivery services for TXX ("Owner/Operators"), decide whether to enter into an Agreement to provide services. Declaration of Michael Mills ("Mills Decl."), ¶ 7.  Despite Plaintiffs' conclusory assertions to the contrary, Owner/Operators are not "forced" to sign Agreements and are not "required" to provide any services for TXX.  Owner/Operators cannot, however, provide services to TXX unless they have signed an Agreement.  The fact that they must sign Agreements does not, as Plaintiffs contend, make vehicle operators employees of TXX.  Indeed, this is the essence of the business.

Plaintiffs contend that certain individuals who submitted declarations in opposition to Defendants' Motion did not read or understand the Agreements that they signed, because they did not speak English well or otherwise.  Even if true, this assertion does not negate the existence or enforceability of an Agreement.  Under New York and New Jersey law,

1

individuals who sign contracts are charged with understanding the contract and the terms therein, regardless of whether they read the contract or subjectively understood it. *Shklovskiy v. Khan*, 709 N.Y.S.2d 208, 209 (N.Y. App. Div. 2000) ("A party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms."); *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 605 A.2d 681 (N.J. 1992) ("A party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect.").

Even where an individual has limited English ability, that individual has an affirmative duty to have the contract explained to him before signing it. *Sofio v. Hughes*, 556 N.Y.S.2d 717, 719 (N.Y. App. Div. 1990) ("Even assuming [plaintiff] was unable to understand the release, he should not have signed it before having it explained to him."); *Molina v. Coca-Cola Enters., Inc.*, No. 08-6370, 2009 WL 1606433, at *8 (W.D.N.Y. June 8, 2009) (even where an individual has an incomplete grasp of the English language, an agreement that he executed is enforceable because he presumptively understood it or should have made a reasonable effort to have it explained to him). The failure to undertake that duty does not discharge a party's obligations under the contract. Additionally, there were many previous iterations of the Agreement that Owner/Operators, including Plaintiffs and the three other declarants presented by Plaintiffs ("Plaintiffs' Declarants"), signed over the years. Each Agreement was signed by a representative of an Owner/Operator, and that representative initialed each page. Baquero Decl. ¶¶ 13-13, Exs. G-H; Mills Decl. ¶¶ 40-44, Exs. L-P. It is spurious for Plaintiffs to contend that they did not know the terms of the Agreement.

Plaintiffs further contend that TXX forced them to create business entities in order to perform services for TXX's customers. Opp. at 10. This contention is false. Most

2

Owner/Operators choose to operate a secure delivery service through a corporate entity, while others, for various reasons, have decided to utilize a "d/b/a" business structure. Mills Decl. ¶ 28. Owner/Operators choose to create business entities as necessitated by their business operations. *See* Baquero Decl. ¶ 6, Ex. A (Business Certificate for C&J Trucking, dated July 19, 1979). Many Owner/Operators have business cards, advertise on the web, and provide services for businesses distinct from TXX. Mills Decl. ¶ 28.

### B. Plaintiffs have not disputed any of the elements of the FLSA independent contractor analysis

#### 1. Defendants did not control the manner and means of the services provided by Plaintiffs

Plaintiffs have failed to present any evidence to dispute the fact that TXX did not maintain or exercise control over the means and methods of operation utilized by Plaintiffs sufficient to classify them as independent contractors. Indeed, as Defendants have established, Plaintiffs provided delivery services at their own convenience, could accept or reject engagements to provide delivery services, and were never given rules set by TXX controlling the means and method of performing the delivery services. Plaintiffs' delivery services were guided by customer requirements and applicable federal and state law regarding the secure handling of controlled substances.

##### a. Owner/Operators, and individual drivers, provide services at their own convenience

Plaintiffs do not dispute that they had the opportunity to engage others for their individual Owner/Operator business entities, either alongside Plaintiffs or instead of Plaintiffs. TXX has no control over who the Vendor selects to operate a vehicle in the Vendor's fleet, as long as the Vendor provides a copy of each individual's Driver's License to TXX, enabling compliance with the Government Requirements. Mills Decl. ¶ 31. In fact, Derek Lewis, one of

3

Plaintiffs' Declarants, took advantage of this opportunity. His Owner/Operator business entity, Derek D. Lewis, DBA, submitted drivers licenses to TXX for six other individuals to perform services for TXX pursuant to its Agreement with TXX. *See* Baquero Decl., Ex. I. Plaintiffs have not presented any evidence to dispute the declarations submitted in support of Defendants' Motion, in which Owner/Operators testified that they have engaged as many as twelve other vehicle operators to perform delivery services for TXX within their Owner/Operator business entities pursuant to an applicable Agreement. Zamora Decl. ¶ 12 (LZR Companies engage twelve individuals); Gonzalez Decl. ¶ 5 (stating that the JANBC Companies engage four individuals, and testifying that "I rarely perform such Services myself, and do so only when I conclude that it is needed, relying instead on the other individuals engaged through the JANBC Companies"). Neither Plaintiffs nor any of Plaintiffs' Declarants have denied that they had the same discretion to select vehicle operators, and that it was their choice not to do so. This freedom to engage other vehicle operators provided Plaintiffs and Owner/Operators to work at their convenience, the essence of owning a small business. If certain Owner/Operators chose not to exercise this discretion, and chose instead to directly provide delivery services, that choice is simply another manifestation of the fact that these individuals provide delivery services at their own convenience as independent contractors, not employees.

It is further undisputed that TXX does not require services for a minimum or maximum number of hours per week or at all. Plaintiffs allege that they provided delivery services for a significant number of hours per week, but nowhere do they allege that TXX required them to do so. Opp. at 7. As noted above, Owner/Operators have the freedom to engage vehicle operators to manage hours, to manage delivery schedules, or to increase their business revenue.

4

Plaintiffs further allege that when delivery services were performed, TXX required services within a certain timetable, by designating times to arrive at TXX's secure transfer point and times when deliveries were to occur.  Opp. at 20.  Defendants have already established that those times and deadlines were not set by TXX, but by customer requirements due to security concerns arising from the change of custody and control of controlled substances at the destination.  *See* Memo at 12-13 and cases cited therein.  Plaintiffs have not disputed this.[1] To the extent that Plaintiffs contend that they could not provide delivery services at their own convenience because deliveries would be assigned to other Owner/Operators if Plaintiffs did not timely appear or did not arrive at TXX's transfer point, this contention undermines this position. Owner/Operators are free to decide if and when they want to provide delivery services, but deliveries still need to be made to TXX's customers.  Mills Decl. ¶ 15.  Therefore, if an Owner/Operator has indicated that delivery services would be provided, and does not arrive to provide those delivery services or arrives too late to meet the customer's requirements without arranging for others to cover those deliveries, or simply refuses to provide deliver services, other Owner/Operators are provided with the opportunity to provide delivery services.  *Id.*  It cannot be the case that, to perform delivery services at their own convenience and maintain independent

---

[1] Plaintiffs' Opposition states that "TXX requires its Drivers to report to its warehouse between 5:30 a.m. and 5:45 a.m.," that "TXX assigns to Drivers all their scheduled stops and routes," and that "Drivers' schedules are determined by TXX."  These legal conclusions do not dispute the specific showing made by Defendants that these requirements are set by customer requirements and by regulation.  *See Major League Baseball Props. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory.").  Furthermore, Plaintiffs and Plaintiffs' Declarants lack the requisite knowledge to make such assertions about TXX and the mandates that it receives from its customers.  As such, these allegations do not create a genuine issue of material fact as to the evidence presented by Defendants.  *Id.* ("affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein") (quoting Fed. R. Civ. P. 56(e)).

5

contractor status, Plaintiffs should be entitled to ignore the consequences to their business simply because refused delivery services are awarded to competitors. Such is nonsensical in the context of determining independent contractor status.

As a broker that contracts with concerns which provide delivery services to accomplish same-day delivery in accordance with the outcome sought by the destinations, as communicated by TXX's customers (the wholesalers), TXX must ensure that although services performed by Owner/Operators are performed in accordance with the security requirements of the U.S. Drug Enforcement Agency ("DEA") regulations and New York and New Jersey law. Mills Decl. ¶ 5; *see also* 21 C.F.R. §1301.71, *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 10, §80.110, *et seq.*; N.J. Admin. Code §13:45H-2.1, *et seq.* The same DEA and state law security requirements are applicable throughout the drug transportation network, from the drug manufacturers to the pharmacies. As a broker, TXX has agreed to inform each Owner/Operator of the security requirements, as construed by the TXX customer, for the last mile delivery service. *Id.* The Owner/Operators understand, and have agreed in writing, that when in possession of a controlled substance, compliance with the DEA regulations and state law is necessary. *Id.* TXX sets no such requirements. *Id.*

TXX's secure transfer location typically receives the controlled substances from the transportation network before 5:30 a.m. each day. Mills Decl. ¶ 12. By providing a secure transfer point of limited duration, not a warehousing service, TXX enhances the security of the "last mile" change of custody and control within the drug distribution system for drug manufacturers, drug wholesalers and drug transportation providers, all of which must comply with customer expectations and the same DEA and state law security regulations. *Id.* In accordance with DEA regulations and state law, after the delivery by the transporter of the

6

controlled substances, the secure TXX transfer point is "locked down." *Id.* Owner/Operators arrive at the secure TXX transfer point between 5:30 a.m. and 7:30 a.m., as necessary to provide the delivery service expected by the TXX customers, and must remain on the premises due to security needs. *Id.* Each Owner/Operator that has bid or has been awarded engagements to provide delivery service under the Agreements, and that arrives before 5:50 a.m., must comply with a security check by a TXX facility guard before entrance is allowed to the secure transfer point. *Id.* After 5:50 AM, no Owner/Operator is allowed in the secure TXX transfer point through the secure warehouse area, because controlled substances are openly accessible only by Owner/Operators inside the warehouse that have passed through the warehouse security system. *Id.*

An Owner/Operator that arrives after 5:50 a.m. is required to enter the TXX location from a different entry point, which requires a different security check, to enable the Owner/Operator, including signing a security sheet noting the time of entry into the alternative secure entry point. Mills Decl. ¶ 12. Depending upon when an Owner/Operator appears at the TXX location, after the 5:50 a.m. lock down commences and before 7:30 a.m. when the lock down ends, an untimely Owner/Operator may or may not have the opportunity to provide delivery service that day. Mills Decl. ¶ 14. This is because other Owner/Operators already within the secure warehouse may have already bid or have accepted an offer to provide the secure delivery service of controlled substances of the tardy Owner/Operator, including offering and agreeing to provide service to a certain stop or the entire geographical area service by the tardy Owner/Operator. *Id.* At that point, it is within the discretion of the tardy Owner/Operator to remain in the secure premises to bid or agree to provide alternate service to an alternative location, assuming an alternative service opportunity arises, or to leave the TXX location. Mills

Decl. ¶ 15.  If the tardy Owner/Operator remains but does not choose to bid on alternative delivery service opportunities or no service opportunity is available because it has already been absorbed by another Owner/Operator(s), the Owner/Operator generates no revenue from TXX that day. *Id.*

The Owner/Operator or selected vehicle operator decides the sequence of deliveries to the destination, as long as the customers' service requirements are achieved, so that security is maintained. Mills Decl. ¶ 16.  The roads taken, the number of stops made or effort necessary to achieve the outcome sought are solely within the discretion of the Owner/Operator or its selected vehicle operator, including who will operate the vehicle. *Id.*  The Owner/Operator or selected vehicle operators do not have a "say" in the content of the customer's manifest of deliveries, as it represents the outcome of the service to be provided, which the Owner/Operator or selected vehicle operators can accept or reject, depending upon the Owner/Operator's particular business strategy or the needs of the Owner/Operator or its selected vehicle operators. *Id.*

Each Owner/Operator and each vehicle operator identified by a Owner/Operator to provide the secure delivery service under the Agreement is issued an identification card, permitting access to the TXX location. Mills Decl. ¶ 11.  These identification cards also allow destinations to adequately identify the legitimacy of the Owner/Operator delivering the controlled substances, thereby enhancing the proper and secure distribution of safe controlled substances, as well as the transfer of custody and control at the destination. *Id.*

Plaintiffs also do not dispute that they were free to accept or reject engagements to provide delivery services. Plaintiffs' Opposition only contends, without any factual support, that they were threatened that other Owner/Operators would do their deliveries if Plaintiffs could

8

not perform the services or were late, which is exactly how the system works on a daily basis. Opp. at 4-5.  As noted above, where Owner/Operators have agreed to perform specific services but refuse, TXX has the contractual right to ensure that the delivery services are nevertheless completed as required by the destination.   If the services are not completed, another Owner/Operator can decide to perform the deliveries so that customers' needs can be met and security is maintained.  This is not "discipline" for rejecting an engagement, but a consequence of a decision made of the Owner/Operator in order to ensure that the deliveries are effectuated. This does not make the Owner/Operators employees. *Browning,* 885 F. Supp. 2d at 600-601 (where plaintiffs rejected assignments, that assignments were offered to other waiting drivers before assignments would be offered to plaintiffs again was not evidence of disciplining plaintiffs, and plaintiffs remained independent contractors).

> **b.     It is undisputed that Plaintiffs had the opportunity to take on other customers**

Plaintiffs have not disputed, nor can they, that Owner/Operators are entitled to perform work for other businesses or customers, either as a delivery service or otherwise. Instead, Plaintiffs merely contend that "TXX prohibits Drivers from contracting directly with TXX's customers" and that Plaintiffs "depend entirely on TXX for all of their income."  Opp. at 3, 4.   Neither of these assertions dispute the evidence submitted in support of Defendants' Motion that Owner/Operators have the opportunity to perform work for *other* customers. Owner/Operators are able to provide services to other entities apart from TXX, including TXX customers, as long as such services do not conflict with DEA regulatory and state law security requirements. Mills Decl. ¶ 19.   Indeed, Owner/Operators have provided services to TXX customers in the past, independent of TXX, even taking customers from TXX.  *Id.*

c.   **TXX does not require any qualifications of Owner/Operators**

Plaintiffs assert that TXX required Owner/Operators have no specific pre-qualifications prior to becoming an independent contractor and performing services. Opp. at 22. This is yet a further admission that TXX does not control the manner and means by which Owner/Operators perform services for TXX.   Indeed, this statement demonstrates that Owner/Operators need no prior experience, except the ability to provide a secure delivery service and be able to perform the service consistent with DEA requirements. Because the size of the loads of controlled substances routinely to be delivered within a geographic area can be relatively defined by weight and size, TXX has no expectation that a Owner/Operator have access to a vehicle with a gross vehicle weight rating in excess of 10,000 or 26,000 pounds, nor is there any expectation that a Owner/Operator provide a driver/operator possessing a commercial driver's license. Mills Decl. ¶ 11.   Unless customer security expectations, consistent with DEA requirements and state law, provide otherwise, the Owner/Operator identifies and selects the vehicle to be utilized each day, as well as the driver assigned to provide the secure delivery service. *Id.*

d.   **TXX does not discipline or manage Owner/Operators**

No Owner/Operator has ever been "fired," "disciplined," or otherwise "managed" by TXX.[2]  Mills Decl. ¶ 16.   Rather, Owner/Operators either perform delivery services in accordance with customer expectations as to outcome sought or they do not, and such performance is within the control of the Owner/Operator.  If an Owner/Operator decides to not

---

[2] Plaintiffs' use of these terms in the Opposition are mere legal conclusions that assume, without proving, that Plaintiffs had an employment relationship with TXX.  Such conclusions are insufficient to demonstrate that Plaintiffs were employees.

provide delivery service, or provides poor service to the customer, other Owner/Operators will offer to provide interim or replacement delivery service in this competitive business environment, depending upon the business strategy of the competitor. Mills Decl. ¶ 7. The consequences of the failure to perform in accordance with the outcome desired by the customer may mean a lost opportunity to perform those services, particularly when other Owner/Operators offer to perform the delivery service and have demonstrated a willingness and ability to do so through past performance. Mills Decl. ¶ 26. Similar to any business that performs poorly, the desire to offer opportunities to provide further delivery service is reduced, particularly when there are alternative Owner/Operators willing to supply the delivery service. The Owner/Operators compete to provide delivery services, which establishes a tenet of the independent contractor model, in the context of controlled substance delivery within the overall drug transportation system.

Plaintiffs contend that TXX controls the delivery services they provide because Owner/Operators are required to use scanners and obtain receipts while making deliveries, and because some Owner/Operators pay fees to TXX for certain administrative functions. Opp. at 9. Defendants have already demonstrated that these factors do not evince an employee relationship. Scanners and receipts for delivery signed by the recipients, are required by TXX's customers in order to track controlled substances and maintain security as required by DEA regulations and New York and New Jersey law. Mills Decl. ¶ 27. Owner/Operators decide whether to provide their own scanners or rent them from TXX. Mills Decl. ¶ 8. Owner/Operators can also choose to submit a written description of the services performed or use the TXX service to account for the vendor's services. Mills Decl. ¶ 51. The DEA requires the completion of DEA Form 222, known as Form CII, in relation to the transportation of certain categories of controlled substances

11

transported by Owner/Operators.  Mills Decl. ¶ 5.  *See, e.g., Ruiz v. Affinity Logistics Corp.*, 887 F. Supp. 2d 1034, 1041-42 (S.D. Cal. 2012) (requirements to comply with federal regulations were not evidence of the defendant's control over the plaintiffs).

As to accident insurance, Owner/Operators  determine whether or not to secure coverage through their own resources or through TXX.  Mills Decl. ¶ 16.   Owner/Operators can and do supply their own accident insurance.  Zamora Decl. ¶ 6.  TXX charges the costs of providing insurance coverage to Owner/Operators only if Owner/Operators choose not to provide their own. Mills Decl. ¶ 8.    *See Zents v. Baylor Trucking Co.*, No. 5:11CV1941, 2013 WL 1500678, at *11 (N.D. Ohio Apr. 11, 2013) ("[plaintiff] cannot rely upon her voluntary use of the products and services offered by Defendant as evidence of control exercised by Defendant").

Training to provide delivery service for Owner/Operators is not provided by TXX, as Defendants have demonstrated.  Memo at 9.  However, when scanners were first introduced as a further security device, Owner/Operators choosing to utilize the scanners made available by TXX were provided with demonstrations as to how to operate and utilize the device. The scanner demonstration occurred in or around July 2009.  Mills Decl. ¶ 27.

For each of the foregoing reasons, TXX did not control the manner and means by which Plaintiffs and other Owner/Operators performed delivery services.  As such, Plaintiffs were independent contractors.

### 2. Plaintiffs have failed to present evidence to dispute the fact that they had opportunity for profit and loss

Defendants have established that, based upon the business strategy of each Owner/Operator, some Owner/Operators have made significant investments in their businesses while other Owner/Operators have invested less, under their Agreements.  Memo at 18-19.

Plaintiffs have not disputed this evidence or made any allegations that they have not made investments in their businesses. Additionally, Plaintiffs have admitted that they have opportunities for loss in performing delivery services. Opp. at 22. That is the nature of being an independent contractor.

Owner/Operators run their own businesses providing delivery services to TXX's customers. Zamora Decl. ¶ 1. Much like any business, how well the Owner/Operators' businesses succeed depends entirely on the strategy deployed and the effort of the Owner/Operators. Gualipa Decl. ¶ 25; Gonzalez Decl. ¶ 25; Gerlett Decl. ¶ 29; Zamora Decl. ¶ 31. Being an Owner/Operator allows participation in the "American Dream," if a goal is to build a successful and growing delivery business operation, through the exercise of discretion to take risk or manage risk. Some Owner/Operators have built businesses from the ground up, adding additional vehicles, engaging persons to operate vehicles to provide additional delivery services, and bidding on additional delivery engagements. Zamora Decl. ¶ 5. Other Owner/Operators, like Plaintiffs, have chosen not to build a business beyond a single delivery vehicle and a single area in which they provide delivery services. This choice does not negate the fact that the Owner/Operators have the opportunity for growth, profit and risk, it only shows that they have not taken advantage of that opportunity for whatever strategic reason.

Plaintiffs have asserted that they have no opportunity for profit because "[t]he most important method and manner . . . to earn more profits would be increase [sic] their rate of pay and number of stops on their delivery routes." Opp. at 21. Plaintiffs contend that Owner/Operators have no opportunity for profit because Defendants control those variables. *Id.* However, where Plaintiffs are paid on a per-delivery basis, Plaintiffs have an opportunity for profit "by acquiring additional trucks and employing drivers to assist with hauling cargo."

*Luxama v. Ironbound Exp., Inc.*, No. 11-2224 (ES), 2013 WL 3286081, at *5 (D.N.J. June 27, 2013); *see also Martin v. Selker Bros*, 949 F.2d 1286, 1294 (3d Cir. 1991).

TXX offers to pay Owner/Operators on a per-stop basis, or depending on the negotiations some Owner/Operators are paid a single rate for all deliveries. Mills Decl. ¶ 18. The price paid for each stop is determined through negotiations between TXX representatives and each Owner/Operator. *Id.* Each Owner/Operator is free to demand a higher per-stop rate, but another Owner/Operator may agree to provide the same delivery service for less than the original Owner/Operator demanded. *Id.* As a consequence, prices per stop vary by Owner/Operator and/or by geographical area, depending upon the density of the services provided by the Owner/Operator. *Id.* Some Owner/Operators are less aggressive in negotiations with TXX and choose to accept what is initially offered by TXX, while other Owner/Operators incrementally grow their business revenue by adding more stops to existing geographical areas, thereby reducing their cost and increasing margins. *Id.* Other Owner/Operators choose to simply reject whatever TXX offers. *Id.* The success or failure to negotiate a particular per-stop rate by an Owner/Operator often depends upon the demand and the willingness for other Owner/Operators to compete and accept a different price. *Id.*; *see also  Luxama* at *6 ("The issue is whether Plaintiffs have an opportunity to make a profit, not whether they are 'successful in capitalizing on that opportunity.'"). That an Owner/Operator might lose deliveries to a competitor Owner/Operator willing to provide services at a lower price does not make the negotiations "illusory." Quite the opposite, such demonstrates the essence of competition. Likewise, as discussed in section II.B.1, *supra*, Owner/Operators are able to provide services to other entities apart from TXX, including TXX customers, as long as such services do not conflict with DEA regulatory and security requirements. Mills Decl. ¶ 19.

14

### 3.   Plaintiffs do not dispute that they have significant skills and use independent initiative

Defendants have established that Owner/Operators have significant skills, including freight-management, business management, handling of controlled substances, and knowledge of roadways.  Memo at 19-20.  Defendants have further presented evidence that Owner/Operators, to varying degrees, use independent initiative in their businesses and in performing delivery services for TXX customers.  Memo at 20.  Plaintiffs only contend that TXX did not *require* certain pre-qualifications, but they do not dispute that Plaintiffs and other Owner/Operators have skills.  Plaintiffs also contend that holding a driver's license and doing deliveries are not special skills.  Opp. at 22.  As Defendants have established, and Plaintiffs do not dispute, Owner/Operators have greater skills than possessing a driver's license, driving a vehicle, or simply making deliveries.  These additional skills have, in other cases, demonstrated that individuals are independent contractors, not employees.  *Bonnetts v. Arctic Exp., Inc.*, 7 F. Supp. 2d 977, 982 (S.D. Ohio 1998) ("The job requires the skill of handling a large vehicle, detailed knowledge of the national roadways, and a high level of stamina to be able to make long trips without fatigue.").

### 4.   Plaintiffs have failed to dispute that their relationship with TXX was not permanent

Plaintiffs contend that they have shown permanence of their relationship with TXX because they performed delivery services for TXX for substantial time periods.  Opp. at 23. Such evidence only demonstrates that the Owner/Operator were successful competitor.  Mills Further, Plaintiffs have ignored the substantial evidence presented by Defendants that Owner/Operators have temporary relationships, governed by specific terms in their Agreements that the engagement lasts for 90 days, subject to renewals, and is terminable in accordance with the terms of the Agreements, including appropriate notice.  Memo at 21; Mills Decl. ¶ 29.  This

15

is sufficient to establish that he relationship is not permanent. *See Browning,* 885 F. Supp. 2d at 609-10 (the independent contractor agreement lasted for one year, with the possibility of renewed one year terms, and was terminable at will by either party, and therefore the relationship was not a permanent one); *Nichols,* 364 F. Supp. 2d at 631 (same).

**5.      Plaintiffs have failed to create a genuine issue of material fact that they are integral to TXX's business**

TXX is a licensed Property Broker of Transportation that arranges for transportation of freight by motor carrier and provides a secure transfer point for the change of custody and control of controlled substances.  TXX is not in the business of providing delivery services.  *Id.*  Plaintiffs assert, without factual support, that "[o]ther than delivery [sic] merchandise to its customers, TXX has no other business."  Opp. at 3.  This legal conclusion, without any personal knowledge as to the specific nature of Defendants' business, does not create a genuine issue of material fact as to whether Plaintiffs and Owner/Operators are integral to TXX's business.  *See Major League Baseball Props. v. Salvino, Inc.,* 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory.").  Furthermore, Plaintiffs have not disputed that Owner/Operators are interchangeable, and therefore, Plaintiffs themselves are not integral to TXX's business.  Memo at 21-22.

For each of the foregoing reasons, Plaintiffs are unable to state a claim under the FLSA.  Plaintiffs' Complaint must be dismissed in full with prejudice.  *See, e.g., Luxama* at \*8 (dismissing complaint where plaintiffs were independent contractors and therefore "unable to state a plausible claim under the FLSA since relief under the FLSA is limited to 'claims against employers whose employees have not been properly paid in accordance with the statute'").

16

## C. Plaintiffs have not disputed facts that support the NYLL independent contractor analysis

Many of the factors analyzed under the NYLL standard for determining employment status correspond to the first element of the FLSA test. As demonstrated in Section II.B.1, *supra*, Plaintiffs cannot dispute that they provide delivery services at their own convenience, do not provide services on a schedule fixed by TXX, and that they had the opportunity to provide services to customers besides TXX. Each of these factors weigh in favor of a finding that Plaintiffs are independent contractors for the purposes of the NYLL.

As for the remaining elements of the NYLL test, Defendants have established that Plaintiffs' Owner/Operator entities were paid a per-delivery rate for services performed and that Plaintiffs and other Owner/Operators were not on TXX's payroll. Memo at 14-15. Defendants have also established that Plaintiffs did not receive fringe benefits. Memo at 14. Plaintiffs received substantial tax benefits as a result of their Owner/Operator entities and their independent contractor status. Memo at 15-16. Plaintiffs have not presented any evidence to dispute these facts, and as such, these factors must weigh in favor of a finding that Plaintiffs were independent contractors.

## III.  CONCLUSION

For all of the foregoing reasons, the undisputed evidence submitted to this Court establishes that Plaintiffs' Complaint is insufficient to state a claim upon which relief should be granted, because Plaintiffs have failed to plead sufficient facts to demonstrate that they were employees under the FLSA and/or NYLL, or that Defendants were employers under the same statutes. Furthermore, there is no genuine issue of material fact that Plaintiffs were independent contractors. Because Plaintiffs were independent contractors, the case must be dismissed in its entirety with prejudice.

Dated: November 5, 2013
      New York, New York

Respectfully submitted,

**CROWELL & MORING LLP**

By: _____
      Jeffrey W. Pagano

Ira M. Saxe
590 Madison Avenue, 20th Floor
New York, New York 10022
(212) 223-4000
(212) 223-4134 (fax)

Attorneys for Defendants TXX Services, Inc.
and Patricia Hunt

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within DEFENDANTS'
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE
PLEADINGS was served on November 5, 2013 via e-mail and first class United States Mail
upon:

> Douglas Weiner, Esq.
> Douglas@jhllp.com
> Joseph & Kirschenbaum LLP
> 233 Broadway, 5th Floor
> New York, NY 10279

Dated:  November 5, 2013
      New York, NY

                                           Ira M. Saxe

NYACTIVE-13568383.1

19