IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CECIL THOMAS AND JOHN DEAN on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>TXX SERVICES, INC and PATRICIA DOUGAN HUNT<br>Defendants. | 13-cv-2789 (SJF)(WDW) |

### Declaration of Cecil Thomas

1. I, Cecil Thomas, under penalty of perjury, affirm the following:

### BACKGROUND:

2. TXX Services, Inc. is in the business of delivering merchandise to pharmacies and other retail locations. TXX has no other business aside from delivery.

3. I have been employed by TXX over fifteen years to deliver their customers' merchandise to retail locations, hospitals, and drug stores and pharmacies such as Brothers Pharmacy, Hillside Chemists, Apex, Guy Brewer Pharmacy, and others.

4. TXX classified me as an independent contractor, however, I am not in business for myself and I depend entirely on TXX for all of my income.

5. TXX did not require that I have prior experience in order to work for them.

6. I do not have a commercial driver's license, and TXX did not require that I have one.

7. While I am technically allowed to work for other delivery companies, I have no

1

time to do so. I work about 12 hours a day for TXX, many of those hours go unpaid since I am paid per stop, so I could not possibly augment my income by taking a second job. Also, because the products I carry are pharmaceutical, I cannot take other types of cargo with me on my route, thus taking away my opportunity to work for another carrier. I am totally economically dependent on TXX.

8.  TXX did not require that I have prior experience in order to work for them.

9.  TXX required that I purchase my own van in order to deliver their customers' products, which I sometimes drive for personal use.

10. TXX requires I use a van of a certain size for deliveries. I purchased a Ford E-150 cargo van, which weighs less than 10,000 pounds.

11. I work under the supervision, direction and control of the dispatchers, Tiki Sangrin and Jose Portello, and the managers James Becker and Tom Guiliani of TXX.

12. Roughly ten years ago TXX made us stop wearing their uniforms because an ex-coworker of mine sued TXX for misclassification. The uniform helped to show that he was actually an employee for TXX. Since then, we have been given many T-shirts that say either 'TXX' or 'transportation', but they stopped giving us these shirts after I filed this lawsuit.

13. TXX gave me a TXX identification card and required me to bring it to work each day.

## THE WORKDAY

14. TXX did not allow me to turn down deliveries or shifts. If I or other drivers turned down deliveries or shifts, we were threatened with having our route taken away.

15. If I choose to refuse extra work that TXX directs me to perform, a dispatcher can

take away my route, tell me to go home, or put me on standby, thus economically injuring me.

16. In order to take time off, I must request vacation days, and I must secure the approval of a dispatcher or floor manager, or else I am threatened with having my route taken away.

17. TXX currently requires me to report to a TXX warehouse and sign in at 5:30 a.m. to pick up TXX's daily merchandise for delivery at the beginning of my workday.

18. When a driver arrived after 5:45 a.m., TXX would lock him out of the warehouse even though the driver had ample time to load his truck and start his route in a timely manner.

19. Under these circumstances, the driver could have stops taken from his or her route, could be told to go home without work, or could be made to wait without pay as a "standby".

20. When a driver arrives late, TXX also directs him to sign a sheet stating that he arrived late. TXX keeps this information on file and uses it to make deductions from drivers' pay.

21. Once you arrive at the TXX warehouse in the morning, TXX does not permit you to leave, and I am required to wait on the premises until the merchandise is ready for delivery. I usually wait between one and three hours without pay until TXX tells me that I am ready to start delivering.

22. Before 2009, TXX had workers whose job it was to prepare cargo for delivery. Since then, each driver has to organize and load cargo at the warehouse and is not paid for time spent there. The hours I spend working at the warehouse are all unpaid.

23. TXX determines the manner and means of how I am to perform my work. Both

3

the schedule and route which I work are given to me by TXX and are not under my control. The schedule is determined by TXX. I must meet the time schedule required by TXX to make the deliveries.

24. TXX gave me a manifest each and every morning. This manifest details the stops I have to make and what cargo I have to deliver. I had no say in the content of this manifest or the sequence of deliveries TXX required me to make.

25. If I did not make a delivery by the specified time, or made deliveries in an order that varied from what TXX required, a dispatcher or floor manager called me to reprimand me.

26. TXX monitored my movements on the route each day via a GPS tracking system.

27. The route I worked was substantially similar every day. My route was the same each day, Monday through Friday. The route I drove on Saturdays and Sundays was different from the one I worked during the week, but I worked the same route each Saturday and Sunday.

28. TXX requires that I bring receipts to each customer and have that receipt signed. TXX also requires that I bring that receipt back to their office and give it to my manager. I am required to return manifests and receipts on a daily basis.

29. After the completion of my morning route, I then performed an afternoon route. For the afternoon route, TXX requires that I arrive at a different warehouse at 2:30 pm. TXX also required that I arrive at the warehouse with a full tank of gas, to ensure that I finish deliveries within their expected time frame.

30. At the end of my workday TXX requires me to verify I have completed my deliveries. TXX requires me to telephone a dispatcher at the conclusion of my deliveries and to return empty containers ("totes") to the TXX Warehouse. I do not get paid for my time returning

4

empty totes, returned merchandise from customers, or submitting C2 and other forms to TXX's management.

31. Prior to the beginning of this lawsuit, $20 was automatically deducted from my paycheck each week in order to pay for a TXX vehicle to pick up totes and returns from my route.

32. I regularly worked, on the average, fifteen hours a day Monday through Friday, and seven hours on Saturday and Sunday for an average weekly total of eighty-nine hours, but I was never paid overtime. Monday through Friday I typically finished work between eight and nine pm, and on Saturday and Sunday I worked from five am to twelve pm.

## TXX's CUSTOMERS

33. I have no business relationships with any of TXX's customers or with their customers' employees. I work directly for TXX and I have no working relationship with any other company.

34. I was not allowed to contract directly with TXX's customers or to work as a delivery driver for TXX's customers without going through TXX. TXX prohibited me from having contracts with any of TXX's customers for whom I made deliveries.

35. When merchandise is not delivered on time, TXX's customers complain directly to TXX.

36. TXX has a policy prohibiting all drivers from mixing returns from Bellco with those from AmeriSource (distributors of pharmaceutical merchandise). Early in 2013, complying with TXX's policy, I refused to pick up a return from a Bellco customer, because I had AmeriSource merchandise in my van. The TXX customer called and complained to TXX which

resulted in TXX taking that stop off of my route. When Bellco contacted TXX in order to resolve the problem, TXX put the stop back on my route. After a second complaint from TXX's customer to TXX, TXX took my stop away again. All this was done without any input from my or an opportunity for me to speak on behalf of myself in order to resolve the issue. By taking away this stop, TXX reduced my income.

## METHOD OF PAY

37.     TXX pays me per stop, regardless of how big or small the cargo is for that stop. TXX sets the rate of pay per stop.

38.     While TXX claims I have a right to negotiate the rate I receive per stop, that "right" is illusory as I have never done so. When I asked for more pay, I was told that they will find someone else to do the work.

39.     I did not have the ability to negotiate prices with TXX's customers or to change prices. TXX determined the delivery charges without any input from me.

40.     TXX informs me of my pay rate verbally, not through writing.

41.     I am often paid less than I was promised for stops I make. I have consistently submitted discrepancy sheets for payment corrections week after week.

42.     When I began working for TXX, I signed a contract saying that I would be receiving a commission of 51% on each stop I make.

43.     I forced to sign a new contract at least once each year. When TXX hands me a new contract I am told that if I do not sign it I will have my route taken away, which is the same as being fired. These contracts my change the structure of my pay, but since I cannot afford to lose my job which is my only source of income, I feel like there is no longer a point in even

6

reading what TXX requires me to sign.

44. Because of the frequency with which I am coerced into accepting new pay structures, I feel the original contract I signed has been breached. I am no longer receiving the commission of 51% that I was promised in the one contract I was able to sign with full consent.

## DEDUCTIONS FROM PAY

45. Each week TXX takes deductions from my pay check of approximately $180.00 in administrative fees, $55.00 for insurance, and $15.00 for a radio scanner. These deductions are unilaterally made by TXX on each paycheck I receive.

46. TXX also fines drivers, for example Joe Morris, for not following company policies such as arriving on time for work.

## MANDATORY TRAININGS

47. I was required to attend mandatory meetings and training sessions. For example, dispatchers at TXX called a meeting of all drivers and gave us a training session on how to use scanners to sort out and load TXX's merchandise.

48. In 2010, drivers were required to attend a meeting in the evening to discuss work operations, as well as a new contract given to us. The meeting was held by Donna Levantini.

## OTHER REQUIREMENTS

49. TXX required me to create a business name in order to continue working for them. TXX directed me to Donna Levantini at an organization called the Contractor Associates of the North East (CANE) for this purpose. I have been told that CANE is owned and operated by family relatives of Defendant Patricia Dougan Hunt.

50. I have not advertised my "business name", nor have I bought an ad in the Yellow Pages.

51. TXX requires that I purchase accident insurance while on the job. TXX will not provide work if I do not have this insurance. If I do not purchase it on my own, TXX makes deductions from my pay for it.

52. TXX performed a background check on me before I began working with them.

53. In order to work as a driver for TXX, I was required to sign a contract that said I was an independent contractor.

54. TXX has the power to terminate my employment at will. This rule applies to all drivers.

55. TXX requires that I tint the windows on my van in order to continue performing work for them.

### RETALIATION

56. TXX has threatened two members of this lawsuit, Derek and Patricia, with termination for taking time off that they had previously requested and that TXX had approved in advance. TXX has made such threats to drivers who have joined this lawsuit, but not to drivers who have not joined this lawsuit.

57. TXX has directed drivers who joined this lawsuit to submit new bid forms, which require drivers to re-bid on their existing routes. The only drivers to whom TXX has targeted for re-bidding are drivers who joined this lawsuit, Joe Morris, Izzy Dison, and me.

58. The drivers who have been directed to submit new bids forms have also been threatened with having their routes taken away if they refuse to submit the bid form.

TXX discriminates against and reprimands drivers involved in this lawsuit.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: __16__, 2013

    New York, NY

*(signature)*

**Cecil Thomas**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2013, I caused to be electronically filed a true and correct copy of the foregoing DECLARATION OF CECIL THOMAS utilizing the Court's CM/ECF system, which will automatically send notice of such filing to Plaintiffs' following attorneys of record listed below:

>Douglas Weiner, Esq.
>JOSEPH & KIRSCHENBAUM LLP
>233 Broadway, 5th Floor
>New York, NY 10279


Dated: November 5, 2013
      New York, NY

*Ira M. Saxe/s/*
      Ira M. Saxe