**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**CECIL THOMAS AND JOHN DEAN on**
**behalf of themselves and all others similarly**          **13 CV 2789 (SIL)**
**situated,**

                        **Plaintiffs,**

        **v.**

**TXX SERVICES, INC and PATRICIA**
**DOUGAN HUNT,**

                        **Defendants.**
-----------------------------------------------------------x

### PLAINTIFFS' COUNTER-STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

        Pursuant to Local Civil Rule 56.1, Plaintiffs submit their counter-statement of material fact in opposition to Defendants' motion for partial summary judgment.[1]

### PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

**A. Overview**

    1.      Plaintiffs admit the assertions in this paragraph.

    2.      Plaintiffs admit the assertions in this paragraph.

    3.      Plaintiffs admit the assertions in this paragraph.

**B. The Business of TXX**

    4.      Plaintiffs admit that TXX was a licensed broker as of August 27, 2010 and obtained a surety bond as of December 21, 2012.  (Schulman Exs. 39, 40; Pagano Ex. 321 (Mills Decl.)

---

[1] Plaintiffs cite herein the declarations and exhibits submitted by the parties, which are referred to by declarant's last name and exhibit number.  The Pagano exhibits and Mills, Zamora, Gonzalez, Gerlett, and Gualipa declarations were submitted by Defendants in support of their motion.  All other exhibits and declarations are submitted by Plaintiffs with their opposition papers.

Exs. A, B.)  All other factual assertions in this paragraph are not supported by citation to relevant and admissible evidence.  Accordingly, no further response to this paragraph is necessary.

5.      Plaintiffs admit the assertions in this paragraph.

6.      Plaintiffs admit the assertions in this paragraph.

7.      Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.) ¶ 3 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 343 (S. Gonzalez Decl.) ¶ 3 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 3 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 3 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  In addition, the characterization of Transportation Service Providers as people "who have exercised discretion" to provide transportation services is a conclusion and/or argument that is not the proper subject of a 56.1 statement.  Accordingly, no response to this paragraph is necessary.

8.      Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-

In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.) ¶ 6 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 6 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 6 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 6 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  In addition, the assertions that Opt-In Plaintiffs "exercise . . . discretion" are conclusions and/or arguments that are not the proper subject of a 56.1 statement.  Accordingly, no response to this paragraph is necessary.  To the extent a response is necessary, Plaintiffs deny that Opt-In Plaintiffs use other drivers or helpers "in order to enhance . . . efficiency . . . and reduce operating costs" and deny that Opt-In Plaintiffs are not subject to TXX or Shipper rules.  (Armstrong Decl. ¶¶ 15, 21 (rules regarding returning paperwork, empty totes, and returned merchandise to TXX); Cunningham Decl. ¶¶ 31-32 (same); Grant Decl. ¶ 44 (same); Marin Decl. ¶¶ 22-23 (same); Morris Decl. ¶ 33 (same); Ortellado Decl. ¶ 29 (same); *see also* Ortellado Decl. ¶¶ 18-19, 45-52 (declarant used helpers at TXX's direction, even when it was unprofitable to do so); Cunningham Decl. ¶¶ 49-50 (TXX has arranged for drivers to pick up paperwork or freight from each other); Armstrong Decl. ¶ 33 (same); Dean Decl. ¶¶ 23, 25 (same); Morris Decl. ¶ 34 (same); Pagano Ex. 364 (Lindsay Dep.) 106:11-18, 107:12-23, 109:2-6 (same).)

9.      Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the

actions of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations. (Pagano Ex. 322 (Zamora Decl.) ¶ 16 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 12 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 14 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 12 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").) Accordingly, no response to this paragraph is necessary. To the extent a response is necessary, Plaintiffs deny the assertions in this paragraph. (Cunningham Decl. ¶ 69; B. Gonzalez Decl. ¶ 50; Henry Decl. ¶ 51; Marin Decl. ¶ 33; Morocho Decl. ¶ 45; Morris Decl. ¶ 61; Rizzo Decl. ¶ 43.)

10.     Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence. Specifically, the cited declaration paragraph has nothing to with the assertions in this paragraph. In addition, the requirements of alleged "regulatory mandates" is a legal conclusion that is improper in a 56.1 statement. Accordingly, no response to this paragraph is necessary.

11.     Plaintiffs admit that the Opt-In Plaintiffs deliver Freight. The assertion that that delivery is subject to "regulation by the DEA and other Government Requirements" is a legal conclusion that is improper in a 56.1 statement and is not supported by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.

4

12.     Plaintiffs admit that DEA Forms C2 are returned to TXX or a Shipper facility. Plaintiffs deny that it is in Opt-In Plaintiffs' "discretion" whether to return C2s the same day or the next day.  (Armstrong Decl. ¶¶ 15, 21; Cunningham Decl. ¶ 31; Grant Decl. ¶ 44; Marin Decl. ¶¶ 22-23; Morris Decl. ¶ 33; Ortellado Decl. ¶ 29.)  By way of further response, Opt-In Plaintiffs' routes are classified as "next day" or "same day."  Next day routes are routes where the freight was ordered the previous day, and same day routes are routes where the freight was ordered the same day.  Next day routes leave from a TXX facility in the morning, and same day routes leave from a Shipper facility in the afternoon.  C2s collected on next day routes must be returned to TXX that day.  C2s collected on same day routes may be returned to TXX the next day.  (Pagano Ex. 340 (Sangern Dep.) 90:22-91:10.)  The assertion that the timing of returning C2s "depend[s] upon Shipper requirements" is not supported by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.

13.     Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Accordingly, no response to this paragraph is necessary. Nevertheless, Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 351 (J. Hunt Dep. day 1) 23:3-14 (TXX "is a freight broker[.] . . . My responsibility is to find people, companies, that will make these deliveries in a timely fashion. . . . [I]t is my obligation to get the freight delivered."); *Id.* at 74:2-3 ("[T]he brokerage service is what provides [TXX's] income.").)

14.     Plaintiffs admit that Opt-In Plaintiff Raghubir testified that he could not keep records like proofs of delivery on a regular basis.  (Pagano Ex. 363 (Raghubir Dep.) 124:15-19.) To the extent this paragraph makes assertions other regarding other Opt-In Plaintiffs and/or compliance with DEA and government rules and regulations, Defendants have failed to support

those assertions by citation to relevant and admissible evidence.  Accordingly, no response to those assertions is necessary.

15.    The assertion in this paragraph that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  In any event, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, in the deposition testimony cited in support of the paragraph, Gonzalez testified as follows: "Q: Do you know whether without a secure location like TXX that you through MJ Morales could deliver controlled substances?  A: I don't know.  What is that?"  (Pagano Ex. 338 (Gonzalez Dep.) 99:15-18.)  Notwithstanding the foregoing, Plaintiffs admit that the Opt-In Plaintiffs do not have warehouses.

16.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the actions of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (see Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.) ¶ 3 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 3 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 3 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 3 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  In addition, the assertion that Opt-

In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to this paragraph is necessary.

17.     Plaintiffs deny that TXX was a broker under the FMCSA prior to August 27, 2010. (Schulman Ex. 39 at 4 (property broker authority granted Aug. 27, 2010); Schulman Ex. 40 (TXX's authority as a motor property common carrier); Pagano Ex. 321 (Mills Decl.) Ex. A.)  Plaintiffs admit the remaining assertions in this paragraph.

18.     The statement, "presumably because the Transportation Service Providers do not provide secure transfer locations compliant with DEA and other Government Requirements for the change of custody and control of controlled substances and recordkeeping," is speculation that is improper in a 56.1 statement.  Accordingly, no response to that statement is necessary.  Plaintiffs admit the remaining assertions in this paragraph.  By way of further response, most of the freight Discovery Plaintiffs delivered was not controlled substances.  (B. Gonzalez Decl. ¶ 14; Grant Decl. ¶ 42; Morris Decl. ¶ 26; Rizzo Decl. ¶ 27.)

19.     The assertions in this paragraph concerning the nature and applicability of "DEA and other Government Regulations" are legal conclusions that are not the proper subject of a 56.1 statement.  Accordingly, no response to those assertions are necessary.  Plaintiffs deny that "TXX informs the Transportation Service Providers of the security and recordkeeping necessary to be provided . . . through written instructions created by the Shipper."   By way of further response, the earliest dated documents purporting to be "written instructions created by the Shipper" are from October 19, 2010 (*e.g.*, Pagano Ex. 135 at TVD694), even though many Discovery Plaintiffs started working for TXX years earlier.  (*E.g.*, Alexander Decl. ¶ 2; Armstrong Decl. ¶ 2; Baratta Decl. ¶ 2; Campos Decl. ¶ 2; Cunningham Decl. ¶ 2; Dean Decl. ¶ 2; Fernandez Decl. ¶ 2; B. Gonzalez Decl. ¶ 2; Grant Decl. ¶ 2; Henry Decl. ¶ 2; Marin Decl. ¶ 2; Morocho Decl. ¶ 2; Morris

Decl. ¶ 2; Oliveira Decl. ¶ 2; Paul Decl. ¶ 2.)   In addition, many of the instructional documents purporting to be created by different Shippers are virtually identical.   (*Compare*, *e.g.*, Pagano Ex. 135, TVD685 (AmerisourceBergen) *with id*. at TVD686 (Bellco) *and id*. at TVD687 (Capital One Bank) *and id*. at TVD688 (Cardinal Health) *and id*. at TVD689 (RDC) *and id*. at TVD690 (HD Smith) *and id*. at TVD692 (Fuji Film) *and id*. at TVD695 (Cardinal Health).)   Moreover, some of the these documents make incorrect references to Shippers or their freight.   (*Id*. at TVD685 (referring to "Amerisource Bergen *Bank*," even though Amerisource Bergen is not a bank) (emphasis added), TVD687 (stating that "Capital One may require sign-off on specific procedures regarding control substance handling[,]" even though Capital One is a bank and does not ship controlled substances); Pagano Ex. 352 (J. Hunt Dep. day 2) 67:3-6 (Capital One deliveries were "[c]hecks, negotiables, interoffice mail").)   Similarly, many of these documents ungrammatically and identically refer to "control substance handling" rather than "control*led* substance handling." (Pagano Ex. 135 at TVD685-690.)   In addition, most of the freight Discovery Plaintiffs delivered was not controlled substances.   (B. Gonzalez Decl. ¶ 14; Grant Decl. ¶ 42; Morris Decl. ¶ 26; Rizzo Decl. ¶ 27.)

20.     The assertion that Opt-In Plaintiffs "exercis[e] discretion" is a conclusion and/or argument that is improper in a 56.1 statement.   Accordingly, no response to that assertion is necessary.   In any event, Plaintiffs deny the assertions in this paragraph.   (Armstrong Decl. ¶ 33; Cunningham Decl. ¶¶ 49-50; Dean Decl. ¶ 23; Morris Decl. ¶ 34.)

21.     Plaintiffs admit the assertions in this paragraph.

22.     Plaintiffs admit that the Opt-In Plaintiffs have to show identification to enter TXX's warehouses.   The assertion that this is required "[b]ecause TXX provides a secure transfer

location" is not supported by citation to relevant and admissible evidence.  Accordingly, no further response is necessary.

23.     Plaintiffs deny the assertions in this paragraph, as Defendants have mischaracterized Gonzalez' testimony.  "They" in the cited testimony refers to TXX and/or Velocity.  Gonzalez did not interact with TXX's customers.  TXX – not TXX's customers – gave her work and told her what to do.  (B. Gonzalez Decl. ¶ 46.)

24.     Plaintiffs deny the implications in this paragraph that Capital One Bank was not a TXX customer and/or that Opt-In Plaintiff Raghubir's Capital One work was not obtained through TXX.  (Pagano Ex. 363 (Raghubir Dep.) 13:6-7.)  Plaintiffs admit all other assertions in this paragraph.

**C. Transportation Service Providers are Parties to Agreements in Which They Acknowledged Their Status as Independent Contractors, Not Employees**

25.     The assertion that "[v]arious written documents define the relationship of each Transportation Service Provider to TXX" is a conclusion and/or argument that is improper in a 56.1 statement.  In particular, the characterization of the relationship between the Opt-In Plaintiffs and TXX as an independent contractor relationship is the very legal issue at the heart of this motion.  Accordingly, no response to that assertion is necessary.  In any event, Plaintiffs deny the assertions in this paragraph.  (Morris Decl. ¶ 10.)  By way of further response, the terms of the contracts that the Discovery Plaintiffs signed do not accurately reflect the relationship between TXX and the Discovery Plaintiffs.  (*Compare*, *e.g.*, Pagano Ex. 256 at TVD349 ¶ 6 ("The IC . . . acknowledges that he/she is ineligible for unemployment benefits[.]"), *with* Schulman Ex. 11 (finding Dean to be a TXX employee for unemployment insurance purposes); *compare* Pagano Ex. 257 at TVD359 ¶ 2.1 ("Drivers shall be paid by Provider pursuant to the Provider's per stop or route rate *agreed upon* between Driver and Provider for services rendered by Drivers to End

Users.") (emphasis added), Pagano Ex. 258 at TVD367 ¶ FOURTEENTH ("[T]he Owner / Operator shall be paid a fee based on the schedule of rates *negotiated and agreed to* by C.A.N.E.'s client and the Owner / Operator."), *and* Pagano Ex. 259 at TVD377 ¶ FOURTEENTH (same), *with* Armstrong Decl. ¶¶ 9, 11, 24, Cunningham Decl. ¶¶ 7-8, Dean Decl. ¶¶ 9, 11-12, Fernandez Decl. ¶¶ 8-9, 21-23, 31, B. Gonzalez Decl. ¶¶ 19-22, Grant Decl. ¶¶ 11-12, 17-18, Henry Decl. ¶¶ 7-8, 11, 15, 20, Marin Decl. ¶ 12, Morocho Decl. ¶¶ 17, 19, 38, Morris Decl. ¶¶ 14, 20, 22, Ortellado Decl. ¶¶ 16, 33-35, 43-44 & Ortellado Ex. 3, Paul Decl. ¶¶ 7-9, 13, 20-22, and Rizzo Decl. ¶¶ 17, 31-32; *compare* Pagano Ex. 258 at TVD367 ¶ THIRTEENTH ("Owner / Operators are free to select their own routes and the order of their deliveries[.]") *and* Pagano Ex. 259 at TVD377 ¶ THIRTEENTH (same), *with* Cunningham Decl. ¶¶ 23, 38, Fernandez Decl. ¶ 36, B. Gonzalez Decl. ¶ 13, Grant Decl. ¶ 46, Morris Decl. ¶ 32, and Ortellado Decl. ¶¶ 27-28; *compare* Pagano Ex. 258 at TVD367 ¶ FIFTEENTH ("The Owner / Operator has the right, in its sole discretion, to accept or reject assignments[.]") *and* Pagano Ex. 259 at TVD377 ¶ FIFTEENTH (same), *with* Alexander Decl. ¶¶ 6-7, Fernandez Decl. ¶ 15, Henry Decl. ¶¶ 18-19, Morocho Decl. ¶ 16, Ortellado Decl. ¶¶ 46-50, and Rizzo Decl. ¶¶ 28-30.)

26.     Plaintiffs deny the assertion that at all times they maintained a corporation, limited liability company, or DBA.  On the contrary, many Opt-In Plaintiffs worked for TXX in their individual capacity until they were required by TXX to use a business entity in order to continue to work for TXX.  (Alexander Decl. ¶¶ 15-18; Armstrong Decl. ¶¶ 41-42; Cunningham Decl. ¶¶ 54-56 & Cunningham Ex. 2; Dean Decl. ¶¶ 34-36; B. Gonzalez Decl. ¶¶ 33-34 & B. Gonzalez Ex. 1; Grant Decl. ¶¶ 59-60; Henry Decl. ¶¶ 6, 43 & Henry Ex. 1; Marin Decl. ¶¶ 27-28; Morocho Decl. ¶¶ 39-40; Morris Decl. ¶¶ 9, 42-45; Paul Decl. ¶¶ 32-34; Pagano Ex. 364 (Lindsay Dep.) 13:16-18, 15:19-21, 56:2-7 (Lindsay started working for TXX in 2005); Pagano Ex. 158 (Lindsay

contract dated August 30, 2008 with no business name); Pagano Ex. 156 (business certificate for Lindsay's Winbird Courier Service dated October 25, 2010); Pagano Ex. 363 (Raghubir Dep.) 18:16-21, 90:4-18; Pagano Exs. 265, 279 (Raghubir contracts dated November 28, 2009 and April 22, 2008 with no business name); Pagano Ex. 264 (business certificate for Raghubir's TRX dated December 9, 2010); Pagano Ex. 347 (Sawhney Dep. day 2) 177:24-13 (see errata sheet).)

   27. The assertion in this paragraph that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Moreover, Defendants have failed to support the assertion that anyone other than Campos and Fernandez "Established Driver-Corporations prior to their affiliation with TXX" by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that Opt-In Plaintiffs Campos and Fernandez formed their "Driver-Corporations" before they began working for TXX but deny that Lindsay did so.  By way of further response, before working for TXX, Lindsay used the business name Winbird Enterprises to work for Amway.  (Pagano Ex. 364 (Lindsay Dep.) 12:12-24.)  The business name that Lindsay uses to work for TXX is Winbird Courier Services.  (Pagano Ex. 156; Pagano Ex. 364 (Lindsay Dep.) 25:12-21.)  Lindsay formed Winbird Courier Services several years after he started working for TXX.  (Pagano Ex. 156 (business certificate dated October 25, 2010); Pagano Ex. 364 (Lindsay Dep.) 13:16-18, 15:19-21, 56:2-7 (Lindsay started working for TXX in 2005).)

   28. Plaintiffs admit that Opt-In Plaintiffs Grant, Morris, Fernandez, Alexander, Henry, Raghubir, Dean, Paul, and Wadada signed agreements with NICA bearing the title, "Independent Contractor Application and Agreement" (the "NICA Agreement").  To the extent this paragraph makes any further assertions, such assertions are not supported by citation to relevant and admissible evidence, and therefore no response is necessary.

29.     Plaintiffs admit that this paragraph accurately quotes the NICA Agreement. The assertion that the NICA Agreement "reflects the recognition that the Transportation Service Providers were engaged within an independent contractor relationship, not an employment relationship" is a conclusion and/or argument which is improper in a 56.1 statement. Accordingly, no response to that assertion is necessary.

30.     Plaintiffs admit that the Opt-In Plaintiffs who signed the NICA Agreement signed below the language quoted in this paragraph. To the extent this paragraph makes any further assertions, such assertions are not supported by citation to relevant and admissible evidence, and therefore no response is necessary.

31.     Plaintiffs deny the assertions in this paragraph. (Pagano Ex. 349 (Grant Dep.) 76:3-5; Morris Decl. ¶¶ 48-49.) By way of further response, out of the nine Opt-In Plaintiffs that Defendants identified as having signed the NICA Independent Contractor Agreement (Defs.' 56.1 Statement ¶ 28), Defendants cite just two individuals' deposition testimony – Raghubir and Wadada – in support of this paragraph. Accordingly, with respect to the other seven Opt-In Plaintiffs who signed that document, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence. As for Raghubir and Wadada, in the cited deposition testimony neither of them testified that they read or understood the NICA Independent Contractor Agreement. (Pagano Ex. 363 (Raghubir Dep.) 139; Pagano Ex. 348 (Wadada Dep.) 56.)

32.     Plaintiffs admit that the Opt-In Plaintiffs whose deposition testimony and exhibits are cited in support of the assertions in this paragraph signed an "Independent Contractor Profile, Application and Agreement" with Contractor Associates of the Northeast, Inc. ("CANE") in the specified time period. To the extent this paragraph makes any further assertions, including that

any Opt-In Plaintiffs not cited in this paragraph signed the CANE Independent Driver Service Agreement, such assertions are not supported by citation to relevant and admissible evidence, and therefore no response is necessary.

33.     Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 338 (Gonzalez Dep.) 50:5-6; Pagano Ex. 349 (Grant Dep.) 76:3-5; Pagano Ex. 361 (Marin Dep.) 94:6-15; Pagano Ex. 359 (Baratta Dep.) 29:19-30:4; Pagano Ex. 364 (Lindsay Dep.) 74:9-24; Cunningham Decl. ¶¶ 64-65; Morris Decl. ¶¶ 48-49; Henry Decl. ¶ 49.)  By way of further response, out of the 16 Opt-In Plaintiffs that Defendants identified as having signed the CANE Independent Driver Service Agreement (Defs.' 56.1 Statement ¶ 32), Defendants cite just eight individuals' deposition testimony – Cunningham, Fernandez, Alexander, Henry, Raghubir, Dean, Paul, and Wadada – in support of this paragraph.  Accordingly, with respect to the other eight Opt-In Plaintiffs who signed that document, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  As for the eight Opt-In Plaintiffs cited in this paragraph, in the cited deposition testimony none of them testified that they understood the CANE Independent Driver Service Agreement and with the exception of Fernandez, who stated, "I can't quite remember but I believe so" when asked if he read the document, none of them testified that they read the document.  (Pagano Ex. 341 (Cunningham Dep.) 132; Pagano Ex. 345 (Fernandez Dep.) 98; Pagano Ex. 355 (Alexander Dep.) 57; Pagano Ex. 339 (Henry Dep.) 69; Pagano Ex. 363 (Raghubir Dep.) 140; Pagano Ex. 350 (Dean Dep.) 72-75; Pagano Ex. 342 (Paul Dep.) 65; Pagano Ex. 348 (Wadada Dep.) 73.)

34.     Plaintiffs admit that the Opt-In Plaintiffs who signed the CANE Agreement signed below the language quoted in this paragraph.  To the extent this paragraph makes any further

assertions, such assertions are not supported by citation to relevant and admissible evidence, and therefore no response is necessary.

35.     Plaintiffs admit that Opt-In Plaintiffs Campos, Gonzalez, Morocho, Morris, Oliveira, Paul, Raghubir, Rizzo, and Sawhney signed an "Owner/Operator Agreement" with CANE in the specified time period.  To the extent this paragraph makes any further assertions, including that the CANE Owner/Operator Agreement was provided to any other Opt-In Plaintiffs, such assertions are not supported by citation to relevant and admissible evidence, and therefore no response is necessary.

36.     Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 362 (Rizzo Dep.) 23:2-6; Morris Decl. ¶¶ 48-49; Rizzo Decl. ¶ 10.)  By way of further response, out of the nine Opt-In Plaintiffs that Defendants identified as having signed the CANE Owner/Operator Agreement (Defs.' 56.1 Statement ¶ 35), Defendants cite just three individuals' deposition testimony – Morocho, Morris, and Paul – in support of this paragraph.  Accordingly, with respect to the other six Opt-In Plaintiffs who signed that document, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  As for Morocho, Morris, and Paul, in the cited deposition testimony neither Morris nor Paul testified that he read or understood the CANE Owner/Operator Agreement, and Morocho testified that she read or had the document read to her but did not testify that she understood or complied with that Agreement.  Thus, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  (Pagano Ex. 337 (Morocho Dep.) 139-140; Pagano Ex. 353 (Morris Dep.) 132; Pagano Ex. 342 (Paul Dep.) 68-69.)

37.     Plaintiffs admit that the Opt-In Plaintiffs whose deposition testimony and exhibits are cited in support of this paragraph signed an "Owner/Operator Agreement" with TXX in the

specified time period that contained "virtually identical terms as the C.A.N.E. Owner/Operator Agreement.  To the extent this paragraph makes any further assertions, such assertions are not supported by citation to relevant and admissible evidence, and therefore no response is necessary.

38.    Plaintiffs admit that this paragraph accurately quotes Section FIFTH of the CANE Agreement and the TXX Agreement.  Defendants have not supported the assertions that "the Opt-in Plaintiffs read, understood, and did their best to comply with" Section Fifth and that Section Fifth "reflect[s] the agreement and understanding of the Transportation Service Providers" by citation to relevant and admissible evidence.  In addition, the assertion that the quotation in this paragraph "reflects the agreement and understanding of the Transportation Service Providers" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to those assertion is necessary.  In any event, Plaintiffs deny that the Opt-In Plaintiffs "read, understood and did their best to comply with" the CANE and TXX Owner/Operator Agreements and deny that Defendants have supported that assertion by citation to relevant and admissible evidence.  (*See* responses *supra* ¶ 36 and *infra* ¶ 44.)

39.    The assertions in this paragraph are legal conclusions and therefore not the proper subject of a Rule 56.1 statement.  Accordingly, no response is necessary.  To the extent a response is required, Plaintiffs deny the assertions in this paragraph.  Discovery Plaintiffs could and did stop working for TXX without either party serving written notification of termination of the contract. (Pagano Ex. 343 (Lewis Dep.) 141:2-5; Alexander Decl. ¶ 25; Morris Decl. ¶ 63; Ortellado Decl. ¶ 64.)

40.    Plaintiffs admit the assertion in this paragraph.

41.    Plaintiffs admit the assertion in this paragraph.

42.    Plaintiffs admit the assertion in this paragraph.

43.      Plaintiffs admit the assertion in this paragraph.

44.      Plaintiffs deny the assertions in this paragraph.  (Rizzo Decl. ¶ 10; Pagano Ex. 338 (Gonzalez Dep.) 50:5-6; Pagano Ex. 349 (Grant Dep.) 75:24-76:5; Pagano Ex. 359 (Baratta Dep.) 29:15-30:4; Pagano Ex. 361 (Marin Dep.) 94:13-15; Pagano Ex. 362 (Rizzo Dep.) 31:21-32:6; Pagano Ex. 364 (Lindsay Dep.) 81:14-16; Morris Decl. ¶¶ 48-49.)  By way of further response, although all 23 Discovery Plaintiffs, signed TXX Owner/Operator Agreements, Defendants have cited the testimony of only 14 Discovery Plaintiffs in support of this paragraph.  Accordingly, with respect to the other nine Discovery Plaintiffs who signed that document, Defendants have failed to support the assertion in this paragraph by citation to relevant and admissible evidence.  As for the deposition testimony of the 14 Discovery Plaintiffs cited in support of this paragraph, (1) Grant did not state in the cited testimony that he read, understood, or complied with the TXX Owner/Operator Agreement (Pagano Ex. 349 (Grant Dep.) 75); (2) Cunningham testified that parts of the TXX Owner/Operator Agreement were inaccurate (Pagano Ex. 341 (Cunningham Dep.) 137-138); (3) Ortellado's cited deposition testimony concerns the TXX Owner/Operator Review, not the TXX Owner/Operator Agreement (Pagano Ex. 334 (Ortellado Dep.) 85); (4) Armstrong, Campos, Cunningham, Dean, Fernandez, Morris, Raghubir, and Wadada did not state in the cited testimony that they read or understood the TXX Owner/Operator Agreement (Pagano Ex. 360 (Armstrong Dep.) 90; Pagano Ex. 344 (Campos Dep.) 101; Pagano Ex. 341 (Cunningham Dep.) 137-138; Pagano Ex. 350 (Dean Dep.) 96; Pagano Ex. 345 (Fernandez Dep.) 101; Pagano Ex. 353 (Morris Dep.) 133; Pagano Ex. 363 (Raghubir Dep.) 98; Pagano Ex. 348 (Wadada Dep.) 75-76); and (5) Alexander, Franco, Lewis, and Paul did not state in the cited testimony that they understood the TXX Owner/Operator Agreement (Pagano Ex. 355 (Alexander Dep.) 65; Pagano Ex. 335 (Franco Dep. day 1) 52; Pagano Ex. 343 (Lewis Dep.) 53; Pagano Ex. 342 (Paul Dep.) 72).  Thus,

Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.

45.     Plaintiffs admit that the Agreements provided that the Opt-In Plaintiffs were responsible for paying for any tickets and that the Opt-In Plaintiffs paid for their own vehicle insurance.  Defendants have failed to support the remaining assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the actions of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.) ¶ 17 (discussing the practices of the "LZR Companies," which is not an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 13 (discussing the practices of the "JANBC Companies," which is not an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 15 (discussing the practices of the "Standard Companies," which is not an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 13 (discussing the practices of "EGS," which is not an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  In addition, most of the citations to Discovery Plaintiffs' deposition transcripts are to testimony authenticating and/or affirming their tax returns, which does not support the assertions in this paragraph, and none of the cited testimony refers to "Shipper-specified liability insurance."

**D. Transportation Service Providers Agreed to and Complied With Independent Owner/Operator Agreement Reviews**

46.     Plaintiffs admit that Discovery Plaintiffs Oliveira, Gonzalez, Morocho, Henry, Lindsay, and Sawhney signed the CANE Owner/Operator review.  To the extent Defendants

purport to make assertions regarding any other Opt-In Plaintiffs, those assertions are not supported by citation to relevant and admissible evidence.

47.     Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Plaintiffs deny the remaining assertions in this paragraph.  (*See* responses *supra* ¶ 46 and *infra* ¶ 48.)

48.     Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  By way of further response, Defendants have identified six Opt-In Plaintiffs – Oliveira, Gonzalez, Morocho, Henry, Lindsay, and Sawhney – as having signed the CANE Owner/Operator Review.  (Defs.' 56.1 Statement ¶ 46.)  Thus, Defendants' citations in this paragraph to the deposition testimony of Opt-In Plaintiffs Morris, Cunningham, Fernandez, Alexander, Raghubir, Dean, Paul, and Wadada are not relevant to the assertions in this paragraph, as that deposition testimony does not relate to the CANE Owner/Operator Review.  The cited Henry deposition testimony references Pagano Ex. 144 (deposition exhibit CH14), which is not the CANE Owner/Operator Review.  (Pagano Ex. 339 (Henry Dep.) 69.)  In addition, in the cited Morocho deposition testimony, she did not testify that she complied with the CANE Owner/Operator review.  (Pagano Ex. 337 (Morocho Dep.) 139-140.)  Accordingly, no response to this paragraph is necessary.  To the extent a response is necessary, Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 364 (Lindsay Dep.) 79:15-18.)

49.     Plaintiffs admit the assertions in this paragraph.

50.     Plaintiffs deny the assertions in this paragraph.  (Rizzo Decl. ¶ 10; Pagano Ex. 338 (Gonzalez Dep.) 49:25-50:6; Pagano Ex. 359 (Baratta Dep.) 29:2-24; Pagano Ex. 341 (Cunningham Dep.) 134:7-12, 136:12-24; Pagano Ex. 349 (Grant Dep.) 75:24-76:6; Pagano Ex. 364 (Lindsay Dep.) 81:11-15; Pagano Ex. 361 (Marin Dep.) 94:13-15; Pagano Ex. 362 (Rizzo

Dep.) 31:12-32:6.) By way of further response, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence. Specifically, although all 23 Discovery Plaintiffs signed the TXX Owner/Operator Review, Defendants cite just 13 Discovery Plaintiffs' deposition testimony in support of this paragraph. Accordingly, with respect to the other 10 Discovery Plaintiffs who signed that documents, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence. With respect to the 13 Discovery Plaintiffs cited in this paragraph, (1) Grant did not state in the cited deposition testimony that he read, understood, or complied with the TXX Owner/Operator Review (Pagano Ex. 349 (Grant Dep.) 75); (2) Cunningham testified that parts of the TXX Owner/Operator Review were inaccurate (Pagano Ex. 341 (Cunningham Dep.) 137-138); (3) the Fernandez testimony cited was not regarding the TXX Owner/Operator Review (Pagano Ex. 345 (Fernandez Dep.) 105; (4) Armstrong, Campos, Dean, Morris, Raghubir, and Wadada did not state in the cited testimony that they read or understood the TXX Owner/Operator Review (Pagano Ex. 360 (Armstrong Dep.) 90; Pagano Ex. 344 (Campos Dep.) 101; Pagano Ex. 350 (Dean Dep.) 96; Pagano Ex. 353 (Morris Dep.) 133; Pagano Ex. 363 (Raghubir Dep.) 98; Pagano Ex. 348 (Wadada Dep.) 75-76; and (5) Alexander, Franco, Lewis, and Paul did not state in the cited testimony that they understood the TXX Owner/Operator Review (Pagano Ex. 355 (Alexander Dep.) 65; Pagano Ex. 335 (Franco Dep. day 1) 52; Pagano Ex. 343 (Lewis Dep.) 53; Pagano Ex. 342 (Paul Dep.) 72.)

**E. Transportation Service Providers Operate Independent Businesses**

51. The assertion that the Opt-In Plaintiffs "exercised their discretion" is a conclusion and/or argument that is improper in a 56.1 statement, and Defendants have failed to support that assertion by citation to relevant and admissible evidence. In addition, Defendants have failed to identify a single Opt-In Plaintiff who "advertise[d] on the web[.]" Accordingly, no response to

these assertions is necessary.  Plaintiffs admit that most Opt-In Plaintiffs who worked for TXX before 2010 worked for TXX as individuals.  Plaintiffs deny the remaining assertions in this paragraph.  By way of further response, most Discovery Plaintiffs had d/b/a's, not corporations.  (Alexander Decl. ¶¶ 17-19; Armstrong Decl. ¶¶ 41-42; Baratta Decl. ¶¶ 34-35; Pagano Ex. 344 (Campos Dep.) 262:5-9; Cunningham Decl. ¶¶ 55-56; Dean Decl. ¶¶ 35-36; Fernandez Decl. ¶ 53; Grant Decl. ¶ 60; Henry Decl. ¶¶ 6, 43-44; Pagano Ex. 343 (Lewis Dep.) 86:12-17 (discussing Schulman Ex. 33); Pagano Ex. 156 at TVD1192; Marin Decl. ¶¶ 27-28; Morocho Decl. ¶¶ 39-40; Morris Decl. ¶¶ 9, 42-45; Paul Decl. ¶¶ 33-34; Pagano Ex. 153; Rizzo Decl. ¶ 8; Pagano Ex. 347 (Sawhney Dep. day 2) 82:2-9.)  Some of the Discovery Plaintiffs who formed corporations did so at TXX's direction.  (Ortellado Decl. ¶¶ 12, 14-15; Rizzo Decl. ¶¶ 11-12; Pagano Ex. 335 (Franco Dep. day 1) 28:13-24.)  The Opt-In Plaintiffs did not advertise transportation services on the internet.  (Armstrong Decl. ¶ 45; Cunningham Decl. ¶ 68; Fernandez Decl. ¶ 54; B. Gonzalez Decl. ¶ 37; Henry Decl. ¶ 50; Morocho Decl. ¶ 42; Morris Decl. ¶ 46; Ortellado Decl. ¶ 56.)  While working for TXX, TXX was the Discovery Plaintiffs' primary or only job.  (Alexander Decl. ¶ 21; Armstrong Decl. ¶ 44; Campos Decl. ¶¶ 6-7; Cunningham Decl. ¶ 66; Dean Decl. ¶ 38; Fernandez Decl. ¶ 51; B. Gonzalez Decl. ¶ 38; Grant Decl. ¶¶ 62, 67-74; Henry Decl. ¶ 48; Marin Decl. ¶¶ 35-37; Morocho Decl. ¶ 43; Morris Decl. ¶¶ 43, 47; Ortellado Decl. ¶ 55; Paul Decl. ¶ 36; Rizzo Decl. ¶¶ 38-39.)

52.    The assertion in this paragraph that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that the Opt-In Plaintiffs opened "separate bank accounts, separate from their personal bank accounts."  By way of further response, rather than "exercising discretion" to open business bank accounts, once TXX required Opt-In Plaintiffs to work for TXX

through business entities, they had to open separate business bank accounts in order to cash the paychecks for the work they performed for TXX.  (Alexander Decl. ¶¶ 16-19; Armstrong Decl. ¶¶ 40-43; Baratta Decl. ¶ 36; Cunningham Decl. ¶¶ 54-57; Dean Decl. ¶ 37; B. Gonzalez Decl. ¶¶ 33-35; Grant Decl. ¶¶ 58-60; Marin Decl. ¶¶ 27-29; Morocho Decl. ¶¶ 39-41; Paul Decl. ¶ 35.)

53.     The assertion in this paragraph that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiff admit the remaining assertions in this paragraph.

54.     Plaintiffs admit that Raghubir testified that he kept receipts for expenses "[b]ecause you have to file taxes.  It's the process.  And for my own records and bookkeeping."  (Pagano Ex. 363 (Raghubir Dep.) 61:2-11.)  Defendants' characterization of those receipts as "business records" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that characterization is necessary.

55.     Plaintiffs admit the assertions in this paragraph.  By way of further response, Lindsay used Winbird Enterprises to sell for Amway for approximately 10 years starting in 1992. By the time Lindsay began working for TXX, he was no longer selling for Amway or using Winbird Enterprises.  (Pagano Ex. 364 (Lindsay Dep.) 12:4-24, 25:12-16.)

56.     Plaintiffs admit that this paragraph accurately quotes the CANE Independent Driver Services Agreement.  Plaintiffs deny that "the Opt-in Plaintiffs read, understood and did their best to comply with" that document and deny that Defendants have supported that assertion by citation to relevant and admissible evidence.  (*See* response *supra* ¶ 33.)  In addition, the assertion that the referenced document "sets forth the agreement and understanding of the Transportation Service Providers" is a conclusion and/or argument that is improper in a 56.1 statement and is not

supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.

57.     Plaintiffs admit that this paragraph accurately quotes the TXX Owner-Operator Review.  Plaintiffs deny that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document and deny that Defendants have supported that assertion by citation to relevant and admissible evidence.  (*See* response *supra* ¶ 50.)

**F. TXX Does Not Treat the Opt-in Plaintiffs as Employees**

58.     Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations."  (Pagano Ex. 322 (Zamora Decl.) ¶ 22 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 20 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 20 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 16 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  Furthermore, the Summary of Key Tax Return Provisions is not relevant to this paragraph.  Accordingly, no response is necessary.  To the extent a response is necessary, Plaintiffs admit that TXX does not withhold employee payroll taxes or provide benefits to Opt-In Plaintiffs and deny all other assertions in this

paragraph.  By way of further response, Opt-In Plaintiffs were paid in their individual capacities for their work for TXX.  (*E.g.*, Alexander Decl. ¶ 18; Armstrong Decl. ¶ 40; Cunningham Decl. ¶ 54 & Cunningham Ex. 2; Dean Decl. ¶ 34; B. Gonzalez Decl. ¶ 33 & B. Gonzalez Ex. 1; Grant Decl. ¶ 59; Henry Decl. ¶ 43 & Henry Ex. 1; Marin Decl. ¶ 27; Morocho Decl. ¶ 39; Morris Decl. ¶ 9; Paul Decl. ¶ 32; Pagano Ex. 347 (Sawhney Dep. day 2) 178:9-13 & errata.)  TXX directed drivers to pick up paperwork or freight from each other and set the pay rates, if any, for that work.  (Cunningham Decl. ¶ 49-50; Armstrong Decl. ¶ 33; Dean Decl. ¶¶ 23, 25; Morris Decl. ¶ 34; Pagano Ex. 364 (Lindsay Dep.) 106:11-18, 107:12-23, 109:2-6.)  TXX also directed Discovery Plaintiffs to work under certain other drivers and told Discovery Plaintiffs which helpers to use or not use.  (Ortellado Decl. ¶¶ 6, 11-13, 18-19; Rizzo Decl. ¶ 7.)

59.    The assertions that Opt-In Plaintiffs "exercised . . . discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  In any event, Plaintiffs deny the assertions in this paragraph.  (Cunningham Decl. ¶¶ 11-13, 23, 39, 46; Grant Decl. ¶¶ 9, 50, 52; Henry Decl. ¶¶ 10, 12-13, 30-31; Marin Decl. ¶¶ 5-6; Morris Decl. ¶ 36; Rizzo Decl. ¶ 35; Pagano Ex. 343 (Lewis Dep.) 192:4-17; Pagano Ex. 359 (Baratta Dep.) 131:23-132:3.)

60.    Plaintiffs deny the assertions in this paragraph.  (Alexander Decl. ¶ 3; Armstrong Decl. ¶¶ 3, 30-33; Cunningham Decl. ¶¶ 3, 11-13, 18, 21, 23, 29, 33-39, 46; Fernandez Decl. ¶¶ 17-18, 36-37; B. Gonzalez Decl. ¶¶ 13, 27; Grant Decl. ¶¶ 3-4, 9, 30, 40-41, 46, 50, 52-56; Henry Decl. ¶¶ 10, 12-13, 26, 29-32, 38; Marin Decl. ¶¶ 5-10, 22-26; Morris Decl. ¶¶ 3, 5, 24-25, 32-39; Ortellado Decl. ¶¶ 3, 16-18, 23-30; Paul Decl. ¶ 3; Rizzo Decl. ¶¶ 13, 21-25, 28, 35-36; Pagano Ex. 359 (Baratta Dep.) 131:23-132:3; Pagano Ex. 343 (Lewis Dep.) 70:9-11, 192:4-17; Pagano Ex. 364 (Lindsay Dep.) 14:9-15:11, 21:4-22:17.)  In addition, the declarations cited by Defendants

in support of this paragraph are not relevant and admissible evidence.  Specifically, although this paragraph purports to describe the attributes of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.) ¶ 36 (discussing the practices and background of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 30 (discussing the practices and background of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 34 (discussing the practices and background of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 30 (discussing the practices and background of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)

61.     Plaintiffs deny the assertions in this paragraph.  (Cunningham Decl. ¶¶ 11-13, 23, 39, 46; Grant Decl. ¶¶ 9, 50, 52; Henry Decl. ¶¶ 10, 12-13, 30-31; Marin Decl. ¶¶ 5-7; Morris Decl. ¶ 36; Rizzo Decl. ¶ 35; Pagano Ex. 359 (Baratta Dep.) 131:23-132:3; Pagano Ex. 343 (Lewis Dep.) 192:4-17.)

62.     Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 349 (Grant Dep.) 94:21 (stating that TXX required drivers to attend "[c]ountless meetings"); *see also* Cunningham Decl. ¶¶ 45-46, 48; Dean Decl. ¶¶ 27-28; Grant Decl. ¶¶ 50-56; Henry Decl. ¶ 31; Marin Decl. ¶¶ 5-7; Morris Decl. ¶ 36; Rizzo Decl. ¶ 35.)

63.     Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the

actions of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations, and the Summary of Key Tax Return Provisions . (Pagano Ex. 322 (Zamora Decl.) ¶ 15 (discussing the practices of the "LZR Companies," which is not an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 11 (discussing the practices of the "JANBC Companies," which is not an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 13 (discussing the practices the "Standard Companies," which is not an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 11 (discussing the practices of "EGS," neither of which is not an Opt-In Plaintiff's "Driver-Corporation").)   Accordingly, no response is necessary.   To the extent a response is required, Plaintiffs deny the assertions in this paragraph.  By way of further response, TXX supervises Opt-In Plaintiffs and sets and enforces rules.   (Armstrong Decl. ¶¶ 22, 30; Cunningham Decl. ¶¶ 11-13, 23, 30-35, 38-39, 45-52; Dean Decl. ¶¶ 23-29; Fernandez Decl. ¶¶ 32, 47; B. Gonzalez Decl. ¶¶ 8, 15, 27, 32; Grant Decl. ¶¶ 9, 40-41, 50, 52, 56; Henry ¶¶ 10, 12-13, 30-31; Marin Decl. ¶¶ 5-7; Morris Decl. ¶¶ 24, 36-37; Ortellado Decl. ¶¶ 24-25; Rizzo Decl. ¶¶ 35-36; Pagano Ex. 343 (Lewis Dep.) 192:4-17; Pagano Ex. 356 (Oliveira Dep.) 40:24-41:2; Pagano Ex. 354 (Baquero Dep.) 156:11-21, 157:13-159:16; Schulman Ex. 6; Schulman Ex. 7; Pagano Ex. 359 (Baratta Dep.) 131:24-132:3; Pagano Ex. 353 (Morris Dep.) 124:6-126:9; Pagano Ex. 356 (Oliveira Dep.) 40:15-41:2.)  TXX dictates the order of deliveries.  (Cunningham Decl. ¶¶ 23, 38; Fernandez Decl. ¶ 36; B. Gonzalez Decl. ¶ 13; Grant Decl. ¶ 46; Morris Decl. ¶ 32; Ortellado Decl. ¶¶ 27-28; Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 23:22-24:4; Pagano Ex. 360 (Armstrong Dep.) 118:4-9.)  TXX sets vehicle requirements.  (Baratta Decl. ¶ 25; Cunningham Decl. ¶¶ 18, 21; Dean Decl. ¶ 4; Henry Decl. ¶ 39; Morris Decl. ¶ 35; Ortellado

Decl. ¶¶ 16-31; Rizzo Decl. ¶ 21; Pagano Ex. 345 (Fernandez Dep.) 64:10-65:2, 118:10-13; Pagano Ex. 353 (Morris Dep.) 203:4-16.)

64.     Plaintiffs admit the assertion that TXX has never issued a handbook to Plaintiffs. Plaintiffs deny all other assertions in this paragraph.  (Alexander Decl. ¶¶ 12-13; Armstrong Decl. ¶¶ 21-22, 30, 35-36, 41-42 & Armstrong Ex. 1; Baratta Decl. ¶¶ 21, 25-26, 30, 39; Cunningham Decl. ¶¶ 11-13, 21, 23, 29-39, 45-52, 54-56, 58; Dean Decl. ¶¶ 25-26; Fernandez Decl. ¶¶ 35, 38, 43, 47; B. Gonzalez Decl. ¶¶ 13, 15, 32-34; Grant Decl. ¶¶ 40, 43-46, 50, 54-58, 77; Henry Decl. ¶¶ 6, 10, 12-13, 29, 31-32, 38-39, 41, 43-44 & Henry Ex. 1; Marin Decl. ¶¶ 6-8, 22, 26-28; Morocho Decl. ¶¶ 13, 15-16, 39-40; Morris Decl. ¶¶ 23, 29-30, 35-42, 50 & Morris Exs. 2-4; Ortellado Decl. ¶¶ 11-14, 20, 23-30 & Ortellado Ex. 1; Paul Decl. ¶¶ 29-34; Rizzo Decl. ¶¶ 8, 21, 23, 33.)

65.     Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations, and the Summary of Key Tax Return Provisions .  (Pagano Ex. 322 (Zamora Decl.) ¶ 34 (discussing the practices of the "LZR Companies," which is not an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 28 (discussing the practices of the "JANBC Companies," which is not an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 32 (discussing the practices the "Standard Companies," which is not an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 28 (discussing the practices of "EGS," neither of which is not an Opt-In Plaintiff's "Driver-Corporation").)   In addition, the assertion in this paragraph that Opt-In

Plaintiffs "exercise the discretion" is a conclusion and/or argument that is improper in a 56.1 statement. Accordingly, no response to this paragraph is necessary.

66.     Plaintiffs admit the assertions in this paragraph.

67.     Plaintiffs admit the assertions in this paragraph.

68.     Plaintiffs admit the assertions in this paragraph.

69.     Plaintiffs deny the assertions in this paragraph, as Defendants have misquoted the NICA Independent Contractor Agreement. (*See* Pagano Ex. 256 Section 6.) Moreover, Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence. In any event, Plaintiffs deny that assertion and deny that the NICA Independent Contractor Agreement was provided to and/or signed by all Opt-In Plaintiffs. (*See* responses *supra* ¶¶ 28, 31.) The assertion that the NICA Independent Contractor Agreement "reflects the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.

70.     Plaintiffs admit that that this paragraph accurately quotes the CANE Independent Driver Service Agreement. Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence. In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by all Opt-In Plaintiffs. (*See* responses *supra* ¶¶ 32, 33.) The assertion that the CANE Independent Driver Service Agreement "reflects the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is

improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.

71.     Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 35, 36, 44.)   The assertion that the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement "reflect the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.

72.     Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

73.     Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

74.     Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

75.     Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**G. Transportation Service Providers Own or Lease, Maintain, and Deploy their Own Vehicles**

76.     The assertion that Opt-In Plaintiffs "exercise . . . discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs deny the assertion that they are free to select which vehicle to use in connection with their work for TXX.  (Baratta Decl. ¶ 25; Cunningham Decl. ¶¶ 18, 21; Dean Decl. ¶ 4; Henry Decl. ¶ 39; Ortellado Decl. ¶¶ 16-17; Rizzo Decl. ¶ 21.)

77.     Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the actions and responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.) ¶ 25 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 19 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex.

324 (Gerlett Decl.) ¶ 23 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 19 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  Accordingly, no response to this paragraph is necessary.

78.     The assertions that Opt-In Plaintiffs "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that the Opt-In Plaintiffs used several types of vehicles.  Plaintiffs deny that the Opt-In Plaintiffs used all the types of vehicles listed in this paragraph.  Rather, the Discovery Plaintiffs used various types of vans or cars/SUVs and, in one case, a pick-up truck. (Pagano Ex. 355 (Alexander Dep.) 42:14-24 (car and van); Pagano Ex. 360 (Armstrong Dep.) 26:12-18 (vans); Baratta Decl. ¶¶ 23-26 (van and car); Pagano Ex. 344 (Campos Dep.) 91:5-7 (van); Pagano Ex. 341 (Cunningham Dep.) 18:24-19:5 (van and car); Pagano Ex. 350 (Dean Dep.) 66:14-67:8 (van); Pagano Ex. 345 (Fernandez Dep.) 117:6-20 (van and car); Pagano Ex. 336 (Franco Dep. day 2) 50:4-25 (van); Pagano Ex. 338 (Gonzalez Dep.) 33:12-23 (vans); Pagano Ex. 349 (Grant Dep.) 44:8-45:18 (vans); Pagano Ex. 339 (Henry Dep.) 53:4-10 (vans); Pagano Ex. 364 (Lindsay Dep.) 54:18-59:7 (van and car); Pagano Ex. 361 (Marin Dep.) 63:23-65:4, 91:14-19 (vans and car); Pagano Ex. 337 (Morocho Dep.) 94:5-11, 95:23-96:23 (van and pickup truck); Morris Decl. ¶ 8 (van); Pagano Ex. 356 (Oliveira Dep.) 79:10-80:19 (vans); Ortellado Decl. ¶ 54 (van, SUV, and Jeep); Pagano Ex. 342 (Paul Dep.) 35:8-20, 37:6-11, 38:8-12, 39:2-5 (vans); Pagano Ex. 363 (Raghubir Dep.) 35:10-14, 63:10-19, 64:24-65:2, 143:6-12 (vans and SUVs); Rizzo Decl. ¶ 21 (car and van); Pagano Ex. 346 (Sawhney Dep. day 1) 58:7-8, 117:8-17 (vans); Pagano Ex. 348 (Wadada Dep.) 36:16-37:5 (vans).  Plaintiffs deny that any Opt-In Plaintiff used more than two

vehicles at a time to work for TXX.  In fact, most of the time Discovery Plaintiffs used one vehicle at a time to work for TXX.  (Pagano Ex. 355 (Alexander Dep.) 42:14-24; Pagano Ex. 360 (Armstrong Dep.) 50:14-22; Armstrong Decl. ¶ 39; Baratta Decl. ¶¶ 23-26; Pagano Ex. 344 (Campos Dep.) 195:23-196:16; Pagano Ex. 341 (Cunningham Dep.) 18:24-19:5; Cunningham Decl. ¶¶ 41-44; Pagano Ex. 350 (Dean Dep.) 66:14-67:8, 145:9-13; Pagano Ex. 345 (Fernandez Dep.) 117:6-20; Fernandez Decl. ¶ 46; Pagano Ex. 336 (Franco Dep. day 2) 50:4-53:9; Pagano Ex. 338 (Gonzalez Dep.) 33:12-23; B. Gonzalez Decl. ¶ 48; Pagano Ex. 349 (Grant Dep.) 44:22-45:6; Pagano Ex. 339 (Henry Dep.) 53:4-10; Henry Decl. ¶ 37; Pagano Ex. 343 (Lewis Dep.) 171:15-21; Pagano Ex. 364 (Lindsay Dep.) 54:18-59:7; Pagano Ex. 361 (Marin Dep.) 61:21-62:7, 91:10-22; Pagano Ex. 337 (Morocho Dep.) 94:5-96:23; Morris Decl. ¶ 8; Pagano Ex. 356 (Oliveira Dep.) 78:15-80:22; Ortellado Decl. ¶ 54; Pagano Ex. 342 (Paul Dep.) 35:8-20, 37:6-11, 38:8-12, 39:2-5; Paul Decl. ¶¶ 26-28; Pagano Ex. 363 (Raghubir Dep.) 74:23-24.)

79.     Plaintiffs admit the assertions in this paragraph.

80.     The assertion that Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  In any event, Plaintiffs deny the assertions in this paragraph.  (Ortellado Decl. ¶¶ 4-5, 19; Rizzo Decl. ¶¶ 6-8.)

81.     Plaintiffs admit the assertions in this paragraph.

82.     Plaintiffs admit the assertions in this paragraph.

83.     Plaintiffs admit that the commercial vehicles used by the cited Discovery Plaintiffs bear the name and address of the relevant Driver-Corporation.  To the extent this paragraph contains assertions about any other Opt-In Plaintiffs, Defendants have failed to support those

assertions by citation to relevant and admissible evidence.  Accordingly, no further response is necessary.

84.     Plaintiffs deny that the Opt-In Plaintiffs paid for all expenses incurred in connection with their work for TXX.  (Morris Decl. ¶ 35.)  The remaining assertions in this paragraph are conclusions and/or arguments that are improper in a 56.1 statement and/or are not supported by citation to relevant evidence.  As such, no further response is necessary.  Specifically, the assertions in this paragraph that Opt-In Plaintiffs "exercise discretion" and "invest" are conclusions and/or arguments that are improper in a 56.1 statement.  Defendants have not supported their assertion that the Opt-In Plaintiffs "invest in the transportation business in order to increase profitability" by citation to relevant and admissible evidence.  None of the Discovery Plaintiffs so testified in the cited deposition testimony.  To the extent Defendants cite non-party declarations, those declarations do not discuss the practices of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3).  (Pagano Ex. 322 (Zamora Decl.) ¶ 33 (discussing the practices of the declarant and the "LZR Companies," neither of which is an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 27 (discussing the practices of the declarant and the "JANBC Companies," neither of which is an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 31 (discussing the practices of the declarant and the "Standard Companies," neither of which is an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 27 (discussing the practices of the declarant and "EGS," neither of which an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)

85. Plaintiffs admit that some Opt-In Plaintiffs have used helpers. The remaining assertions in this paragraph are improper conclusions and/or arguments and/or are not supported by citation to relevant evidence. As such, no further response is necessary. Specifically, the assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement. To the extent Defendants cite non-party declarations in support of the remaining assertions in this paragraph, those declarations do not discuss the practices of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3). (Pagano Ex. 322 (Zamora Decl.) ¶ 31 (discussing the practices of the declarant and the "LZR Companies," neither of which is an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 25 (discussing the practices of the declarant and the "JANBC Companies," neither of which is an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 29 (discussing the practices of the declarant and the "Standard Companies," neither of which is an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 25 (discussing the practices of the declarant and "EGS," neither of which an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").) The cited Discovery Plaintiff testimony acknowledges that the witnesses used helpers but does not otherwise support the assertions in this paragraph.

86. Plaintiffs deny that Laura Zamora is a "Transportation Service Provider." Defendants have defined "Transportation Service Providers" as the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), and Laura Zamora is neither an Opt-In Plaintiff nor an Opt-In Plaintiff's "Driver-Corporation." (*Id*.) Plaintiffs further deny that Dean made a "business decision" not to buy a second vehicle. (Pagano Ex. 350 (Dean Dep.) 145:23-24.)

87.    The assertion that Cunningham "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  To the extent a response to that assertion is necessary, Plaintiffs deny that assertion. (Cunningham Decl. ¶¶ 18, 21)

88.    Plaintiffs admit that at some point in the past, Campos maintained two vehicles to use for his work for TXX.  (Pagano Ex. 344 (Campos Dep.) 218:22-25 ("I used to have two[.]").)

89.    Plaintiffs deny the assertions in this paragraph, as Defendants have mischaracterized the cited deposition testimony.  By way of further response, Marin purchased a larger vehicle because TXX told her if she did not do so, it would take away her route and she would lose her only job.  (Pagano Ex. 361 (Marin Dep.) 63:3-17.)

90.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  In the cited deposition testimony, neither Baratta nor Lewis testified about the size of any vehicle.  (Pagano Ex. 359 (Baratta Dep.) 27; Pagano Ex. 343 (Lewis Dep.) 170-172.)  The Lewis deposition exhibit cited is unrelated to vehicles and/or vehicle size. (Pagano Ex. 155.)  None of the witnesses cited testified that "the investment [in a larger vehicle] could increase capacity to allow more Freight to be transported, which would generate additional revenue."  (Pagano Ex. 347 (Sawhney Dep. day 2) 162-163; Pagano Ex. 348 (Wadada Dep.) 65-66, 133-135; Pagano Ex. 343 (Lewis Dep.) 170-172; Pagano Ex. 359 (Baratta Dep.) 27.)   In addition, the assertions that Opt-In Plaintiffs "exercise discretion" and "invest" are conclusions and/or arguments that are improper in a 56.1 statement.  Accordingly, no response to this paragraph is necessary.

91.    Plaintiffs deny the assertions in this paragraph, as Defendants have mischaracterized the cited testimony.  Lindsay testified that he has had less work than he used to

34

since he lost his Capital One route, that he does not need to work as much as he used to because he is "getting older," and that less work is "[l]ess headache."  (Pagano Ex. 364 (Lindsay) 59:6-12, 59:23-25, 60:8-19.)  He did not characterize his use of a particular vehicle as a "business decision" or an "invest[ment]."

92.     Plaintiffs admit that Sawhney used his vehicle as described in this paragraph.  The assertion that Sawhney "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.

93.     The assertion that Baratta "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit the remaining assertions in this paragraph.

94.     Plaintiffs deny the assertions in this paragraph.   (Cunningham Decl. ¶ 9.)

95.     Plaintiffs deny the assertions in this paragraph, as Defendants have misquoted the CANE Owner/Operator Agreement and TXX Owner/Operator Agreement.  (*See* Pagano Exs. 258, 259 second "Whereas" clauses.)  Moreover, Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" those documents by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by all Opt-In Plaintiffs. (*See* responses *supra* ¶¶ 35, 36, 44.)

**H. Transportation Service Providers Engage Helpers and Other Individuals to Service Shippers**

96.     The assertions in this paragraph that Opt-In Plaintiffs "exercised discretion" are conclusions and/or arguments that are improper in a 56.1 statement.  Accordingly, no response to those assertions is necessary.  Defendants have also failed to support the assertions in this paragraph by citation to relevant and admissible evidence to the extent Defendants cite non-party

declarations.  Those declarations do not discuss the actions of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3).  (Pagano Ex. 322 (Zamora Decl.) ¶ 5 (discussing the practices of the declarant and the "LZR Companies," neither of which is an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 5 (discussing the practices of the declarant and the "JANBC Companies," neither of which is an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 5 (discussing the practices of the declarant and the "Standard Companies," neither of which is an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 5 (discussing the practices of the declarant and "EGS," neither of which an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  In any event, Plaintiffs deny the assertions in this paragraph.  Most Discovery Plaintiffs formed and/or used "Driver-Corporations" because TXX required them to do so.  (Alexander Decl. ¶¶ 16-17; Armstrong Decl. ¶¶ 40-42; Baratta Decl. ¶¶ 33-35; Cunningham Decl. ¶¶ 54-56; Dean Decl. ¶¶ 34-36; B. Gonzalez Decl. ¶¶ 33-34; Grant Decl. ¶¶ 59-60; Henry Decl. ¶ 6; Marin Decl. ¶¶ 27-28; Morocho Decl. ¶¶ 39-40; Morris Decl. ¶¶ 9, 42-45; Ortellado Decl. ¶¶ 11-12, 14-14; Paul Decl. ¶¶ 33-34; Rizzo Decl. ¶ 8; Pagano Ex. 335 (Franco Dep. day 1) 28:13-24; Pagano Ex. 364 (Lindsay Dep.) 10:22-11:13; Pagano Ex. 363 (Raghubir Dep.) 18:16-23; Pagano Ex. 346 (Sawhney Dep. day 1) 25:13-14.)  In some cases, TXX dictated the type of business entity Discovery Plaintiffs formed.  (Ortellado Decl. ¶¶ 11-12, 14-15; Rizzo Decl. ¶¶ 11-12; Pagano Ex. 335 (Franco Dep. day 1) 28:13-24.)  TXX also directed Discovery Plaintiffs to perform work and give work to certain drivers and to use or not use certain helpers.  (Armstrong Decl. ¶ 33; Cunningham Decl. ¶¶ 49-50; Dean Decl. ¶¶ 23, 25; Fernandez Decl. ¶¶ 17-18; Morris

Decl. ¶ 34; Ortellado Decl. ¶¶ 18-19; Pagano Ex. 339 (Henry Dep.) 99:3-13; Pagano Ex. 364 (Lindsay Dep.) 106:11-109:6.)

97.     Plaintiffs deny the assertions in this paragraph.  (Ortellado Decl. ¶¶ 5-8 (TXX authorized Ortellado to work under another individual before Ortellado even spoke to that individual),18-19 ( TXX managers told Ortellado to use a helper, suggested a particular helper and pay range, and vetoed a helper whom Ortellado wanted to use); Rizzo Decl. ¶¶ 5-7 (Sangern hired Rizzo and told him he would be paid through another person).)

98.     Plaintiffs admit the assertions in this paragraph.

99.     Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.) ¶ 27 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 21 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 25 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 21 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  Accordingly, no response is necessary.  To the extent a response is required, Plaintiffs deny the assertions in this paragraph. By way of further response, TXX set times for drivers to arrive at the TXX warehouse and

penalized tardy drivers. (Armstrong Decl. ¶¶ 12-13, 19; Cunningham Decl. ¶¶ 7, 24, 30; Dean Decl. ¶¶ 21, 29; Fernandez Decl. ¶¶ 32-33; B. Gonzalez Decl. ¶ 8; Grant Decl. ¶¶ 29, 31-32, 52; Henry Decl. ¶ 28; Morocho Decl. ¶¶ 11, 24; Morris Decl. ¶¶ 13, 29-30 & Morris Ex. 2; Ortellado Decl. ¶¶ 9, 20, 45; Paul Decl. ¶ 16; Rizzo Decl. ¶¶ 23-25, 35.) TXX set deadlines for drivers to return empty totes, returned merchandise, and paperwork to TXX. (Armstrong Decl. ¶ 15; Cunningham Decl. ¶¶ 31-32; Grant Decl. ¶ 44; Marin Decl. ¶¶ 22-23.) The Discovery Plaintiffs were not free to set the order of deliveries. (Cunningham Decl. ¶¶ 23, 38; Fernandez Decl. ¶ 36; B. Gonzalez Decl. ¶ 13; Grant Decl. ¶ 46; Morris Decl. ¶ 32; Ortellado Decl. ¶¶ 27-28)

100.    The assertion that the Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement. According, no response to that assertion is necessary. In any event, Plaintiffs deny the assertions in this paragraph. By way of further response, TXX directed Discovery Plaintiffs to give work to specific drivers and to use or not use certain helpers. (Armstrong Decl. ¶ 33; Cunningham Decl. ¶¶ 49-50; Dean Decl. ¶ 23; Fernandez Decl. ¶¶ 17-18; Morris Decl. ¶ 34; Ortellado Decl. ¶¶ 18-19; Pagano Ex. 339 (Henry Dep.) 99:3-13; Pagano Ex. 364 (Lindsay Dep.) 106:11-109:6.) In addition, Ms. Grey is Morris' wife, not his business partner. (Morris Decl. ¶ 56; Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 290:10-19.) She did not "negotiate[] revenue and other business aspects." Rather, in 2013 Ms. Gray addressed certain discrepancies in TXX's payments to Morris because she was in charge of their household's finances, and Morris had been unsuccessful for several months in getting TXX to pay outstanding money owed. (Morris Decl. ¶ 57; Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 290:24-294:10.)

101.    Plaintiffs admit the assertions in this paragraph.  By way of further response, TXX has required Discovery Plaintiffs to "engage helpers and other individuals" when they did not want to do so.  (Ortellado Decl. ¶¶ 45-53.)

102.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, the cited testimony (1) does not discuss whether or not to "engage helpers or other individuals to provide transportation services" and (2) does not establish that "Bellco, a Shipper, determined that he [Morris], as an individual was no longer permitted to transport their freight."  Accordingly, no response to this paragraph is necessary.

103.    The assertion that Zamora "exercised her discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that Zamora filled out a bid form with a rate that was $5 per stop less than what TXX paid Morris and deny all other assertions in this paragraph.  By way of further response, Morris's pay rate was set by TXX; it was not negotiated.  (Morris Decl. ¶ 20.)  Zamora's "bid" is also dated September 11, 2013, the same day that TXX took Morris's route away, and Zamora's "bid" is the only "bid" made on that route.  (Pagano Ex. 321 at Ex. EE; Pagano Ex. 193 (Feb. 7, 2014 Unemployment Ins. Hearing Tr.) 25:23-26:6; Schulman Decl. ¶ 48.)

104.    Plaintiffs admit that some Discovery Plaintiffs had helpers.  The remaining assertions in this paragraph are excessively vague and/or not supported by citation to relevant and admissible evidence.  Accordingly, no further response is necessary.

105.    Plaintiffs deny the assertions in this paragraph.  (Ortellado Decl. ¶¶ 4-5, 18-19; Rizzo Decl. ¶¶ 6-8; Morris Decl. ¶ 34; Paul Decl. ¶¶ 30-31.)

106.    Plaintiffs admit that Defendants require drivers to submit a photo ID for all helpers. Defendants have not supported the assertion that this requirement is "for recordkeeping purposes

in accordance with DEA and other Government Requirements" by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.

107. Plaintiffs deny the assertions in this paragraph. (Morris Decl. ¶ 34; Ortellado Decl. ¶ 18; Rizzo Decl. ¶ 7.)

108. Plaintiffs deny the assertions in this paragraph. (Cunningham Decl. ¶ 50; Morris Decl. ¶ 34; Ortellado Decl. ¶¶ 4-5, 18-19; Paul Decl. ¶¶ 30-31; Rizzo Decl. ¶¶ 6-8.)

109. Plaintiffs deny that the $20 per week payment was "negotiated." By way of further response, after Grant read John Hunt's deposition testimony stating that drivers could arrive at TXX whenever they want, Grant began getting to TXX's Hauppauge warehouse at 7:30 a.m. instead of 5:30 a.m. (Grant Decl. ¶¶ 34-35.) The second day that Grant arrived at 7:30 a.m., the dispatcher Jean Exantus told him that he would lose his route unless he got to TXX at 5:30 a.m. (*Id*.) It was only after Grant described Hunt's testimony and offered to show that testimony to other drivers that Exantus relented. (*Id*. at ¶¶ 37-38.) The driver next to Grant overheard this conversation and said he would take Grant's freight off the conveyor belt so that Grant wouldn't get in trouble. That driver did not ask to be paid for this work. Grant paid him $20 per week anyway since the other driver was doing Grant a favor. (*Id*. at ¶ 39.)

110. The assertion that Morocho "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement. Accordingly, no response to that assertion is necessary. Plaintiffs admit the remaining assertions in this paragraph. By way of further response, TXX is involved in reassigning Julie's Delivery's overflow freight to Campos. (Pagano Ex. 337 (Morocho Dep.) 60:18-61:10.)

111. Plaintiffs deny the assertion that while Opt-In Plaintiff provided transportation services under the name Julie's Delivery Service ("Julie's"), Opt-In Plaintiff Morocho received the revenue for Julie's and picked up, endorsed, and deposited Julie's checks. Morocho received

the revenue for Julie's when she – not Rizzo – made deliveries under the Julie's name.  (Rizzo Decl. ¶¶ 40-42.)

112.    Plaintiffs deny the assertions in this paragraph.  (Campos Decl. ¶ 5.)  By way of further response, Campos never testified that he accepted legal papers in this action on behalf of Julie's Delivery Service.  (Pagano Ex. 344 (Campos Dep.) 34:15-23 ("Q: And you accepted legal papers on behalf of Julie's; did you not?  A: When you say legal papers, what to you mean?"), 134:12-14 ("Q: Recently you accepted service of documents on behalf of Julie's Delivery?  A: Correct.").)  Plaintiff Campos testified that when Rizzo made deliveries for TXX under the name Julie's Delivery Service, Campos sometimes covered Rizzo's route when Rizzo was on vacation.  Campos did not testify that he accepted service of legal papers in this Action on behalf of Julie's.  Rather, he testified that when he covered Rizzo's route, TXX paid Campos, not Julie's.  (*Id*. at 34:22-35:5.)

113.    Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 362 (Rizzo Dep.) 35:17-18; Rizzo Decl. ¶ 7.)

114.    The assertion that Lester and Dexter Alexander "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that sometimes Lester or Dexter Alexander would pick up both of their freight, after which they would each take and deliver their own freight.  Plaintiffs deny the remaining assertions in this paragraph.  (Alexander Decl. ¶ 8.)

115.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, in the cited deposition testimony, Opt-In Plaintiff Alexander did not "acknowledge[] that he exercised the discretion to transport Freight, as opposed to only providing transportation services to Shipper Capital One[.]"  (Defs.' 56.1 Statement ¶ 115.)

41

Alexander in fact testified as follows: "Q: Do you know whether or not you could have decided on behalf of LA Transport to transport pharmacy stuff as opposed to just Capital One?  A: I don't know.  I probably could have, but I don't know."  (Pagano Ex. 355 (Alexander Dep.) 63:15-19.) The cited deposition excerpt does not support the assertion that "he and his brother Dexter Alexander developed" certain "transportation services," and the cited testimony makes no reference to his making a "business decision."  (Defs.' 56.1 Statement ¶ 115; Pagano Ex. 355 (Alexander Dep.) 63.)  Accordingly, no response to this paragraph is necessary.

116.    The assertion that Raghubir and Dave "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  To the extent a response is required, Plaintiffs deny that assertion.  (Pagano Ex. 363 (Raghubir Dep.) 46:3-12, 54:5-20 (a dispatcher directed Raghubir to pick up freight from Dave).) Plaintiffs admit that Raghubir paid Dave for bringing freight to Raghubir and delivering to the first stop.  By way of further response, TXX previously paid Dave for that work.  (*Id.* at 54:5-8.)

117.    Plaintiffs admit the assertions in this paragraph.

118.    Plaintiffs deny the assertion that Victor Spellen operated Franco's vehicle for two to three months.  (Pagano Ex. 335 (Franco Dep. day 1) 44:9-10 (Spellen worked for roughly one a half to two months).)  Defendants have failed to support the remaining assertions in this paragraph by citation to relevant and admissible evidence.  Accordingly, no response to those assertions are necessary.

119.    Plaintiffs admit that Jonathan Solis appeared at TXX as the representative of AIF. Defendants have failed to support the remaining assertions in this paragraph by citation to relevant and admissible evidence.  Accordingly, no response to those assertions are necessary.

120.    Plaintiffs admit the assertions in this paragraph.

121.    The assertion that Opt-In Plaintiffs "have the discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that some Opt-In Plaintiffs' relatives and friends have helped them with their work for TXX.

122.    Plaintiffs admit that Fernandez' mother-in-law covered his route once while he was on vacation.  The assertion that Fernandez "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.

123.    Plaintiffs admit that Gonzalez' daughter worked with Gonzalez in connection with her work for TXX and that Gonzalez did not notify TXX of this fact.  Gonzalez also testified that her daughter worked with her for just "a small amount of time[.]"  (Pagano Ex. 338 (Gonzalez Dep.) 115:25-116:2.)  The assertion that Gonzalez "exercised discretion" is an argument or conclusion that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.

124.    The assertion that Cunningham "exercised discretion" is an argument or conclusion that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that Lukie occasionally helped Cunningham load his vehicle and deny all other assertions in this paragraph.  (Cunningham Decl. ¶¶ 41, 43-44.)

125.    Plaintiffs admit the assertions in this paragraph.

126.    Defendants have failed to support the assertion that "Joy organized the Shipper records" by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit the remaining assertions in this paragraph.  By way of further response, Joy is Morris' wife, not his business partner.  (Morris Decl. ¶ 56; Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 290:10-19.)  The "delivery sheets" are typed

versions of document Morris prepared by hand.  (Pagano Ex. 353 (Morris Dep.) 79:8-82:10; Schulman Ex. 27.)  Morris normally addressed any payment discrepancies with TXX.  (Morris Decl. ¶ 56.)  Joy got involved and dealt with TXX about certain discrepancies in 2013 because she was in charge of their household's finances, and Morris had been unsuccessful for several months in getting TXX to pay outstanding money owed.  (Morris Decl. ¶ 57; Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 290:24-294:10.)

127.    Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 361 (Marin Dep.) 12:12-10, 15:7-15, 18:5-9 (the father of Marin's child helped with her work for TXX for two hours a day two or three times a week for three months).)

128.    Plaintiffs admit that at some point two of Marin's helpers – Joffre and Joshua – worked together.  (*Id*. at 144:9-13.)  The assertion that Joffre "exercised discretion" is an argument or conclusion that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.

129.    The assertion that Morocho "exercised discretion" is an argument or conclusion that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary. Plaintiffs admit that Morocho picked up her sister Ludy while on her route and that Ludy helped Morocho with her work but deny that this occurred "always."  On the contrary, Morocho testified that Ludy helped her "when she can" and "now and then" during the time period when Morocho performed the Julie's Delivery route.  (Pagano Ex. 337 (Morocho Dep.) 45:6-7, 45:11-13, 84:10-12.)

130.    The assertion that Morocho "exercised discretion" is an argument or conclusion that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary. Plaintiffs admit the remaining assertions in this paragraph.

131.    Defendants have failed to support the assertion that Oliveira "selected" his wife and daughter to assist him by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit the remaining assertions in this paragraph.

132.    The assertion that Rizzo "exercised discretion" is an argument or conclusion that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit the remaining assertions in this paragraph.

133.    Plaintiffs admit that Franco's wife and father sometimes accompanied him while he was working and sat in his vehicle to make sure he did not receive tickets and deny that those actions amount to the provision of "transportation services."

134.    Plaintiffs admit that Franco's wife and father did not have TXX IDs.  Plaintiffs deny the remaining assertions in this paragraph.  (Pagano Ex. 336 (Franco Dep. day 2) 34:10-11 ("I do believe they [TXX] saw her a couple of times."), 34:18-24 (noting that Franco picked up his wife and father right outside the TXX facility).)

135.    Plaintiffs admit the assertions in this paragraph.  By way of further response, TXX encouraged Raghubir to get a second vehicle and use additional drivers.  (Pagano Ex. 363 (Raghubir Dep.) 74:22-75:5.)  Raghubir did not use additional drivers throughout the time he worked for TXX.  (*Id*. at 74:2-20.)

136.    The assertion that Opt-In Plaintiffs "exercise discretion" is an argument or conclusion that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  To the extent a response is necessary, Plaintiffs deny the assertions in this paragraph.  (Armstrong Decl. ¶ 33; Cunningham Decl. ¶ 49; Dean Decl. ¶ 23; Morris Decl. ¶ 34.)

137.    The assertion that Morocho "exercised discretion" is an argument or conclusion that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.

Plaintiffs admit the remaining assertions in this paragraph.  By way of further response, Morocho did not use four drivers at one time.  (Morocho Decl. ¶ 30.)

138.    The assertion that Morocho "exercised discretion" is an argument or conclusion that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary. Plaintiffs deny the assertion that Morocho's husband made deliveries "on Morocho's behalf."  (*Id.* at ¶ 20.)  Plaintiffs admit the remaining assertions in this paragraph.

139.    Defendants have failed to support the assertion that Ortellado "selected" her husband to provide transportation services by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.  Plaintiffs admit the remaining assertions in this paragraph.  By way of further response, Ortellado's husband covered the afternoon route for a few days while Ortellado found people to take over the morning route.  Ortellado's husband did not normally work for TXX.  (Ortellado Decl. ¶ 51.)

140.    Plaintiffs deny the assertions in this paragraph.  By way of further response, around December 2014 Ortellado's husband wanted to purchase a tractor-trailer in order to get his own transportation work.  Because a tractor-trailer needed to be registered to a company, and Ortellado already had Just In Time, it made sense to use Just In Time for this purpose.  (*Id.* at ¶ 58.) Ortellado's husband handled all of the tractor-trailer work.  (*Id.*)  Whatever money was paid to Just In Time – either for Ortellado's work for TXX or her husband's tractor-trailer work – was, after paying expenses, family money for Ortellado and her husband that was used to support the household.  (*Id.* at ¶ 61.)

141.    Plaintiffs admit that Ortellado's daughter Romina made deliveries for TXX.  The assertion that Ortellado "exercised her discretion" in doing so is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.

142.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 35, 36, 44.)  The assertion that the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement "reflect the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.

143.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

144.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**I. Transportation Service Providers Have the Discretion to, and Did, Engaged in Bidding**

145.    The assertions that Opt-In Plaintiffs "exercised . . . discretion" are conclusions and/or arguments that is improper in a 56.1 statement.  In addition, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.

Specifically, although this paragraph purports to describe the responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations. (Pagano Ex. 322 (Zamora Decl.) ¶ 4 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 4 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 4 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 4 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").) Accordingly, no response is necessary. To the extent a response is necessary, Plaintiffs deny the assertions in this paragraph. By way of further response, TXX decided which deliveries the Opt-In Plaintiffs make and what their pay rates are. (Alexander Decl. ¶¶ 6-7, 9-11; Armstrong Decl. ¶¶ 4, 6-7, 9, 11, 24-26, 53-54; Baratta Decl. ¶¶ 8-10, 12-14, 16-19; Cunningham Decl. ¶¶ 7-8, 17-22, 24, 26-28, 49-50, 63; Dean Decl. ¶¶ 8-9, 11, 15-16; Fernandez Decl. ¶¶ 6-9, 12-13, 15-23, 25-26, 28-31, 33; B. Gonzalez Decl. ¶¶ 7, 16-24; Grant Decl. ¶¶ 7, 10-13, 16-27; Henry Decl. ¶¶ 7, 9, 11, 15-16, 18-20, 24, 34; Marin Decl. ¶¶ 9-10, 12-17, 19-20; Morocho Decl. ¶ 14-19, 29, 38; Morris Decl. ¶¶ 11, 14-15, 17-20, 22-23; Ortellado Decl. ¶¶ 16, 33, 36-52 & Ortellado Ex. 2; Paul Decl. ¶¶ 7-10, 12-13, 20-23 & Paul Ex. 1 (showing numerous instances where Paul was not paid $8 per stop, which was the rate he submitted in his "bid"); Rizzo Decl. ¶ 14-20, 28-32, 34; Pagano Ex. 356 (Oliveira Dep.) 75:19-76:14, 217:2-6; Pagano Ex. 348 (Wadada Dep.) 29:23-30:13, 31:2-7; Pagano Ex. 360 (Armstrong Dep.) 130:5-6

("You are being paid what TXX has given you."); Pagano Ex. 359 (Baratta Dep.) 58:9-24, 158:25-159:14; Pagano Ex. 350 (Dean Dep.) 120:4-7, 120:14-121:2; Pagano Ex. 335 (Franco Dep. day 1) 36:8-37:3, 94:6-10; Pagano Ex. 364 (Lindsay Dep.) 18:22; Pagano Ex. 337 (Morocho Dep.) 190:17-23; Pagano Ex. 356 (Oliveira Dep.) 217:2-9; Pagano Ex. 334 (Ortellado Dep.) 33:2-7; Pagano Ex. 362 (Rizzo Dep.) 89:4-9; Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 10:22-11:2, 13:16-18, 13:22-25, 23:11-13.)  The administrative fee has not been negotiated. TXX requires Opt-In Plaintiffs to pay that fee, and TXX set the fee.  (Alexander Decl. ¶ 15; Armstrong Decl. ¶ 34; Baratta Decl. ¶ 29; Cunningham Decl. ¶ 40; Dean Decl. ¶ 22; Fernandez Decl. ¶ 42; B. Gonzalez Decl. ¶ 49; Grant Decl. ¶¶ 47, 49; Henry Decl. ¶ 36; Marin Decl. ¶ 32; Morocho Decl. ¶ 44; Morris Decl. ¶ 31; Ortellado Decl. ¶ 57; Paul Decl. ¶ 25.)

146.    Defendants have failed to support the assertion that Opt-In Plaintiffs were aware of "the opportunity to bid, verbally, [or] in writing" by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.  Plaintiffs admit that at some point during the statute of limitations period, Opt-In Plaintiffs could bid through the TXX website.  Plaintiffs deny that bids could be placed through the website throughout the statute of limitations period. (*E.g.*, Pagano Ex. 337 (Morocho Dep.) 188:8-18.)

147.    The assertions in this paragraph that the Opt-In Plaintiffs "exercise . . . discretion" are conclusions and/or arguments that are improper in a 56.1 statement.  Accordingly, no response to those assertions is necessary.  Plaintiffs deny the remaining assertions in this paragraph.  By way of further response, TXX set the Discovery Plaintiffs' pay rates.  (Armstrong Decl. ¶¶ 9, 11, 24, 53; Cunningham Decl. ¶¶ 7-8, 22, 50; Dean Decl. ¶¶ 9, 11-12; Fernandez Decl. ¶¶ 8-9, 20-23, 31, 33; B. Gonzalez Decl. ¶¶ 19-22; Grant Decl. ¶¶ 10-12, 17-18, 21; Henry Decl. ¶¶ 7-8, 11, 15, 20; Marin Decl. ¶ 19; Ortellado Decl. ¶¶ 43-44 & Ortellado Ex. 3; Paul Decl. ¶¶ 7-9.)  When TXX

told the Discovery Plaintiffs their pay rates up front, those rates were presented on a take it or leave it basis.  (B. Gonzalez Decl. ¶¶ 19-21.)  Sometimes TXX gave the Discovery Plaintiffs assignments without telling them what the pay rates would be.  (Armstrong Decl. ¶¶ 9, 24; Cunningham Decl. ¶¶ 7-8; Dean Decl. ¶¶ 9, 11-12; Fernandez Decl. ¶¶ 8-9; Grant Decl. ¶¶ 10-12; Henry Decl. ¶¶ 7-8, 11, 15; Marin Decl. ¶¶ 12, 17; Morocho Decl. ¶¶ 19, 38; Ortellado Decl. ¶ 33; Paul Decl. ¶¶ 7-9.)  In those cases, the Discovery Plaintiffs did not find out what their pay rates were until they received their weekly pay.  (Armstrong Decl. ¶¶ 9, 24; Cunningham Decl. ¶¶ 7-8; Marin Decl. ¶ 12; Morocho Decl. ¶¶ 19, 38; Paul Decl. ¶¶ 7-8.)  TXX also unilaterally changed the Discovery Plaintiffs' pay rates and/or did not pay Discovery Plaintiffs the rate TXX promised.  (Armstrong Decl. ¶ 4; Baratta Decl. ¶¶ 17-19; Dean Decl. ¶ 13; Fernandez Decl. ¶¶ 19-23; Grant Decl. ¶¶ 7, 17-18, 21-27; B. Gonzalez Decl. ¶ 23; Marin Decl. ¶ 20; Morocho Decl. ¶ 18; Paul Decl. ¶¶ 14, 20-22; Rizzo Decl. ¶¶ 17-18, 30.)  Moreover, the Discovery Plaintiffs were not free to pick and choose what stops they did.  If they had a route, they had to make deliveries to all the stops in the route, including any new stops that TXX unilaterally added, unless some of the freight did not fit in their vehicles.  (Alexander Decl. ¶¶ 6-7; Armstrong Decl. ¶ 24; Baratta Decl. ¶¶ 13-14; Grant Decl. ¶ 20; Henry Decl. ¶¶ 18-19; Morocho Decl. ¶ 16; Morris Decl. ¶ 23.)  On the rare occasions when Opt-In Plaintiffs got routes through bidding, which occurred only in 2016 or later, TXX did not pay them their bidded rates.   (Paul Decl. ¶¶ 17-22; Oliveira Decl. ¶¶ 6-15.)

148.    The assertion that Opt-In Plaintiffs "exercise . . . discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Defendants have failed to support the assertions that "Transportation Service Providers," defined by Defendants as the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), provide transportation services directly to Shippers and have "taken

Shippers from TXX" by citation to relevant and admissible evidence.  The Mills Reply Declaration refers to "Vendors," which are not limited to the Opt-In Plaintiffs and their "Driver-Corporations," and none of the work referenced in the cited deposition testimony is work for a TXX Shipper.  In addition, there is no non-hearsay basis for that statement in the Mills Reply Declaration, and that statement is inconsistent with Defendants' assertions that the Opt-In Plaintiffs are unable to comply with recordkeeping requirements and do not maintain "secure transfer locations sufficient to secure Freight."  (*Id*. at ¶¶ 14, 15.)  Thus, no response to these assertions is necessary.  Plaintiffs admit that some Opt-In Plaintiffs have made deliveries for companies other than TXX.

149.   The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  By way of further response, Plaintiffs deny the assertions in this paragraph.  (Alexander Decl. ¶¶ 6-7 (TXX required Alexander to take certain work); Fernandez Decl. ¶ 15 (TXX required Fernandez to take certain work); Morocho Decl. ¶¶ 15-16 (TXX required Morocho to take certain work); Morris Decl. ¶¶ 22-23 (TXX required Morris to take certain work); Ortellado Decl. ¶¶ 41-53 (after Baquero gave Ortellado an afternoon route, he required her to keep a morning route she did not want in order to keep the afternoon route); B. Gonzalez Decl. ¶¶ 17-20 (Maya required Gonzalez to accept additional stops on her route at a particular rate if she wanted to keep the route); Rizzo Decl. ¶¶ 27-30 (TXX dispatchers called Rizzo in for extra work, which he did not feel free to turn down because he was afraid he would lose work or have his pay lowered if he said no).)

150.   The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit the assertion that some Opt-In Plaintiffs do not bid.  By way of further response, most Discovery Plaintiffs have not bid on work at TXX.  (Armstrong Decl. ¶¶ 47-49;

Baratta Decl. ¶ 41; Cunningham Decl. ¶¶ 60-63; Fernandez Decl. ¶ 49; B. Gonzalez Decl. ¶ 25; Henry Decl. ¶¶ 46-47; Morris Decl. ¶¶ 52-55; Ortellado Decl. ¶ 44; Rizzo Decl. ¶ 19; Pagano Ex. 364 (Lindsay Dep.) 59:13-16; Pagano Ex. 337 (Morocho Dep.) 8:11-12, 56:7-8; Pagano Ex. 347 (Sawhney Dep. day 2) 150:20-22.)  Moreover, for most of the time period covered by this lawsuit, there was no bidding at TXX.  (Armstrong Decl. ¶ 46; Cunningham Decl. ¶ 60; Fernandez Decl. ¶ 48; Grant Decl. ¶ 78; Morocho Decl. ¶ 35; Morris Decl. ¶¶ 52-55.)

151.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit the assertion that some Opt-In Plaintiffs have not bid on TXX's website.  By way of further response, most Discovery Plaintiffs have not placed bids on TXX's website.  (Armstrong Decl. ¶¶ 47-49; Baratta Decl. ¶ 41; Cunningham Decl. ¶¶ 62-63; Fernandez Decl. ¶ 49; B. Gonzalez Decl. ¶ 25; Henry Decl. ¶¶ 46-47; Morris Decl. ¶¶ 52-55; Ortellado Decl. ¶ 44; Rizzo Decl. ¶ 19; Pagano Ex. 364 (Lindsay Dep.) 59:13-16; Pagano Ex. 337 (Morocho Dep.) 8:11-12, 56:7-8; Pagano Ex. 347 (Sawhney Dep. day 2) 150:20-22.)  Moreover, for most of the time period covered by this lawsuit, bidding was not available on TXX's website.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 107:8-108:13, 116:10-14; Pagano Ex. 354 (Baquero Dep.) 48:14-17.)

152.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Alexander did not testify "that he would have to compete with everyone else," he did not testify that he spoke with anyone about acceptable pricing, and he could not recall whether or not he submitted a bid on Capital One work.  (Pagano Ex. 355 (Alexander Dep.) 60:13-63:8.)  Moreover, the "rebidding" referenced in the cited deposition testimony relates to TXX rebidding on Capital One work, not drivers rebidding.  (*Id.* at 60:17-20, 62:16-21.)  Accordingly, no response to this paragraph is necessary.

153.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that some Opt-In Plaintiffs have placed bids.

154.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs deny the remaining in this paragraph.  By way of further response, When Discovery Plaintiffs complained to dispatchers that TXX's pay rates were too low, sometimes the dispatchers told Discovery Plaintiffs that they could do the work at the rate TXX paid or not at all, and that if the Discovery Plaintiffs did not want the work other drivers would.  (B. Gonzalez Decl. ¶¶ 20-21; Rizzo Decl. ¶ 32; Marin Decl. ¶¶ 13-15.)  Other times the dispatchers responded to complaints about low pay rates by saying that the rates were the "boss's" decision or that they could not pay more.  (Marin Decl. ¶¶ 12, 19.)  Baquero and Arevalo told Ortellado that she should not complain about low pay for stops added to her Route because the stops were already on her way.  (Ortellado Decl. ¶ 34.)  In general, TXX did not raise the Discovery Plaintiffs' pay rates in response to their complaints about low pay rates.  (B. Gonzalez Decl. ¶ 22; Grant Decl. ¶¶ 25-27; Marin Decl. ¶ 14; Pagano Ex. 350 (Dean Dep.) 120:23-121:4; Pagano Ex. 335 (Franco Dep. day 1) 67:16-68:4; Pagano Ex. 336 (Franco Dep. day 2) 58:2-4; Pagano Ex. 337 (Morocho Dep.) 189:10-19; Pagano Ex. 356 (Oliveira Dep.) 217:2-9; Pagano Ex. 334 (Ortellado Dep.) 33:2-7.)

155.    The assertion in this paragraph that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Defendants have also failed to support the assertions in this paragraph by citation to relevant and admissible evidence. Specifically, Cunningham merely testified that if he told TXX he would not work for the pay rate

it offered TXX would not give him the work.  (Pagano Ex. 341 (Cunningham Dep.) 100.)  Accordingly, no response to this paragraph is necessary.

156.    Plaintiffs admit that at some point TXX began sending mass text messages to drivers who opted in to receive those messages, and some of those messages referenced work available for bidding.  (Pagano Ex. 340 (Sangern Dep.) 150:6-20; Pagano Ex. 354 (Baquero Dep.) 191:14-24; Pagano Ex. 374 at Ortellado945-965.)  Plaintiffs deny that all Opt-In Plaintiffs received these messages or that such messages were sent throughout the statute of limitations period.  (Pagano Ex. 340 (Sangern Dep.) 150:6-20; Pagano Ex. 354 (Baquero Dep.) 191:14-24; Pagano Ex. 338 (Gonzalez Dep.) 70:18-22; Pagano Ex. 356 (Oliveria Dep.) 191:22-24.)

157.    The assertions in this paragraph that Opt-In Plaintiffs "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to those assertions is necessary.  Plaintiffs admit the assertions in this paragraph with respect to Gonzalez.  To the extent that Defendants make assertions in this paragraph concerning Opt-In Plaintiffs other than Gonzalez, such assertions are not supported by admissible and relevant evidence.  Accordingly, no response to such assertions is necessary.

158.    Plaintiffs deny the assertions in this paragraph.  (Armstrong Decl. ¶ 49; Cunningham Decl. ¶ 61; Fernandez Decl. ¶ 49; B. Gonzalez Decl. ¶ 25; Grant Decl. ¶ 79; Morocho Decl. ¶ 34; Morris Decl. ¶ 53.)

159.    Plaintiffs admit the assertions in this paragraph.  By way of further response, TXX took steps to notify Opt-In Plaintiffs of the opportunity to obtain vendor log-in credentials around May 2016.  (Pagano Ex. 354 (Baquero Dep.) 66:17-67:12; Pagano Ex. 26.)

160.    The assertions in this paragraph that Opt-In Plaintiffs "exercis[e] . . . discretion" are conclusions and/or arguments that are improper in a 56.1 statement.  Defendants have also

failed to support the assertions in this paragraph by citation to admissible and relevant evidence. Specifically, although this paragraph purports to describe the actions of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), neither the cited deposition testimony nor the cited exhibits discuss or reflect bids placed by any of the Opt-In Plaintiffs or their "Driver-Corporations." Accordingly, no response to this paragraph is necessary. Notwithstanding the foregoing, Plaintiffs deny the assertions in this paragraph. (Armstrong Decl. ¶¶ 47-49; Baratta Decl. ¶ 41; Cunningham Decl. ¶¶ 62-63; Fernandez Decl. ¶ 49; B. Gonzalez Decl. ¶ 25; Henry Decl. ¶¶ 46-47; Morris Decl. ¶¶ 52-55; Ortellado Decl. ¶ 44; Rizzo Decl. ¶ 18; Pagano Ex. 364 (Lindsay Dep.) 59:13-16; Pagano Ex. 337 (Morocho Dep.) 8:11-12, 56:7-8; Pagano Ex. 347 (Sawhney Dep. day 2) 150:20-22.)

161.    Plaintiffs admit the assertions in this paragraph. By way of further response, TXX did not have online bidding until some point between 2013 and 2016. (Pagano Ex. 354 (Baquero Dep.) 48:14-17; Pagano Ex. 352 (J. Hunt Dep. day 2) 107:8-108:13 (discussing Schulman Ex. 19 (e-mails from 2013)), 113:11-25 (discussing Schulman Ex. 20 (e-mails from 2016 and 2017)).)

162.    Plaintiffs deny the assertions in this paragraph. By way of further response, the cited document (Pagano Ex. 191 at TRA3325) is a rate agreement, not a "bid sheet." (Pagano Ex. 352 (J. Hunt Dep. day 2) 80:3-14 (discussing Schulman Ex. 18); Pagano Ex. 344 (Campos Dep.) 262:13-16 (discussing, *inter alia*, Pagano Ex. 57).) Rate agreements are documents that are signed by the driver and a TXX representative after the pay rate for the listed work has been established. (Pagano Ex. 340 (Sangern Dep.) 138:20-23 (discussing Schulman Ex. 30.) TXX sets the rates on the rate agreements. (Armstrong Decl. ¶ 53; Fernandez Decl. ¶ 50; Morocho Decl. ¶¶ 36-37; Pagano Ex. 364 (Lindsay Dep.) 87:22-89:7 (discussing Pagano Ex. 162); Pagano Ex. 334

(Ortellado Dep.) 165:22-166:4.)   On one occasion, at the direction of a TXX dispatcher, Grant used a rate agreement to place a bid on stops to which he was already making deliveries.  (Grant Decl. ¶¶ 81-82.)

163.   The assertion that the Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Notwithstanding the foregoing, Plaintiffs deny the assertions in this paragraph.  (Armstrong Decl. ¶¶ 47-49; Baratta Decl. ¶ 41; Cunningham Decl. ¶¶ 62-63; Fernandez Decl. ¶ 49; B. Gonzalez Decl. ¶ 25; Henry Decl. ¶¶ 46-47; Morris Decl. ¶¶ 52-55; Ortellado Decl. ¶ 44; Rizzo Decl. ¶ 19; Pagano Ex. 364 (Lindsay Dep.) 59:13-16; Pagano Ex. 337 (Morocho Dep.) 8:11-12, 56:7-8; Pagano Ex. 347 (Sawhney Dep. day 2) 150:20-22.)

164.   Plaintiffs admit the assertions in this paragraph.

165.   Plaintiffs deny the assertions in this paragraph.   By way of further response, Campos testified that TXX set the delivery prices, and sometimes there were negotiations. (Pagano Ex. 344 (Campos Dep.) 11:15-24, 113:9-22.)

166.   The assertion in this paragraph that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs deny the remaining assertions in this paragraph.  (Armstrong Decl. ¶¶ 47-49; Baratta Decl. ¶ 41; Cunningham Decl. ¶¶ 62-63; Fernandez Decl. ¶ 49; B. Gonzalez Decl. ¶ 25; Henry Decl. ¶¶ 46-47; Morris Decl. ¶¶ 52-55; Ortellado Decl. ¶ 44; Rizzo Decl. ¶ 19; Pagano Ex. 364 (Lindsay Dep.) 59:13-16; Pagano Ex. 337 (Morocho Dep.) 8:11-12, 56:7-8; Pagano Ex. 347 (Sawhney Dep. day 2) 150:20-22.)

167.   The assertion in this paragraph that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Notwithstanding the foregoing, Plaintiffs deny the assertions in this

paragraph. By way of further response, TXX set the Opt-In Plaintiffs' pay rates. (Armstrong Decl. ¶¶ 9, 11, 24; Cunningham Decl. ¶¶ 7-8, 22, 50; Dean Decl. ¶¶ 9, 11-12; Fernandez Decl. ¶¶ 8-9, 19-23, 31, 33; B. Gonzalez Decl. ¶¶ 19-24; Grant Decl. ¶¶ 7, 11-12, 17-18, 21-22; Henry Decl. ¶¶ 7-8, 11, 15, 20; Marin Decl. ¶¶ 12-13; Morocho Decl. ¶¶ 17, 19, 38; Morris Decl. ¶¶ 14, 19-20, 22; Ortellado Decl. ¶¶ 16, 32-39, 41-44; Paul Decl. ¶¶ 7-9, 13, 20-22; Rizzo Decl. ¶¶ 14-17, 30-32.)

168.    The assertion in this paragraph that Opt-In Plaintiffs "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement. Defendants have also failed to support the assertions in this paragraph by citation to admissible and relevant evidence. Specifically, the cited deposition testimony does not reference any Opt-In Plaintiff's rate(s) of pay in any way. (Pagano Ex. 338 (Gonzalez Dep.) 45-48.) Accordingly, no response to this paragraph is necessary.

169.    The assertions in this paragraph are speculative and, as such, are not material to this motion.

170.    The assertion in this paragraph that Marin "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement. Accordingly, no response to that assertion is necessary. Plaintiffs admit the remaining assertions in this paragraph.

171.    Plaintiffs deny that the assertions in this paragraph are material to this motion.

172.    Plaintiffs admit that Opt-In Plaintiff Alexander submitted the cited request for proposal to TXX. To the extent that this paragraph purports to make assertions about other Opt-In Plaintiffs and/or requests for proposals, Defendants have failed to support those assertions by citation to admissible and relevant evidence, and no response is necessary.

173.    The assertion in this paragraph that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that some Opt-In Plaintiffs did not request higher pay from TXX.  By way of further response, TXX has rebuffed and penalized drivers who asked for higher pay.  (Alexander Decl. ¶ 10; B. Gonzalez Decl. ¶¶ 19-21; Grant Decl. ¶¶ 24-27; Marin Decl. ¶¶ 14-15; Morocho Decl. ¶ 18; Rizzo Decl. ¶¶ 15-16.)

174.    Plaintiffs admit that TXX paid Opt-in Plaintiffs for some work by the stop and for other work by the route or area.  The assertion in this paragraph that "TXX and various Transportation Service Providers negotiated different revenue arrangements" is not supported by citation to admissible and relevant evidence.  (Pagano Ex. 359 (Baratta Dep.) 58 ("The prices change all the time.  We don't have no say in that."); Pagano Ex. 341 (Cunningham Dep.) 100, 103, 167-68 (only testimony about how a pay rate was set is that Cunningham accepted the rate TXX offered because otherwise TXX would not give him the work); Pagano Ex. 364 (Lindsay Dep.) 87, 89 (only testimony about how a pay rate was set is, "They told me that I was going to be paid $50 for this stop and I signed it").)  Accordingly, no response to that assertion is necessary.

175.    Plaintiffs deny the assertions in this paragraph.  By way of further response, all Opt-In Plaintiffs generated revenue from TXX in the same way: by making deliveries.  (Pagano Ex. 351 (J. Hunt Dep. day 1) 22:8-12.)

176.    Plaintiffs admit the assertion in this paragraph with respect to Opt-In Plaintiff Gonzalez.  Any assertions in this paragraph regarding other Opt-In Plaintiffs are not supported by citation to relevant and admissible evidence.  Accordingly, no response to such assertions is necessary.

177.     Plaintiffs admit that some Opt-In Plaintiffs and TX "entered into arrangements confirming the revenue to be generated."  By way of further response, in 2013 or 2014, TXX began using documents called "rate agreements" to memorialize the rates to be paid to drivers for certain work.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 80:6-81:22 (discussing Schulman Ex. 18); *see also*, *e.g.*, Pagano Exs. 19, 32, 57, 110, 136, 146, 162, 191, 232 (rate agreements).)  Rate agreements are used primarily for one-time assignments.  (Pagano Ex. 340 (Sangern Dep.) 138:12-23; Armstrong Decl. ¶ 53; Fernandez Decl. ¶ 50; Morocho Decl. ¶ 36.)   Rate agreements are signed by the driver and a TXX representative after the pay rate for the listed work has been established. (Pagano Ex. 340 (Sangern Dep.) 138:20-23.)   TXX sets the rates on the rate agreements. (Armstrong Decl. ¶ 53; Fernandez Decl. ¶ 50; Morocho Decl. ¶¶ 36-37; Pagano Ex. 364 (Lindsay Dep.) 87:22-89:7 (discussing Pagano Ex. 162); Pagano Ex. 334 (Ortellado Dep.) 165:22-166:4.)

178.     Plaintiffs deny the assertions in this paragraph.  By way of further response, TXX set the Opt-In Plaintiffs' pay rates.  (Armstrong Decl. ¶¶ 9, 11, 24, 53; Baratta Decl. ¶¶ 17-19; Cunningham Decl. ¶¶ 7-8, 22, 50; Dean Decl. ¶¶ 8-9, 11-13; Fernandez Decl. ¶¶ 8-9, 12, 19-23, 31, 33; B. Gonzalez Decl. ¶¶ 19-24; Grant Decl. ¶¶ 7, 12, 17-18, 21-27; Henry Decl. ¶¶ 7, 11, 15, 20; Marin Decl. ¶¶ 12, 17, 19-20; Morocho Decl. ¶¶ 17, 19, 38; Morris Decl. ¶¶ 14, 19-20, 22; Ortellado Decl. ¶¶ 16, 32-39, 41-44 & Ortellado Exs. 2-3; Paul Decl. ¶¶ 7-10, 13-15, 17-23 & Paul Ex. 1; Rizzo Decl. ¶¶ 14-17, 30-32.)

179.     Plaintiffs deny that they "negotiated" with TXX.  (Armstrong Decl. ¶¶ 9, 11, 24, 53; Baratta Decl. ¶¶ 17-19; Cunningham Decl. ¶¶ 7-8, 22, 50; Dean Decl. ¶¶ 8, 11-13; Fernandez Decl. ¶¶ 8-9, 12, 19-23, 31, 33; B. Gonzalez Decl. ¶¶ 19-24; Grant Decl. ¶¶ 7, 11-12, 17-18, 21-27; Henry Decl. ¶¶ 7-8, 11, 15, 20; Marin Decl. ¶¶ 12, 17, 19-20; Morocho Decl. ¶¶ 17, 19, 38;

Morris Decl. ¶¶ 14, 19-20, 22; Ortellado Decl. ¶¶ 16, 32-39, 41-44 & Exs. 2-3; Paul Decl. ¶¶ 7-10, 13-15, 17-23 & Paul Ex. 1; Rizzo Decl. ¶¶ 14-17, 30-32.)

180.   Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, the cited testimony, Pagano Ex. 198 at 215, is vague and unclear regarding what was provided to whom and when.  Accordingly, no response to this paragraph is necessary.

181.   The assertion that "Morris exercised his discretion not to secure the Freight as agreed and as a result" is an argument and/or conclusion that is improper in a 56.1 statement and, in any event, that assertion is not supported by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.  In any event, Plaintiffs deny the assertions in this paragraph.  By way of further response, Defendants took Morris' route away on September 11, 2013. (Pagano Ex. 193 (Feb. 7, 2014 Unemployment Ins. Hearing Tr.) 25:23-36:6.)  Zamora's "bid" is dated the same day, September 11, 2013, and Zamora's "bid" is the only "bid" made on that route.  (Pagano Ex. 321 at Ex. EE; Schulman Decl. ¶ 48.)  Zamora frequently receives preferential treatment from TXX dispatchers.  (Armstrong Decl. ¶¶ 25-29; Grant Decl. ¶ 85; Paul Decl. ¶ 31.)

182.   The assertion that Opt-In Plaintiffs "exercise discretion" is an argument and/or conclusion that is improper in a 56.1 statement.  Moreover, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, Baquero did not describe "Specials" as "Freight that is refused by other Transportation Service Providers." Rather, he described "Specials" as work that "may come unexpected [later clarified as one time deliveries], work that may not fit on a vendor's vehicle because it's too large.  Seasonal work." (Pagano Ex. 354 (Baquero Dep.) 78:7-79:8 & errata.)  Baquero also testified that Specials are not

posted on TXX's website for bidding, and none of the Discovery Plaintiff deposition testimony cited refers to bidding. (*Id.* at 79:9-11.) Accordingly, no response to this paragraph is necessary. Notwithstanding the foregoing, Plaintiffs deny that Opt-In Plaintiffs bid on Specials. (B. Gonzalez Decl. ¶ 25; Morris Decl. ¶¶ 14-16, 22; Rizzo Decl. ¶¶ 14-17, 19, 27-30.)

183.   Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to discuss "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), the cited testimony does not identify a single Opt-In Plaintiff or Opt-In Plaintiff's "Driver-Corporation" that came to TXX from Kinray in 2013.  On the contrary, the only Discovery Plaintiff who came to TXX from Kinray was Alexis Franco, who started working for TXX in 2015.  (Pagano Ex. 335 (Franco Dep. day 1) 17:15-18:12; Alexander Decl. ¶ 2; Armstrong Decl. ¶ 2; Baratta Decl. ¶ 5; Campos Decl. ¶ 2; Cunningham Decl. ¶ 2; Dean Decl. ¶ 2; Fernandez Decl. ¶ 2; B. Gonzalez Decl. ¶ 2; Grant Decl. ¶ 2; Henry Decl. ¶ 2; Marin Decl. ¶ 2; Morocho Decl. ¶ 2; Morris Decl. ¶ 2; Oliveira Decl. ¶ 2; Ortellado Decl. ¶ 2; Paul Decl. ¶ 2; Rizzo Decl. ¶ 2; Pagano Ex. 343 (Lewis Dep.) 33:5-20; Pagano Ex. 364 (Lindsay Dep.) 13:16-18, 15:19-21; Pagano Ex. 363 (Raghubir Dep.) 24:10-25:15; Pagano Ex. 346 (Sawhney Dep. day 1) 16:23-17:2; Pagano Ex. 348 (Wadada Dep.) 172:15-173:2.)  Accordingly, no response to this paragraph is necessary.

184.   Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by

all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 35, 36, 44.)   The assertion that the CANE Owner/Operator Agreement and TXX Owner/Operator Agreement "reflect the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.

185.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.   Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

186.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.   Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**J. Transportation Service Providers Have, and Exercise, the Discretion to Operate in an Entrepreneurial Manner**

187.    The assertions that the Opt-In Plaintiffs "exercise[] discretion are conclusions and/or arguments that are improper in a 56.1 statement.  Similarly, the assertion that the Opt-In Plaintiffs are independent contractors is a legal conclusion that is improper in a 56.1 statement. Accordingly, no response to these assertions is necessary.  Plaintiffs deny the remaining assertions in this paragraph.  By way of further response, TXX determines drivers' assignments and pay rates. (Alexander Decl. ¶¶ 6-7, 9-11; Armstrong Decl. ¶¶ 4, 6-7, 9, 11, 24-26, 53-54; Baratta Decl. ¶¶ 8-10, 12-14, 16-19; Cunningham Decl. ¶¶ 7-8, 17-22, 24, 26-28, 49-50, 63; Dean Decl. ¶¶ 8-9, 11-13, 15-16; Fernandez Decl. ¶¶ 6-9, 12-13, 15-23, 25-26, 28-31, 33; B. Gonzalez Decl. ¶¶ 7, 16-24;

Grant Decl. ¶¶ 7, 10-13, 16-27; Henry Decl. ¶¶ 7, 9, 11, 15-16, 18-20, 24, 34; Marin Decl. ¶¶ 9-10, 12-17, 19-20; Morocho Decl. ¶ 14-19, 29, 38; Morris Decl. ¶¶ 11, 14-15, 17-20, 22-23; Ortellado Decl. ¶¶ 16, 33, 36-52 & Ortellado Ex. 2; Paul Decl. ¶¶ 7-10, 12-13, 20-23 & Paul Ex. 1 (showing numerous instances where Paul was not paid $8 per stop, which was the rate he submitted in his "bid"); Rizzo Decl. ¶ 14-20, 28-32, 34; Pagano Ex. 356 (Oliveira Dep.) 75:19-76:14, 217:2-6; Pagano Ex. 348 (Wadada Dep.) 29:23-30:13, 31:2-7; Pagano Ex. 360 (Armstrong Dep.) 130:5-6 ("You are being paid what TXX has given you."); Pagano Ex. 359 (Baratta Dep.) 58:9-24, 158:25-159:14; Pagano Ex. 350 (Dean Dep.) 120:4-7, 120:14-121:2; Pagano Ex. 335 (Franco Dep. day 1) 36:8-37:3, 94:6-10; Pagano Ex. 364 (Lindsay Dep.) 18:22; Pagano Ex. 337 (Morocho Dep.) 190:17-23; Pagano Ex. 356 (Oliveira Dep.) 217:2-9; Pagano Ex. 334 (Ortellado Dep.) 33:2-7; Pagano Ex. 362 (Rizzo Dep.) 89:4-9; Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 10:22-11:2, 13:16-18, 13:22-25, 23:11-13.)  TXX requires Opt-In Plaintiffs to take assignments they do not want and takes work away from them at will.  (*E.g.*, Alexander Decl. ¶¶ 6-7; Armstrong Decl. ¶ 25; Cunningham Decl. ¶¶ 19-20; Fernandez Decl. ¶¶ 15-16; Grant Decl. ¶¶ 63-66; Henry Decl. ¶ 34; Ortellado Decl. ¶¶ 41-50; Rizzo Decl. ¶¶ 22, 28-30.)

188.    Plaintiffs deny the assertions in this paragraph.  (Alexander Decl. ¶ 3; Armstrong Decl. ¶ 3; Cunningham Decl. ¶¶ 3-4, 14; Fernandez Decl. ¶¶ 3-4; Grant Decl. ¶¶ 3-4; Henry Decl. ¶¶ 3-4; Morris Decl. ¶¶ 3, 61; Ortellado Decl. ¶¶ 3, 7; Paul Decl. ¶¶ 3-4; Rizzo Decl. ¶¶ 3-6, 13, 43.)

189.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited

declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.   (Pagano Ex. 322 (Zamora Decl.) ¶ 32 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 26 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 30 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 26 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)   Accordingly, no response is necessary.

190.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  In any event, Plaintiffs deny the assertions in this paragraph.  (Armstrong Decl. ¶ 33 (TXX directs Armstrong to pick up C2s from another driver for no compensation); Cunningham Decl. ¶¶ 49-50 (TXX directs Armstrong to pick up and drop off items with certain people for no pay or a pay rate set by TXX); Dean Decl. ¶ 23 (TXX directed Dean to pick up or drop off items with another driver); Fernandez Decl. ¶¶ 17-18 (dispatchers directed Fernandez to pick up bags from certain people for no pay); Morris Decl. ¶ 34 (TXX directed Morris to pick up or drop of items with other drivers at a pay rate set by TXX.)

191.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs deny the assertions in this paragraph.  Specifically, while some Discovery Plaintiffs had side jobs in addition to their work for TXX, they performed those jobs in their spare

time, not at the same time that they performed work for TXX.  (Alexander Decl. ¶ 21; Campos Decl. ¶ 7; B. Gonzalez Decl. ¶ 38; Grant Decl. ¶ 73; Marin Decl. ¶¶ 36-37; Morris Decl. ¶¶ 43, 47; Rizzo Decl. ¶¶ 38-39.)

192.    Plaintiffs admit the assertions in this paragraph.

193.    Plaintiffs deny the assertions in this paragraph.  Dean started working for Pro Choice in 2017, roughly five years after he stopped working for TXX.  (Pagano Ex. 350 (Dean Dep.) 14:22-15:2, 26:3-5, 27:4-6.)  The only other work Dean engaged in during the time period when he worked for TXX was freelance social work, which he provided from time to time.  (Dean Decl. ¶ 38; Pagano Ex. 350 (Dean Dep.) 200:9-201:9.)

194.    The assertion that Raghubir "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary. Plaintiffs admit that Raghubir returned to TXX in the afternoons for extra work.  By way of further response, it was up to TXX's dispatchers whether or not to assign him extra work.  (Pagano Ex. 363 (Raghubir Dep.) 28:24-25 (dispatchers "are selfish who gets the jobs and who they want to give the jobs"), 78:9-10 (noting that there is "favoritism" at TXX with respect to job assignments).)

195.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, the cited deposition testimony says nothing about "secur[ing] additional transportation service opportunities" or "return[ing] home[.]"  In addition, the assertion that Baratta "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to this paragraph is necessary.

196.    Plaintiffs deny the assertions in this paragraph.  By way of further response, the Discovery Plaintiffs worked exclusively for TXX for most or all of the time that they worked for TXX.  (Alexander Decl. ¶ 21; Baratta Decl. ¶ 38; Cunningham Decl. ¶ 66; Fernandez Decl. ¶ 51;

B. Gonzalez Decl. ¶ 38; Grant Decl. ¶¶ 62, 67, 73-74; Marin Decl. ¶¶ 35-37; Morocho Decl. ¶ 43; Morris Decl. ¶¶ 43, 47; Ortellado Decl. ¶ 55; Paul Decl. ¶ 36; Rizzo Decl. ¶¶ 38-39; Pagano Ex. 364 (Lindsay Dep.) 55:20-25; *see also* Schulman Ex. 37, Response No. 9; Schulman Ex. 38, Response No. 9.)

197.   Plaintiffs admit the assertions in this paragraph.  By way of further response, Fernandez stopped working for Iron Mountain before he started working for TXX.  (Fernandez Decl. ¶ 52.)

198.   Plaintiffs deny the assertions in this paragraph.  (B. Gonzalez Decl. ¶¶ 2-8.) Gonzalez did not work for Velocity after she started working for TXX.  (Pagano Ex. 338 (Gonzalez Dep.) 21:8-16, 45:20-46:18 (referencing Pagano Ex. 115).)  Gonzalez started working for TXX around June 2008.  (*Id*. at 45:20-46:18 (referencing Pagano Ex. 115); Pagano Ex. 117 at BranneGonzalez612 (2008 IRS Form 1099 from CANE for Gonzalez' work for TXX); B. Gonzalez Decl. ¶¶ 2-3, 6-7.)

199.   Plaintiffs admit that before TXX gave Gonzalez a Saturday delivery route, she delivered newspapers on the weekends.  Gonzalez stopped delivering newspapers once TXX gave her a Saturday route.  (B. Gonzalez Decl. ¶ 38.)

200.   Plaintiffs deny the assertions in this paragraph.  By way of further response, Lindsay worked for Walsh Messenger Service before he worked for TXX.  (Pagano Ex. 364 (Lindsay Dep.) 55:20-25; *see also* Schulman Ex. 37, Response No. 9.)  Lindsay testified that he started Winbird Courier "after [he] went to TXX.  They said we have to have a name and number." (Pagano Ex. 364 (Lindsay Dep.) 119:6-8; Pagano Ex. 156 (Winbird Courier Services business certificate dated October 25, 2010.)

201.    Plaintiffs deny the assertions in this paragraph.    (Armstrong Decl. ¶ 33; Cunningham Decl. ¶¶ 49-50; Fernandez Decl. ¶¶ 17-18; Morris Decl. ¶ 34.)

202.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that TXX drivers sometimes help one another by pulling other drivers' freight off the conveyor belt.

203.    The assertion that Raghubir and Dave "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  To the extent a response is required, Plaintiffs deny that assertion.  (Pagano Ex. 363 (Raghubir Dep.) 46:3-12, 54:5-20 (a dispatcher directed Raghubir to pick up freight from Dave).) Plaintiffs admit that Raghubir paid Dave for bringing freight to Raghubir and delivering to the first stop.  By way of further response, TXX previously paid Dave for that work.  (*Id*. at 54:5-8.)

**K. Transportation Service Providers Exercise Discretion to Engage in Business Transactions**

204.    Plaintiffs deny the assertions in this paragraph.  (Rizzo Decl. ¶¶ 2, 40-41 (Rizzo stopped making deliveries for TXX because he had to move to be with his sick daughter); Pagano Ex. 334 (Ortellado Dep.) 106:23-108:4 (Ortellado stopped making deliveries for TXX when she moved to Florida because the climate there was better for her asthma); Pagano Ex. 338 (Gonzalez Dep.) 23:5-11 (Gonzalez stopped working for TXX because she got sick); Pagano Ex. 347 (Sawhney Dep. day 2) 155:19-156:15 (Sawhney stopped working for TXX after Sangern sent him a text message saying that TXX would have no work for him on Monday).)

205.    The assertion that Franco "exercised . . . discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary. Plaintiffs deny the remaining assertions in this paragraph and deny that Defendants have supported

those assertions by citation to relevant and admissible evidence.  By way of further response, Solis started making deliveries under AIF in the summer of 2017.  (Pagano Ex. 335 (Franco Dep. day 1) 16:9-14.)  From the summer of 2017 to 2018, Solis received 90% of what TXX paid AIF, and Franco received 10%.  (*Id*. at 20:13-19.)  Franco sold AIF to Solis around March 2018.  (*Id*. at 26:2-12; Schulman Ex. 35 (reflecting sale date of March 10, 2018).)

206.    Plaintiffs admit that while Solis made deliveries for TXX under the AIF name before buying the corporation from Franco, Franco substituted for Solis on less than five occasions. The assertion that Franco "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.

207.    The assertion that Gonzalez "exercised . . . discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that Gonzalez sold MJ Morales and her vehicle to Jose Antonio Caro in June 2014.  The assertions that this sale included MJ Morales' "goodwill" and "the activities of MJM including Shippers secured from TXX by Gonzalez" is not supported by citation to relevant and admissible evidence.  Accordingly, no response to those assertions is necessary.  Nonetheless, Plaintiffs deny that Gonzalez sold "the activities of MJM including Shippers secured from TXX by Gonzalez."  (Pagano Ex. 338 (Gonzalez Dep.) 23:10-12 ("So at that time I got sick, so I sold the company.  The corporation, not the route.  Just the corporation and my car.").)

208.    Plaintiffs admit the assertions in this paragraph.

209.    Plaintiffs admit that Alexander stopped working for TXX because he found a better paying job.  The assertion that Alexander "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.

**L. Transportation Service Providers Exercise Discretion to Refuse Transportation Services Opportunities to Shippers**

210.   To the extent they rely on non-Party declarations (*i.e.*, the Zamora, Gonzalez, Gerlett, and Gualipa declarations), Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations. (Pagano Ex. 322 (Zamora Decl.) ¶ 24 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 17 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 22 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 18 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  In addition, the characterization of Transportation Service Providers as people who "possess . . . discretion" is a conclusion and/or argument that is not the proper subject of a 56.1 statement.  Notwithstanding the foregoing, Plaintiffs deny the assertions in this paragraph.  (Alexander Decl. ¶¶ 6-7; Fernandez Decl. ¶ 15; B. Gonzalez Decl. ¶¶ 17-20; Henry Decl. ¶¶ 18-19; Morocho Decl. ¶ 16; Ortellado Decl. ¶¶ 45-50; Rizzo Decl. ¶¶ 28-30.)

211.   The assertion that Henry "exercised discretion" is a conclusion and/or argument that is not the proper subject of a 56.1 statement.  In addition, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence, as the cited

deposition testimony concerns pay rates and not work offers.  (Pagano Ex. 339 (Henry Dep.) 76:20-77:11.)  Accordingly, no response to this paragraph is necessary.  In any event, Plaintiffs deny the assertions in this paragraph.  (Henry Decl. ¶ 19.)  By way of further response, on one occasion when Henry did not perform work that TXX dispatchers wanted him to do, TXX punished him by taking away his afternoon route for a day.  (*Id*. at ¶ 34.)

212.    The assertion that Lindsay "exercised discretion" is a conclusion and/or argument that is not the proper subject of a 56.1 statement.  Accordingly, no response to that assertion is necessary.  To the extent a response is necessary, Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 364 (Lindsay Dep.) 62:25-63:4 ("Q: I mean at the end of the day you can choose when or if you want the aggravation of going out on the road?  A: Not true.").)

213.    The assertion that Raghubir "exercised discretion" is a conclusion and/or argument that is not the proper subject of a 56.1 statement and is not supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.  Notwithstanding the foregoing, Plaintiffs admit that Raghubir stopped working for TXX in the mornings in 2015 or 2016 and deny all other assertions in this paragraph.  By way of further response, it was TXX's decision whether or not to offer delivery assignments to Raghubir.  (Pagano Ex. 363 (Raghubir Dep.) 26:23-27:3, 27:23-24, 33:2-7.)

214.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is not the proper subject of a 56.1 statement.  In addition, Defendants have failed to support the assertions in this paragraph by citation to relevant and specific evidence, as the cited deposition testimony does not establish that the deponents rejected work offered by TXX. Accordingly, no response to this paragraph is necessary.

215.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is not the proper subject of a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that at times Opt-In Plaintiffs have given up Routes or stopped working for TXX entirely.  By way of further response, with respect to the cited deposition testimony, Ortellado wanted to give up her morning route months before TXX allowed her to do so.  However, Baquero required her to keep her morning route in order to get an afternoon route.  Ortellado was finally able to give up her morning route when Baquero gave his permission for her to do so.  (Ortellado Decl. ¶¶ 41-53.)

216.    Plaintiffs deny the assertions in this paragraph and deny that they are material or relevant to the instant motion.  (B. Gonzalez Decl. ¶ 38.)

217.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, Marin testified that she was not penalized when she was unable to take all freight assigned to her because it did not all fit in her vehicle.  (Pagano 361 (Marin Dep.) 48:10-15.)  Accordingly, no response is necessary.  Nonetheless, Plaintiffs deny the assertions in this paragraph.  (Rizzo Decl. ¶¶ 15-18, 28-30.)

218.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 35, 36, 44.)  The assertion that the CANE Owner/Operator Agreement and TXX Owner/Operator Agreement "reflect the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1

71

statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.

219.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

220.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**M. Notices Prepared by Shippers Advise Transportation Service Providers of Shippers' Concerns Regarding the Security of Their Premises and Freight**

221.    Plaintiffs admit the assertion that TXX provided the cited documents to Opt-In Plaintiffs.  Plaintiffs deny the remaining assertions in this paragraph.  The assertion that those documents were "prepared and issued by Shippers" is not supported by citation to relevant and admissible evidence.  Moreover, some of the cited documents are CANE documents and do not purport to be from Shippers.  (*E.g.*, Pagano Exs. 229, 233.)  By way of further response, although Defendants assert that the paperwork at issue was provided to Opt-In Plaintiffs "from time to time," the earliest signature date on the cited documents (other than the CANE documents) is October 19, 2010 (*e.g.*, Pagano Ex. 135 at TVD694), even though may Discovery Plaintiffs started working for TXX years earlier.  (*E.g.*, Alexander Decl. ¶ 2; Armstrong Decl. ¶ 2; Baratta Decl. ¶ 2; Campos Decl. ¶ 2; Cunningham Decl. ¶ 2; Dean Decl. ¶ 2; Fernandez Decl. ¶ 2; B. Gonzalez Decl. ¶ 2; Grant Decl. ¶ 2; Henry Decl. ¶ 2; Marin Decl. ¶ 2; Morocho Decl. ¶ 2; Morris Decl. ¶ 2; Oliveira

Decl. ¶ 2; Paul Decl. ¶ 2.)  In addition, even though Defendants assert that the Shipper Notices were "prepared and issued by Shippers," many documents purporting to be from different Shippers are virtually identical.  (*Compare*, *e.g.*, Pagano Ex. 135 at TVD685 (AmerisourceBergen) *with id*. at TVD686 (Bellco), *id*. at TVD687 (Capital One Bank), *id*. at TVD688 (Cardinal Health), *id*. at TVD689 (RDC), *id*. at TVD690 (HD Smith), *id*. at TVD692 (Fuji Film), *and id*. at TVD695 (Cardinal Health).)  Moreover, some of the Shipper Notices make incorrect references to Shippers or their freight.  (*Id*. at TVD685 (referring to "Amerisource Bergen *Bank*," even though Amerisource Bergen is not a bank) (emphasis added), TVD687 (stating that "Capital One may require sign-off on specific procedures regarding control substance handling[,]" even though Capital One is a bank and does not ship controlled substances; Pagano Ex. 352 (J. Hunt Dep. day 2) 67:3-6 (Capital One deliveries were "[c]hecks, negotiables, interoffice mail").)  Similarly, many of the Shipper Notices ungrammatically and identically refer to "control substance handling" rather than "control*led* substance handling."  (Pagano Ex. 135 at TVD685-690.)

222.    Plaintiffs admit the assertions in this paragraph for the purpose of this motion.

223.    Plaintiffs deny the assertions in this paragraph.  By way of further response, TXX enforced the requirement set forth in the "Shipper Notices" that drivers lock their vehicle doors. (Cunningham Decl. ¶ 34; Grant Decl. ¶¶ 40-41, 56; Marin Decl. ¶ 7; Morris Decl. ¶¶ 24, 35, 37; Ortellado Decl. ¶ 25; *e.g.*, Pagano Ex. 135, at TVD685 (drivers must "ensure" that their vehicle doors "are locked").)  TXX also set and enforced the Discovery Plaintiffs' arrival times to pick up freight.  (Armstrong Decl. ¶¶ 12-13, 19; Cunningham Decl. ¶¶ 24, 30; Fernandez Decl. ¶ 32; B. Gonzalez Decl. ¶ 8; Grant Decl. ¶¶ 29, 31-32, 52; Morocho Decl. ¶¶ 11, 24; Morris Decl. ¶¶ 13, 29-30 & Morris Ex. 2; Ortellado Decl. ¶¶ 9, 20, 45; Rizzo Decl. ¶¶ 23-25, 35; *e.g.*, Pagano Ex. 135 at TVD685 (drivers "must report to their pick up / drop off locations at the correct specified

time").)  TXX also prohibited drivers from making extra stops while completing their routes. (Cunningham Decl. ¶ 47; Grant Decl. ¶¶ 54-55; Pagano Ex. 356 (Pagano Ex. 356 (Oliveira Dep.) 175:15-17.)

## N. Transportation Service Providers Exercise Discretion to Determine the Method of Loading Freight

224.    Plaintiffs deny the assertions in this paragraph.  By way of further response, TXX's warehouses receive freight from TXX's customers in various time slots, or "waves."  (Schulman Ex. 1 (Maya Dep.) 84:23-85:8.)  Currently, the waves at TXX's Carlstadt location are 4:00 a.m., 6:00 a.m., and 7:00 a.m.  (*Id*. at 85:9-12.)  There are three waves at TXX's Brooklyn location, and the drivers for the three waves leave the warehouse between 6:30 a.m. and 8:30 a.m.  (Schulman Ex. 2 (Rodriguez Dep.) 44:13-45:24.)  There are two waves at TXX's Hauppauge location: 4:30 a.m. and 6:00 a.m.  (Pagano Ex. 340 (Sangern Dep.) 84:22-85:17.)  TXX dictates what time the Opt-In Plaintiffs must arrive at a TXX warehouse in the morning.  (Armstrong Decl. ¶¶ 12-13; Cunningham Decl. ¶¶ 7, 30; Dean Decl. ¶ 21; Fernandez Decl. ¶ 32; Gonzalez Dec. ¶¶ 7-9; Grant Decl. ¶ 29; Henry Decl. ¶ 28; Morris Decl. ¶¶ 13, 29; Ortellado Decl. ¶¶ 9, 20; Paul Decl. ¶ 16; Rizzo Decl. ¶¶ 23-25.)  TXX has admonished and penalized drivers who arrive late.  (Fernandez Decl. ¶ 32; Grant Decl. ¶¶ 31-32, 52; Morocho Decl. ¶ 24; Morris Decl. ¶ 30 & Morris Ex. 2; Rizzo Decl. ¶¶ 24, 35.)

225.    Plaintiffs admit the assertions in this paragraph with respect to TXX's Hauppauge warehouse.  To the extent this paragraph makes assertions about any other TXX location, Defendants have failed to support those assertions by citation to relevant and admissible evidence. Accordingly, no further response is necessary.

226.    Plaintiffs admit that the Opt-In Plaintiffs receive manifests for most freight they deliver.  Plaintiffs deny that the Opt-In Plaintiffs receive manifests for all freight they deliver, and

Plaintiffs deny that all manifests list a delivery time.  (Pagano Ex. 340 (Sangern Dep.) 95:19-96:10; Pagano Ex. 339 (Henry Dep.) 30:12-25.)

227.     To the extent this paragraph makes assertions about TXX locations other than its Hauppauge location, Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.   (Pagano Ex. 350 (Dean Dep.) 78:8-13.)  With respect to TXX's Hauppauge location, Plaintiffs deny the assertions in this paragraph.  By way of further response, if TXX admitted drivers who arrived late to TXX's Hauppauge location, TXX required those drivers to enter through the front door.  (*Id*. at 219:25-6.)  In addition, the times set forth in the PODs are typically set by TXX, not by the Shippers.  (Schulman Ex. 45 (TXX e-mails responding to customers' requests for route assignments and delivery times for new stops).)

228.     Plaintiffs deny the assertions in this paragraph.  By way of further response, TXX dictates when the Opt-In Plaintiffs must get to a TXX warehouse in the morning.  (Armstrong Decl. ¶ 13; Cunningham Decl. ¶¶ 7, 30; Fernandez Decl. ¶ 32; B. Gonzalez Decl. ¶ 8; Henry Decl. ¶ 28; Morocho Decl. ¶¶ 11, 24; Morris Decl. ¶¶ 13, 29; Ortellado Decl. ¶ 20; Paul Decl. ¶ 16; Rizzo Decl. ¶ 23.)  Those arrival times have varied depending on the location.  (Armstrong Decl. ¶ 13; Cunningham Decl. ¶¶ 7, 30; Fernandez Decl. ¶ 32; B. Gonzalez Decl. ¶ 8; Henry Decl. ¶ 28; Morocho Decl. ¶ 11; Morris Decl. ¶¶ 13, 29; Ortellado Decl. ¶ 20; Paul Decl. ¶ 16; Rizzo Decl. ¶ 23.)  Freight from different TXX customers is also delivered in different "waves," or time frames. (Schulman Ex. 1 (Maya Dep.) 84:23-85:12; Schulman Ex. 2 (Rodriguez Dep.) 44:13-45:24; Pagano Ex. 340 (Sangern Dep.) 84:22-85:17.)   TXX has punished Opt-In Plaintiffs and other drivers who were late to the warehouse.  (Fernandez Decl. ¶ 32; Grant Decl. ¶¶ 31-32; Morris Decl. ¶ 30.)  There is no bidding on the work of drivers who are late.  Dispatchers assign that work. (Armstrong Decl. ¶¶ 6-7; Cunningham ¶¶ 7-8; Fernandez Decl. ¶¶ 8-9, 15; Grant Decl. ¶¶ 10-12;

Henry Decl. ¶¶ 9, 11; Marin Decl. ¶ 12; Morocho Decl. ¶¶ 29, 38; Morris Decl. ¶¶ 14-15; Paul Decl. ¶ 7; Rizzo Decl. ¶ 14, 19, 28.)

229.    Plaintiffs deny the assertions in this paragraph.  By way of further response, Opt-In Plaintiffs do not bid on the extra, overflow, and/or replacement work described in this paragraph. Rather, dispatchers assign such work to drivers.  (Armstrong Decl. ¶¶ 6-7; Cunningham ¶¶ 7-8; Fernandez Decl. ¶¶ 8-9, 15; Grant Decl. ¶¶ 10-12; Henry Decl. ¶¶ 9, 11; Marin Decl. ¶ 12; Morocho Decl. ¶¶ 29, 38; Morris Decl. ¶¶ 14-15; Paul Decl. ¶ 7; Rizzo Decl. ¶¶ 14, 19, 28.)

230.    Plaintiffs admit the assertions in this paragraph.

231.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that the Opt-In Plaintiffs load freight in reverse order of deliveries.

**O. Freight Is Scanned**

232.    Plaintiffs admit that scanners started to be used for some Shippers' deliveries in 2009.  By way of further response, scanning was not implemented for all Shippers' deliveries at the same time.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 200:17-202:13.)  To this day, not all freight delivered for TXX's customers is scanned.  (Pagano Ex. 354 (Baquero Dep.) 142:23-143:4.)  Not all Discovery Plaintiffs used a scanner.  (Pagano Ex. 355 (Alexander Dep.) 104:13-19.)

233.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement and is not supported by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.)

¶ 35 (discussing the practices of the "LZR Companies," which is neither an Opt-In Plaintiff nor an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 29 (discussing the practices of the "JANBC Companies," which is neither an Opt-In Plaintiff nor an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 33 (discussing the practices of the "Standard Companies," which is neither an Opt-In Plaintiff nor an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 29 (discussing the practices "EGS," which is neither an Opt-In Plaintiff nor an Opt-In Plaintiff's "Driver-Corporation").)   Accordingly, no response to that assertion is necessary.  Plaintiffs admit that all Opt-In Plaintiffs who use a scanner rent it from TXX and deny that any Opt-In Plaintiff has purchased a scanner.  By way of further response, every driver who uses a scanner rents it from TXX.  (Pagano Ex. 354 (Baquero Dep.) 144:3-6.)

234.    With respect to the time period in which scanners were used, Plaintiffs admit the assertions in this paragraph.  Defendants cite no relevant or admissible evidence with respect to the time period before scanners were used.

235.    The assertion that freight is scanned as part of "compliance with DEA and other Government Requirements" is not supported by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.  Plaintiffs admit the remaining assertions in this paragraph.

## P. Transportation Service Providers Exercise Discretion to Determine the Route and Sequence of Deliveries

236.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe interactions with "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (see Defs.' 56.1 Statement ¶ 3), none of the cited

declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations. (Pagano Ex. 322 (Zamora Decl.) ¶ 12 (discussing a contract the declarant's company entered into); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 10 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 12 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 10 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").) Nor does the Opt-In Plaintiff deposition testimony cited in this paragraph support or relate to the assertions in this paragraph. (Pagano Ex. 334 (Ortellado Dep.) 164-165 (discussing calling TXX when issues on the route would cause late deliveries); Pagano Ex. 362 (Rizzo Dep.) 104 (discussing text messages received from TXX); Pagano Ex. 360 (Armstrong Dep.) 92 (discussing communications with pharmacies); Pagano Ex. 359 (Baratta Dep.) 168-169 (discussing communications with TXX); Pagano Ex. 344 (Campos Dep.) 258 (discussing text messages from TXX); Pagano Ex. 350 (Dean Dep.) 113 (discussing communications with TXX); Pagano Ex. 345 (Fernandez Dep.) 108 (discussing communications with TXX); Pagano Ex. 339 (Henry Dep.) 43 (discussing communications with TXX). In addition, the assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is not the proper subject of a 56.1 statement. Accordingly, no response to this paragraph is necessary. To the extent a response is necessary, Plaintiffs deny the assertions in this paragraph. By way of further response, TXX – not the Opt-In Plaintiffs – composed the Opt-In Plaintiffs' routes, and TXX assigns routes to the Opt-In Plaintiffs. (Pagano Ex. 352 (J. Hunt Dep. day 2) 16:9-14; 109:21-110:10, 116:18-117:9; Pagano Ex. 354 (Baquero Dep.) 53:19-54:13, 55:10; Alexander Decl. ¶¶ 6-7; Armstrong Decl. ¶¶ 9, 11, 24-28; Baratta Decl.

¶¶ 10, 12-14, 27; Cunningham Decl. ¶¶ 8, 15-24, 26-28, 63; Dean Decl. ¶¶ 11, 15; Fernandez Decl. ¶¶ 9, 12-13, 28-31; B. Gonzalez Decl. ¶ 17; Grant Decl. ¶¶ 12-21; Henry Decl. ¶¶ 15-21; Morocho Decl. ¶¶ 14-17; Morris Decl. ¶¶ 15, 18-23; Ortellado Decl. ¶¶ 16-17, 32, 41-44 & Ortellado Ex. 3; Paul Decl. ¶¶ 8-13, 17; Oliveira Decl. ¶¶ 5-9; Pagano Ex. 334 (Ortellado Dep.) 99:24-100:15.) TXX instructs and supervises the Opt-In Plaintiffs.  (Armstrong Decl. ¶¶ 15, 22, 30; Cunningham Decl. ¶¶ 11-13, 23, 29-39, 45-52; Dean Decl. ¶¶ 23-29; Fernandez Decl. ¶ 32; B. Gonzalez Decl. ¶¶ 8, 15, 27, 32; Grant Decl. ¶¶ 9, 40-41, 50, 52, 56; Henry ¶¶ 10, 12-13, 30-31; Marin Decl. ¶¶ 5-7; Morris Decl. ¶¶ 24, 36-37; Ortellado Decl. ¶¶ 24-25; Rizzo Decl. ¶¶ 35-36; Pagano Ex. 343 (Lewis Dep.) 192:4-17; Pagano Ex. 356 (Oliveira Dep.) 40:24-41:2; Pagano Ex. 354 (Baquero Dep.) 156:11-21, 157:13-159:16; Schulman Ex. 6; Schulman Ex. 7; Pagano Ex. 359 (Baratta Dep.) 131:24-132:3; Pagano Ex. 353 (Morris Dep.) 124:6-126:9; Pagano Ex. 356 (Oliveira Dep.) 40:15-41:2.)  TXX dictates the order of deliveries.  (Cunningham Decl. ¶¶ 23, 38; Fernandez Decl. ¶ 36; B. Gonzalez Decl. ¶ 13; Grant Decl. ¶ 46; Morris Decl. ¶ 32; Ortellado Decl. ¶¶ 27-28; Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 23:22-24:4; Pagano Ex. 360 (Armstrong Dep.) 118:4-9.)

237.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is not the proper subject of a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that the Opt-In Plaintiffs do not have any input into the content of the PODs and deny all other assertions in this paragraph.  By way of further response, TXX dictates the order of deliveries.  (Cunningham Decl. ¶¶ 23, 38; Fernandez Decl. ¶ 36; B. Gonzalez Decl. ¶ 13; Grant Decl. ¶ 46; Morris Decl. ¶ 32; Ortellado Decl. ¶¶ 27-28.)  The Opt-In Plaintiffs are not free to accept or reject work assignments at will.  (Alexander Decl. ¶¶ 6-7; Fernandez Decl. ¶ 15; Henry Decl. ¶¶ 18-19, 34; Morocho Decl. ¶ 16; Ortellado Decl. ¶¶ 46-50;

Rizzo Decl. ¶¶ 28-30.)   TXX has prohibited drivers from making extra stops on their routes. (Cunningham Decl. ¶ 47; Grant Decl. ¶¶ 54-55; Pagano Ex. 356 (Oliveira Dep.) 175:15-17.)   TXX also can and does direct Discovery Plaintiffs to use or not use certain individuals to "operate the transportation vehicle."   (Ortellado Decl. ¶¶ 6, 11-13, 18-19; Rizzo Decl. ¶ 7.) TXX has input into the content of PODs by giving its customers delivery windows and route assignments for new stops.   TXX's customers do not typically request a specific delivery time for new stops.   (Schulman Ex. 45 (TXX e-mails responding to customers' requests for route assignments and delivery times for new stops).)

238.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.   Accordingly, no response to this paragraph is necessary.   To the extent a response is necessary, Plaintiffs deny the assertions in this paragraph.   By way of further response, TXX has distributed documents to the Opt-In Plaintiffs that are not provided by Shippers.   (*E.g.*, Alexander Decl. ¶ 23 & Alexander Ex. 2; Armstrong Decl. ¶ 36 & Armstrong Ex. 1; Fernandez Decl. ¶¶ 55-56 & Fernandez Exs. 1-2; Morocho Decl. ¶ 46 & Morocho Ex. 1; Morris Decl. ¶¶ 28, 30, 62 & Morris Exs. 1, 3, 5; Ortellado Decl. ¶¶ 30, 36, 42-43 & Ortellado Exs. 1-3; Pagano Ex. 334 (Ortellado Dep.) Exs. 38-39; Pagano Ex. 340 (Sangern Dep.) 185:4-11 (discussing Schulman Ex. 31).)

239.    Plaintiffs deny the assertion that Opt-In Plaintiffs sign PODs at TXX's facility. Rather, the Opt-In Plaintiffs sign the PODs when they make a delivery to a Retailer.   (Pagano Ex. 352 (J. Hunt Dep. day 2) 166:2-10, 188:8-19.).   The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is not the proper subject of a 56.1 statement. Accordingly, no response to that assertion is necessary.   Plaintiffs admit the remaining assertions in this paragraph.

240.     Plaintiff admit the assertion in this paragraph but further state that Armstrong testified, irrespective of the nature of specific freight, that "It's important to show that whatever your have, you know, you delivered." (Pagano Ex. 360 (Armstrong Dep.) 31:24-25.) By way of further response, most of the freight Discovery Plaintiffs delivered was not controlled substances. (B. Gonzalez Decl. ¶ 14; Grant Decl. ¶ 42; Morris Decl. ¶ 26; Rizzo Decl. ¶ 27.)

241.     Plaintiffs admit that Opt-in Plaintiffs sort their PODs. The assertion that they do so in order "to deliver the Freight in a timely fashion" is not supported by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.

242.     Plaintiffs admit that Opt-In Plaintiffs sort the freight in their vehicles based on the delivery sequence. Plaintiffs deny the assertion that they select that sequence. (Cunningham Decl. ¶¶ 23, 38; Fernandez Decl. ¶ 36; B. Gonzalez Decl. ¶ 13; Grant Decl. ¶ 46; Morris Decl. ¶ 32; Ortellado Decl. ¶¶ 27-28.)

243.     Plaintiffs admit the assertions in this paragraph.

244.     The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement. Accordingly, no response to that assertion is necessary. Plaintiffs admit that Opt-In Plaintiffs sometimes make deliveries early.

245.     The phrase "how to arrive" is vague and ambiguous. As such, Plaintiffs are unable to respond to this paragraph.

246.     Plaintiffs admit that this paragraph accurately quotes Grant's resume. By way of further response, on his resume, Grant merely parroted the language of the position description for the job to which he was applying. (Grant Decl. ¶ 75.) Moreover, Grant engaged in puffery on his resume. (Pagano Ex. 349 (Grant Dep.) 89:18-21.)

247.     Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.   Specifically, Defendants cite no evidence to support the assertion that it was "rare" for "Freight from a Shipper . . . not [to be] accompanied by a POD, and they cite no evidence relating to any Shipper other than Fuji Films.   Accordingly, no response to this paragraph is necessary.   Nonetheless, Plaintiffs admit that Morris testified that he used Pagano Ex. 205, a blank form bearing the TXX Services Inc. logo and address, for "Fuji Films security." (Pagano Ex. 353 (Morris Dep.) 60:3-8.)   By way of further response, at times dispatchers print documents for drivers to use as PODs.   (Pagano Ex. 340 (Sangern Dep.) 95:10-18.)   Some TXX customers do not use paper PODs at all unless there is an issue with the electronic scanners.   (*Id.* at 95:19-96:10.)

248.     Plaintiffs admit the assertions in this paragraph.

249.     Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement.   Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.   In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by all Opt-In Plaintiffs.   (*See* responses *supra* ¶¶ 35, 36, 44.)   The assertion that the CANE Owner/Operator Agreement and TXX Owner/Operator Agreement "reflect the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.   Accordingly, no response to that assertion is necessary.

**Q. Transportation Service Providers are Responsible to Provide Replacements**

250.   The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs deny the remaining assertions in this paragraph.  (Armstrong Decl. ¶ 38; Baratta Decl. ¶ 30; Cunningham Decl. ¶¶ 52-53; Fernandez Decl. ¶ 43; Grant Decl. ¶ 57; Morocho Decl. ¶¶ 30, 33; Morris Decl. ¶ 40; Pagano Ex. 340 (Sangern Dep.) 128:12-15.)

251.   Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, the deposition testimony cited relates to Lewis' work as a taper and has nothing to do with TXX.  Accordingly, no response to this paragraph is necessary.  In any event, Plaintiffs deny the assertion that it was Opt-In Plaintiffs' responsibility to find replacement drivers.  (*See* response *supra* ¶ 250.)

252.   The assertion that Fernandez "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit the remaining assertions in this paragraph.

253.   Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, in the cited deposition testimony Henry testified that drivers have to pay replacements that they secure the full amount that TXX pays for the deliveries the replacements make.  (Pagano Ex. 339 (Henry Dep.) 39:7-19.)  Accordingly, no response to this paragraph is necessary.  Nonetheless, to the extent a response is necessary, Plaintiffs deny the assertions in this paragraph.  By way of further response, when TXX secures a replacement driver, TXX pays the replacement and determines the amount of the payment.  (Pagano Ex. 342 (Paul Dep.) 17:9-16; Baratta Decl. ¶¶ 30-32; Cunningham Decl. ¶ 53; Fernandez Decl. ¶ 44; Grant Decl. ¶ 57.)

254.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

255.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**R. The Conduct Engaged in by Transportation Service Providers is Unknown to TXX**

256.    The assertions that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to those assertions is necessary.  Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence to the extent they rely on non-party declarations, *i.e.*, the Zamora, Gonzalez, Gerlett, and Gualipa declarations.  Specifically, although this paragraph purports to describe the practices of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.) ¶ 28 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 22 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 26 (discussing the practices of the declarant and the "Standard Companies," none

of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 22 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)   Moreover, none of the cited deposition testimony relates to the pursuit of "personal endeavors."   To the extent a response is required, Plaintiffs deny the assertions in this paragraph.   By way of further response, it is impossible for the Discovery Plaintiffs to take meaningful breaks and still make their deliveries on time.  (Armstrong Decl. ¶ 37; Cunningham Decl. ¶ 67; Fernandez Decl. ¶ 41; B. Gonzalez Decl. ¶ 26; Grant Decl. ¶ 45.)  Moreover, TXX has prohibited drivers from making extra stops while they were making deliveries.  (Cunningham Decl. ¶ 47; Grant Decl. ¶¶ 53-54; Pagano Ex. 356 (Oliveira Dep.) 175:15-17.)

257.   Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence to the extent they rely on non-party declarations, *i.e.*, the Zamora, S. Gonzalez, Gerlett, and Gualipa declarations.  Specifically, although this paragraph purports to describe the practices of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.) ¶ 12 (discussing the practices of the declarant and the "LZA Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 10 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 12 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 10 (discussing the practices of the declarant and "EGS," neither of which are an

Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  In addition none of the deposition testimony cited relates to (1) whether or not TXX requires Opt-In Plaintiffs to provide transportation services; (2) whether TXX requires Opt-In Plaintiffs to provide a minimum or maximum amount of transportation services; or (3) whether Opt-In Plaintiffs accept work based on their "capacity, objectives and revenue expectations."  Accordingly, the assertions in this paragraph concerning those topics are not supported by citation to relevant and admissible evidence.  Moreover, the assertions that Opt-In Plaintiffs "exercise discretion" are conclusions and/or arguments that are improper in a 56.1 statement.  Accordingly, no response to the foregoing assertions are necessary.  With respect to the remaining assertions in this paragraph. Plaintiffs deny that "[i]n order to ensure that Transportation Service Providers provide appropriate transportation services to Shippers, all Transportation Service Providers maintain direct contact with each Retailer." (B. Gonzalez Decl. ¶ 47; Marin Decl. ¶ 31; Pagano Ex. 343 (Lewis Dep.) 62:3-5; Pagano Ex. 364 (Lindsay Dep.) 77:17-24 (only one customer calls him); Pagano Ex. 353 (Morris Dep.) 156:12-157:5.)  Plaintiffs also deny that Opt-In Plaintiffs decide which work or how much work they perform.  (Alexander Decl. ¶¶ 6-7; Armstrong Decl. ¶¶ 5-9, 24-25; Cunningham Decl. ¶¶ 7-9, 20-22, 24, 26-29, 49-50, 63; Dean Decl. ¶¶ 8-9, 11, 15-16, 23; Fernandez Decl. ¶¶ 8-9, 12-13, 15, 28-30, 33; B. Gonzalez Decl. ¶ 16-18; Grant Decl. ¶¶ 11-12, 16-17, 20-21; Henry Decl. ¶¶ 7, 9-11, 14-19, 21, 24, 34; Morocho Decl. ¶¶ 14-16, 38; Morris Decl. ¶¶ 15, 18-23; Ortellado Decl. ¶¶ 16, 32, 41-44, 46-50 & Ortellado Ex. 3; Paul Decl. ¶¶ 7-10, 12; Rizzo Decl. ¶¶ 14, 19-20, 22, 28-31, 34.)

258.    Plaintiffs deny the assertions in this paragraph.  (Armstrong Decl. ¶¶ 15, 19, 21-22, 35; Baratta Decl. ¶ 25; Cunningham Decl. ¶¶ 11-13, 23-24, 31-32, 35-39, 45-51; Dean Decl. ¶¶ 4, 7, 24-28; Fernandez Decl. ¶¶ 32, 36-37; B. Gonzalez Decl. ¶¶ 13, 28; Grant Decl. ¶¶ 9, 40, 44, 46,

50, 54-56; Henry Decl. ¶¶ 12-13, 31-32, 38-39; Marin Decl. ¶¶ 5-10, 22, 25-26; Morocho Decl. ¶ 10; Morris Decl. ¶¶ 5, 7, 28, 32-35, 37-39; Ortellado Decl. ¶¶ 13, 16-19, 27-30; Paul Decl. ¶¶ 30-31; Rizzo Decl. ¶¶ 35-36.)   Plaintiffs further deny that the PODs reflect the "demands of Shippers[.]"   Rather, TXX tells its Shippers what the delivery times will be, which are then reflected in the PODs.   (Schulman Ex. 45.)

259.    Plaintiffs deny the assertions in this paragraph.   (Schulman Ex. 3; Armstrong Decl. ¶¶ 22, 35-36 & Armstrong Ex. 1; Cunningham Decl. ¶¶ 34-35, 50; Dean Decl. ¶¶ 25-26; Fernandez Decl. ¶ 35; B. Gonzalez Decl. ¶ 28; Henry Decl. ¶¶ 23, 38; Morris Decl. ¶¶ 28, 38-39.)

260.    Plaintiffs admit the assertions in this paragraph.

261.    Plaintiffs deny the assertions in this paragraph.   (Alexander Decl. ¶¶ 6-7, 9-11, 17-19, 23 & Alexander Ex. 2; Armstrong Decl. ¶¶ 6-7, 9, 12-13, 15, 19-22, 27-30, 32-33, 35-36, 38, 41, 47, 54 & Armstrong Ex. 1; Baratta Decl. ¶¶ 5, 9-10, 12-16, 19, 21-22, 25, 30; Cunningham Decl. ¶¶ 6-8, 11-13, 18, 20-25, 28, 30-32, 33-39, 45-52, 55, 65; Dean Decl. ¶¶ 4, 6-7, 9-13, 15, 18, 21, 23-29, 31-32; Fernandez Decl. ¶¶ 5-6, 8-9, 12-13, 15-18, 21-26, 28, 31, 33, 35-40, 43, 47, 50, 55 & Fernandez Ex. 1; B. Gonzalez Decl. ¶¶ 7, 11, 13, 15, 19-24, 27-32, 34, 36, 42, 44, 47; Grant Decl. ¶¶ 9, 11-12, 16-17, 21-22, 25-26, 29, 31-33, 36-37, 40-41, 43-44, 46, 50-58, 76-77, 82; Henry Decl. ¶¶ 5, 7, 9-15, 18, 21-24, 28-35, 38-39, 41, 47, 49; Marin Decl. ¶¶ 5-9, 11-15, 17-20, 23-26, 28, 30-31; Morocho Decl. ¶¶ 10-11, 16, 18-19, 24-25, 33, 37-38, 13 & Morocho Ex. 1; Morris Decl. ¶¶ 5-6, , 13-15, 18-24, 29, 32-42, 48, 50, 54; Ortellado Decl. ¶¶ 5, 10-14, 16, 18-20, 26-28, 31, 34-35, 40-44, 47-48, 53; Paul Decl. ¶¶ 6-10, 15, 16-17, 19, 22, 24, 29, 31, 33; Rizzo Decl. ¶¶ 5-8, 11, 14, 16-18, 20-25, 28, 30-32, 35-36.)

262.    Plaintiffs admit the assertions in this paragraph.

263.    Plaintiffs admit that Opt-In Plaintiffs call TXX when their vehicles break down. The assertion that Opt-In Plaintiffs are not required to do is not supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.  In any event, Plaintiffs deny that assertion.  (B. Gonzalez Decl. ¶ 28; Morris Decl. ¶ 38.)

264.    The assertion that Cunningham "exercised discretion" is not supported by citation to relevant and admissible evidence and is a conclusion and/or argument that improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  To the extent a response is necessary, Plaintiffs deny that assertion.  (Cunningham Decl. ¶ 31.)  Plaintiffs admit that TXX required Cunningham to call TXX when he finished his afternoon deliveries.  By way of further response, Sangern has instructed Cunningham to call or text TXX with the delivery times for the first and last stops on his afternoon Route.  (*Id.* at ¶¶ 35-37; Pagano Ex. 341 (Cunningham Dep.) 37:13-22, 151:7-20.)

265.    Plaintiffs deny the assertions in this paragraph.  By way of further response, the cited testimony concerned only communications while Henry was on the road performing his route.  (Pagano Ex. 339 (Henry Dep.) 43:5-7.)  Henry communicated with TXX dispatchers about various work-related matters.  (Henry Decl. ¶¶ 7, 10-13, 15, 22-24, 28, 30-31, 34-35, 38-39, 41, 49.)

266.    Plaintiffs admit the assertion in this paragraph.

267.    Plaintiffs admit the assertions in this paragraph.  By way of further response, the dispatchers also hire drivers, assign work to drivers, distribute freight and paperwork to drivers, and supervise and instruct drivers.  (Armstrong Decl. ¶¶ 5, 20 29; Cunningham Decl. ¶¶ 6-8, 11-13, 18-25, 27-28, 30, 32-37, 39, 46-50, 52, 65; Fernandez Decl. ¶¶ 5-6, 32, 38, 40; B. Gonzalez Decl. ¶¶ 11, 29-30; Grant Decl. ¶¶ 8-9, 32, 40-41, 50, 52, 54-56; Marin Decl. ¶¶ 4-8; Morocho

Decl. ¶¶ 10-11, 24; Morris Decl. ¶¶ 6, 20, 24, 36-37; Ortellado Decl. ¶¶ 24-25; Rizzo Decl. ¶¶ 5-6, 24, 35; Pagano Ex. 343 (Lewis Dep.) 192:4-17.)

268.    Plaintiffs admit the assertion that Opt-In Plaintiffs contacted TXX upon delivering to their first and last stops and deny all other assertions in this paragraph.  By way of further response, drivers had to call or text TXX with the times of their first and last afternoon deliveries after July 2009.  (Morris Decl. ¶ 28; Cunningham Decl. ¶¶ 35-37; Pagano Ex. 341 (Cunningham Dep.) 151:7-20; Pagano Ex. 376 at Cunningham416-422, Cunningham427-431 (text messages with delivery times from 2015 and 2016).)

269.    Plaintiffs admit the assertions in this paragraph.

270.    Plaintiffs admit the assertions in this paragraph.

271.    Plaintiffs deny the assertions in this paragraph.  (Cunningham Decl. ¶¶ 2, 35; Rizzo Decl. ¶ 36.)

272.    Plaintiffs admit the assertions in this paragraph.

273.    Plaintiffs admit the assertions in this paragraph.

274.    Plaintiffs deny that the GPS "was never used to monitor Transportation Service Providers' movement or location" and deny that the radios were only used prior to September 2008.  (Cunningham Decl. ¶¶ 2, 35; Rizzo Decl. ¶¶ 2, 36; Pagano Ex. 353 (Morris Dep.) 124:5-126:9.)  Plaintiffs admit all other assertions in this paragraph.

275.    Plaintiffs deny the assertions in this paragraph.  (Armstrong Decl. ¶ 35; Dean Decl. ¶ 25; B. Gonzalez Decl. ¶ 28; Morris Decl. ¶ 38.)

276.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that are improper in a 56.1 statement.  Accordingly, no response to the that assertion is necessary.  Plaintiffs admit the remaining assertions in this paragraph.

277.    The assertion that Dean and Morris "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that Dean brought children into a Capital One location, for which he was reprimanded, and that Morris brought children on his route, which resulted in a customer complaint.  The remaining assertions in this paragraph are not supported by citation to relevant and admissible evidence.  Accordingly, no further response is necessary.

278.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Moreover, the assertions in this paragraph are not material to the instant motion.  Accordingly, no response to this paragraph is necessary.

279.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Moreover, the assertions in this paragraph are not material to the instant motion.  Accordingly, no response to this paragraph is necessary.

280.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

281.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

282.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

283.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**S. Transportation Service Providers Exercise Discretion to Engage in Business Arrangements with the Retailers to Whom They Deliver Freight on Behalf of Shippers**

284.    Plaintiffs admit that some Opt-In Plaintiffs have "develop[ed] relationships with representatives of the Retailers to whom they delivered Freight."  Defendants have failed to support the assertion that Opt-In Plaintiff "often" do so by citation to relevant and admissible evidence.

285.    Plaintiffs admit that some Opt-In Plaintiffs gave some retailers their cell phone numbers.  The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.

286.    The assertion that Opt-In Plaintiffs may contact Retailers when they are running late is not supported by citation to relevant and admissible evidence.  Specifically, the deposition testimony cited merely states that sometimes Retailers call certain Opt-In Plaintiffs.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit the remaining assertions in this paragraph.

287.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that some Opt-In Plaintiffs have contacted Retailers.

288.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that some Opt-In Plaintiffs have given some Retailers their cell phone numbers.

289.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  In any event, Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 359 (Baratta Dep.) 57:9-13 (testifying that if there were a mis-delivery on Baratta's route when someone else was covering the route, Tiki would direct Baratta to take care of the problem).)

290.    Plaintiffs admit the assertions in this paragraph with respect to the day of and the day before Baratta's deposition, which was the subject of the cited deposition testimony.  To the extent Defendants make assertions about other time periods, such assertions are not supported by citation to relevant and admissible evidence.  Accordingly, no further response is necessary.

291.    Plaintiffs admit that some Retailers complain to Opt-In Plaintiffs.

292.    Plaintiffs admit the assertions in this paragraph but deny that they are material.

293.    Plaintiffs deny the assertions in this paragraph.  (Fernandez Decl. ¶ 24; Grant Decl. ¶ 83.)

294.    Plaintiffs deny that TXX notified Armstrong of the cited "compliment."  (Pagano Ex. 360 (Armstrong Dep.) 93:20-94:2 ("Q: Did TXX tell you what the customer said? A: No, sir.

Q: How did you know?  A: The customer told me he would write TXX and inform them of my time performances and services.").)

     295.    Plaintiffs admit that this paragraph accurately quotes Grant's resume.

     296.    Plaintiffs admit the assertions in this paragraph.

     297.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**T. Invoices and Settlement Reports Reflect the Outcome of Negotiations**

     298.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, although this paragraph purports to describe the responsibilities of "Transportation Service Providers," who, as defined by Defendants, are the Opt-In Plaintiffs and their "Driver-Corporations" (*see* Defs.' 56.1 Statement ¶ 3), none of the cited declarations discuss the Opt-In Plaintiffs and/or their "Driver-Corporations.  (Pagano Ex. 322 (Zamora Decl.) ¶ 30 (discussing the practices of the declarant and the "LZR Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 323 (S. Gonzalez Decl.) ¶ 24 (discussing the practices of the declarant and the "JANBC Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 324 (Gerlett Decl.) ¶ 28 (discussing the practices of the declarant and the "Standard Companies," none of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation"); Pagano Ex. 325 (Gualipa Decl.) ¶ 24 (discussing the practices of the declarant and "EGS," neither of which are an Opt-In Plaintiff or an Opt-In Plaintiff's "Driver-Corporation").)  Accordingly, no response is necessary.

299.    Plaintiffs deny the assertion that Opt-In Plaintiffs "can correct the calculation[.]" (Rizzo Decl. ¶¶ 17-18, 30.)  Plaintiffs admit the remaining assertions in this paragraph.

300.    Plaintiffs admit the assertions in this paragraph.

301.    Plaintiffs deny the assertion that all Opt-In Plaintiffs compare their settlement to "other records of the transportation services that they created[.]"  (Pagano Ex. 360 (Armstrong Dep.) 99:22-100:2 (reviews settlement reports for accuracy but does not discuss using any records he created to do so); Pagano Ex. 339 (Henry Dep.) 67:16-18 (same); Pagano Ex. 341 (Cunningham Dep.) 168:17-169:2 ("So once I take a sheet I can tell if I get a pay for one day or not.  I don't need to check the book anymore to check it.").)  Plaintiffs admit the remaining assertions in this paragraph.

302.    Plaintiffs deny the assertion that all Opt-In Plaintiffs report all pay discrepancies to TXX.  (Armstrong Decl. ¶ 54; Baratta Decl. ¶ 20; Pagano Ex. 362 (Rizzo Dep.) 89:11-15.) Plaintiffs admit the remaining assertions in this paragraph.

303.    Plaintiffs admit that when TXX corrects errors in the invoices or Settlement Reports it does so in subsequent Settlement Reports.  Plaintiff deny that TXX corrects all errors in invoices or Settlement Reports.  (Armstrong Decl. ¶ 54; Rizzo Decl. ¶¶ 17-18, 30; Pagano Ex. 359 (Baratta Dep.) 59:13-60:21; Pagano Ex. 344 (Campos Dep.) 128:19-129:17; Pagano Ex. 347 (Sawhney Dep. day 2) 125:22-126:16; Pagano Ex. 348 (Wadada Dep.) 169:15-170:16.)

304.    Defendants have failed to support the assertion that the administrative fees, occupational accident insurance, and rental of scanners are "negotiated" with the Opt-In Plaintiffs. Accordingly, no response to that assertion is necessary.  In any event, Plaintiffs deny that they "negotiated" the identified charges and admit the remaining assertions in this paragraph. (Alexander Decl. ¶ 15; Armstrong Decl. ¶ 34; Baratta Decl. ¶ 29; Cunningham Decl. ¶ 40;

Fernandez Decl. ¶ 42; B. Gonzalez Decl. ¶ 49; Grant Decl. ¶¶ 47, 49; Henry Decl. ¶ 36; Marin Decl. ¶ 32; Morocho Decl. ¶ 44; Morris Decl. ¶ 31; Ortellado Decl. ¶ 57; Paul Decl. ¶ 25.)

305. Plaintiffs deny the assertion that the administrative fee is negotiated and admit that TXX charges Opt-In Plaintiffs an administrative fee. (Alexander Decl. ¶ 15; Armstrong Decl. ¶ 34; Baratta Decl. ¶ 29; Cunningham Decl. ¶ 40; Fernandez Decl. ¶ 42; B. Gonzalez Decl. ¶ 49; Grant Decl. ¶¶ 47, 49; Henry Decl. ¶ 36; Marin Decl. ¶ 43; Morocho Decl. ¶ 44; Morris Decl. ¶ 31; Ortellado Decl. ¶ 57; Paul Decl. ¶ 25.) Defendants have failed to support the remaining assertions in this paragraph by citation to relevant and admissible evidence.

306. Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence. Specifically, the deposition testimony cited relates to a fuel surcharge and scanner rental fee, not the administrative fee. Moreover, Defendants have not cited evidence concerning a single Opt-In Plaintiff who "negotiated [a] reduced administrative fee[], or no administrative fee at all." Accordingly, no response to this paragraph is necessary. In any event, Plaintiffs deny the assertions in this paragraph. (Alexander Decl. ¶ 15; Armstrong Decl. ¶ 34; Cunningham Decl. ¶ 40; Fernandez Decl. ¶ 42; B. Gonzalez Decl. ¶ 49; Grant Decl. ¶¶ 47, 49; Marin Decl. ¶ 32; Morocho Decl. ¶ 44; Morris Decl. ¶ 31; Ortellado Decl. ¶ 57; Pagano Ex. 357 (Barnes Dep. day 1) 47:14-48:4.)

307. Plaintiffs admit the assertions in this paragraph.

**U. Transportation Service Providers Pay Their Own Expenses, Select Equipment and Otherwise Invest in Their Business**

308. Plaintiffs deny the assertion that "TXX does not provide tools or equipment to" Opt-In Plaintiffs. (Morris Decl. ¶ 35; Henry Decl. ¶ 40.) Plaintiffs admit the remaining assertions in this paragraph.

309.    The assertion that Baratta "exercises discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit all other assertions in this paragraph.

310.    The assertion that some Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit all other assertions in this paragraph.

311.    The assertion that the Opt-In Plaintiffs have "transportation services business[es]" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that the Opt-In Plaintiffs are responsible for their expenses incurred in connection with their work for TXX.

312.    Plaintiffs deny the assertions in this paragraph.  (Morris Decl. ¶ 35; Schulman Ex. 36.)

313.    Plaintiffs admit the assertions in this paragraph.  By way of further response, Opt-In Plaintiffs may not actually have occupational accident insurance through TXX.  (Grant Decl. ¶ 48; Pagano Ex. 339 (Henry Dep.) 56:14-18.)

314.    Plaintiffs deny the assertions in this paragraph, as Defendants have misquoted the NICA Independent Contractor Agreement.  (*See* Pagano Ex. 256 Section 3.)  Moreover, Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the NICA Independent Contractor Agreement was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 28, 31.)

315.    Plaintiffs admit that this paragraph accurately quotes the NICA Independent Contractor Agreement.  Defendants have failed to support the assertion that the Opt-In Plaintiffs

"read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.   In any event, Plaintiffs deny that assertion and deny that the NICA Independent Contractor Agreement was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 28, 31.)  The assertion that the NICA Independent Contractor Agreement "reflects the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.

316.    Plaintiffs admit that this paragraph accurately quotes the CANE Independent Driver Service Agreement.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.   In any event, Plaintiffs deny that assertion and deny that the CANE Independent Driver Service Agreement was provided to and/or signed by all Opt-In Plaintiffs. (*See* responses *supra* ¶¶ 32, 33.)   The assertion that the CANE Independent Driver Service Agreement "reflects the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.   Accordingly, no response to that assertion is necessary.

317.    Plaintiffs admit that this paragraph accurately quotes the CANE Independent Driver Service Agreement.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.   In any event, Plaintiffs deny that assertion and deny that the CANE Independent Driver Service Agreement was provided to and/or signed by all Opt-In Plaintiffs. (*See* responses *supra* ¶¶ 32, 33.)   The assertion that the CANE Independent Driver Service

Agreement "reflects the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.   Accordingly, no response to that assertion is necessary.

318.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement.   Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.   In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by all Opt-In Plaintiffs.   (*See* responses *supra* ¶¶ 35, 36, 44.)   The assertion that the CANE Owner/Operator Agreement and TXX Owner/Operator Agreement "reflect the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.   Accordingly, no response to that assertion is necessary.

319.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement.   Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.   In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by all Opt-In Plaintiffs.   (*See* responses *supra* ¶¶ 35, 36, 44.)   The assertion that the CANE Owner/Operator Agreement and TXX Owner/Operator Agreement "reflect the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1

statement, and in any event that assertion is not supported by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.

320.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement. Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence. In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by all Opt-In Plaintiffs. (*See* responses *supra* ¶¶ 35, 36, 44.) The assertion that the CANE Owner/Operator Agreement and TXX Owner/Operator Agreement "reflect the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence. Accordingly, no response to that assertion is necessary.

321.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review. Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence. In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs. (*See* responses *supra* ¶¶ 46, 48.)

322.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review. Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence. In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs. (*See* responses *supra* ¶¶ 46, 48.)

323.     Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.   Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

## V. Attire Worn During the Provision of Transportation Services Is Determined by the Transportation Service Providers, Unless Identification Is Necessary for a Shipper

324.     Plaintiffs admit that the Opt-In Plaintiffs are not required to purchase uniforms. Plaintiffs deny the assertion that the Opt-In Plaintiffs were not required to wear uniforms. (Alexander Decl. ¶¶ 12-13; Cunningham Decl. ¶ 58; Fernandez Decl. ¶ 47; Grant Decl. ¶ 77; Morris Decl. ¶¶ 50-51.)  By way of further response, TXX distributed t-shirts to drivers as late as 2012.  (Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 216:10-13.)

325.     Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Specifically, the cited Baratta deposition testimony is unrelated to uniforms.  Accordingly, no response to this paragraph is necessary.

326.     Plaintiffs deny the assertions in this paragraph.   By way of further response, although currently Opt-In Plaintiffs wear whatever they wish while working for TXX, in the past TXX required Opt-In Plaintiffs to wear uniform items.  (Alexander Decl. ¶¶ 12-13; Fernandez Decl. ¶ 47; Grant Decl. ¶ 77; Morris Decl. ¶¶ 50-51.)

327.     The assertion that Gonzalez "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary. Plaintiffs admit the remaining assertions in this paragraph.

328.     The assertion that Henry "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary. Plaintiffs admit the remaining assertions in this paragraph.

329.     The assertion that Lindsay "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary. Plaintiffs admit the remaining assertions in this paragraph.

330.     Defendants have failed to support the assertion that "prior to 2011 or 2012, TXX didn't supply anything" by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.  Nonetheless, Plaintiffs deny that assertion.  (Pagano Ex. 350 (Dean Dep.) 124:20-21.)  Plaintiffs admit that by the end of Dean's employment with TXX, he wore his own shirts.

331.     Plaintiffs admit the assertions in this paragraph.

332.     Plaintiffs admit the assertions in this paragraph.

333.     Plaintiffs admit the assertions in this paragraph.

334.     Plaintiffs admit the assertions in this paragraph.

335.     The assertion that Ortellado "exercised discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary. Plaintiffs admit the remaining assertions in this paragraph.

336.     Plaintiffs admit the assertions in this paragraph.

337.     Plaintiffs deny the assertion that Fernandez worked for TXX only from May 2007 to June 15, 2017.  (Fernandez Decl. ¶ 2.)  Plaintiffs admit the remaining assertions in this paragraph.

338.     Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 349 (Grant Dep.) 43:22-25.)  By way of further response, at some point TXX instructed Opt-In Plaintiffs to stop wearing TXX uniforms.  (Alexander Decl. ¶ 14; Cunningham Decl. ¶ 58; Morris Decl. ¶ 51; Pagano Ex. 360 (Armstrong Dep.) 72:23-73:5.)

339.    Plaintiffs admit the assertions in this paragraph.

340.    Plaintiffs admit the assertions in this paragraph.

341.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Accordingly, no response is necessary.

342.    Defendants have failed to support the assertions in this paragraph by citation to relevant and admissible evidence.  Accordingly, no response is necessary.

343.    The assertion that Opt-In Plaintiffs "exercise discretion is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit the remaining assertions in this paragraph.

344.    Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 359 (Baratta Dep.) 65:3-17; Henry Decl. ¶ 25.)  By way of further response, drivers who did not make Capital One deliveries also had to wear shirts with the TXX logo.  (*E.g.*, Cunningham Decl. ¶¶ 58-59; Morris Decl. ¶¶ 27, 50-51 & Morris Ex. 4.)

345.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

346.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**W. Response to Transportation Service Failure**

347.    Plaintiffs deny the assertions that Retailers typically have the Opt-In Plaintiffs' contact information and contact the Opt-In Plaintiffs directly.  (B. Gonzalez Decl. ¶ 47; Marin Decl. ¶ 31; Pagano Ex. 343 (Lewis Dep.) 62:3-5; Pagano Ex. 364 (Lindsay Dep.) 77:17-24 (only one customer calls him); Pagano Ex. 353 (Morris Dep.) 156:12-157:5.)  Plaintiffs admit the remaining assertions in this paragraph.  By way of further response, most of the freight Discovery Plaintiffs delivered was not controlled substances.  (B. Gonzalez Decl. ¶ 14; Grant Decl. ¶ 42; Morris Decl. ¶ 26; Rizzo Decl. ¶ 27.)

348.    Plaintiffs deny the assertions in this paragraph.   (Armstrong Decl. ¶ 29; Cunningham Decl. ¶¶ 8, 11-13, 18, 20-25, 28, 30-38, 45-52; Dean Decl. ¶¶ 31-32; Fernandez Decl. ¶¶ 32, 38-40; B. Gonzalez Decl. ¶¶ 13, 15, 20-21, 24, 29-32; Grant Decl. ¶¶ 31-32, 40-41, 50, 52, 54-56; Marin Decl. ¶¶ 5-11, 23-24; Morocho Decl. ¶ 24; Morris Decl. ¶¶ 5, 13-14, 18-21, 23, 24, 28-30, 34, 35-37, 40-41 & Morris Exs. 1 & 2; Ortellado Decl. ¶¶ 24-25, 47-48; Rizzo Decl. ¶¶ 7, 14, 17, 20-22, 24, 28-30, 35-36; Pagano Ex. 343 (Lewis Dep.) 141:11-23, 181:3-22; Pagano Ex. 347 (Sawhney Dep. day 2) 155:10-156:15.)  By way of further response, the times set forth in the PODs are typically set by TXX, not by the Shippers.  (Schulman Ex. 45 (TXX e-mails responding to customers' requests for route assignments and delivery times for new stops).)

349.    Plaintiffs deny the assertions in this paragraph.  (Dean Decl. ¶¶ 31-32; Pagano Ex. 343 (Lewis Dep.) 141:11-23, 181:3-22; Pagano Ex. 347 (Sawhney Dep. day 2) 155:24-156:15; Paul Decl. ¶ 24.)

350.    Plaintiffs deny the assertions in this paragraph.  (Dean Decl. ¶¶ 31-32; Paul Decl. ¶ 24; Pagano Ex. 343 (Lewis Dep.) 141:11-23, 181:3-22; Pagano Ex. 347 (Sawhney Dep. day 2) 155:10-156:15.)

351.    The assertion that Dean "exercised . . . discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary. Plaintiffs deny the remaining assertions in this paragraph and note that Defendants have mischaracterized the cited deposition testimony.  By way of further response, Dean went to Florida over Thanksgiving in 2012.  When he returned to TXX after that trip, TXX had taken his route away.  (Pagano Ex. 350 (Dean Dep.) 56:9-24.)

352.    The assertion that Morris "exercised . . . discretion is a conclusion and/or argument that is improper in a 56.1 statement.  Defendants have also failed to support their asserted reason why Morris lost his routes by citation to relevant and admissible evidence, as the Mills Reply Decl. ¶ 54 does not accurately quote the cited e-mail, Mills Ex. BB.  Accordingly, no response to these assertions is necessary.  In any event, Plaintiffs deny the assertions in this paragraph.  By way of further response, although the alleged customer complaint was from the customer Bellco (*see* Pagano Ex. 321 at Ex. BB), TXX also took non-Bellco work away from Morris.  (Pagano Ex. 193 (Feb. 7, 2014 Unemployment Ins. Hearing Tr.) 37:25-38:5.)

353.    Plaintiffs admit the assertions in this paragraph.  By way of further response, TXX dispatchers yelled at drivers and threatened to take work away.  One dispatcher was going to take a route away from Gonzalez until another dispatcher intervened.   (B. Gonzalez Decl. ¶¶ 29-32.)

354.    Plaintiffs admit that TXX took away Lewis' route because he was absent from work.  (Pagano Ex.  343 (Lewis Dep.) 141:6-23.)

355.    Plaintiffs admit that TXX paid Zamora $10 per stop for stops for which it paid Morris $15 per stop and that Zamora filled out a bid sheet to that effect.  Plaintiffs deny the remaining assertions in this paragraph. By way of further response, Morris's pay rate was set by TXX; it was not negotiated.  (Morris Decl. ¶ 20.)  In addition, Defendants took Morris' route away

on September 11, 2013.  (Pagano Ex. 193 (Feb. 7, 2014 Unemployment Ins. Hearing Tr.) 25:23-36:6.)  Zamora's "bid" is also dated the same day, September 11, 2013, and Zamora's "bid" is the only "bid" made on that route.  (Pagano Ex. 321 at Ex. EE; Schulman Decl. ¶ 48.)  Zamora frequently receives preferential treatment from TXX dispatchers.  (Armstrong Decl. ¶¶ 25-29; Grant Decl. ¶ 85; Paul Decl. ¶ 31.)

356.   Plaintiffs deny the assertions in this paragraph.  (Fernandez Decl. ¶ 36; B. Gonzalez Decl. ¶ 30; Marin Decl. ¶¶ 8-10, 23-24.)

## X. Transportation Service Providers Exercise Discretion to Pursue Additional Engagement Opportunities

357.   The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that Opt-In Plaintiffs simultaneously carried freight for multiple TXX Shippers but deny that that constituted an exercise of discretion.  On the contrary, TXX required them to do so by creating "commingled routes" consisting of deliveries for multiple TXX customers.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 16:9-17:4, 109:21-110:10, 116:18-117:9; Pagano Ex. 340 (Sangern Dep.) 121:17-122:10; Pagano Ex. 354 (Baquero Dep.) 53:19-55:10; Armstrong Decl. ¶¶ 9, 11, 24; Cunningham Decl. ¶¶ 16, 18-19; Paul Decl. ¶¶ 17-21.)  Defendants have failed to identify a single Discovery Plaintiff who simultaneously carried freight for a TXX Shipper and a non-TXX shipper.

358.   Plaintiffs deny the assertions in this paragraph.  By way of further response, Discovery Plaintiffs who worked for TXX on a full-time basis typically did not have time to work elsewhere.  (Armstrong Decl. ¶ 44; Cunningham Decl. ¶ 66; Grant Decl. ¶ 74; Henry Decl. ¶ 48; Ortellado Decl. ¶ 55; Paul Decl. ¶ 36; Pagano Ex. 338 (Gonzalez Dep.) 107:4-7; Pagano Ex. 336 (Franco Dep. day 2) 73:9.)

359.    Plaintiffs admit that some Discovery Plaintiffs so indicated.  By way of further responses, Discovery Plaintiffs who worked for TXX on a full-time basis typically did not have time to work elsewhere.  (Armstrong Decl. ¶ 44; Cunningham Decl. ¶ 66; Grant Decl. ¶ 74; Henry Decl. ¶ 48; Ortellado Decl. ¶ 55; Paul Decl. ¶ 36; Pagano Ex. 338 (Gonzalez Dep.) 107:4-7; Pagano Ex. 336 (Franco Dep. day 2) 73:9.)

360.    The assertion that Opt-In Plaintiffs "exercise discretion" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.  Plaintiffs admit that some Discovery Plaintiffs performed transportation work for entities other than TXX.

361.    Plaintiffs admit the assertions that Gonzalez stopped delivering newspapers on Saturdays when she got a Saturday route from TXX and that her Saturday route for TXX paid $6.50 per stop.  The assertions that Gonzalez "exercised discretion" and "negotiated" the pay rate are conclusions and/or arguments that are improper in a 56.1 statement.  In any event, Plaintiffs deny that Gonzalez "negotiated" the pay rate for her Saturday TXX route.  (B. Gonzalez Decl. ¶¶ 21-22, 24.)

362.    Plaintiffs admit the assertions in this paragraph.  By way of further response, Marin did not make deliveries for KRD the entire time she worked for TXX, and she made those deliveries sporadically.  (Pagano Ex. 361 (Marin Dep.) 89:13, 90:2-9; Marin Decl. ¶ 36.)

363.    Plaintiffs admit the assertions in this paragraph.  By way of further response, Campos made deliveries for Island Print on a sporadic basis, and only after he completed his TXX deliveries.  (Campos Decl. ¶ 7.)

364.    Plaintiffs deny the assertions in this paragraph.  By way of further response, after TXX took away Grant's weekday afternoon Capital One route, Grant started working for Thruway

Direct to deliver medication for a company called Coram Health. (Grant Decl. ¶¶ 63-69.) Grant's deliveries for Coram Health, a medical company, were not the same as his deliveries for Capital One, a bank. (Pagano Ex. 349 (Grant Dep.) 27:6-22; Pagano Ex. 352 (J. Hunt Dep. day 2) 67:3-6 (Capital One deliveries were "[c]hecks, negotiables, interoffice mail").) At some point, the company with the Coram Health account changed to US Pack, at which point Grant continued to make the deliveries for Coram Health, but through US Pack rather than Thruway Direct. (Grant Decl. ¶ 72.)

365. Plaintiffs deny the assertions in this paragraph. By way of further response, after TXX took away Grant's weekday afternoon Capital One route, Grant started working for Thruway Direct to deliver medication from a company called Coram Health. (*Id*. at ¶¶ 63-69.) Thruway Direct and All Points Trucking & Courier Service, Inc. are the same company; All Points Trucking & Courier Service, Inc. is simply the corporate name of Thruway Direct. (*Id*. at ¶ 70.) SCI issued Grant's paychecks for his work for Thruway Direct, just like NICA and CANE previously issued Grant's paychecks for his work for TXX. (*Id*. at ¶ 71.) At some point, the company with the Coram Health account changed to US Pack, at which point Grant continued to make the deliveries for Coram Health, but through US Pack rather than Thruway Direct. (*Id*. at ¶ 72.)

366. Plaintiffs admit the assertions in this paragraph.

367. Plaintiffs deny the assertions in this paragraph. By way of further response, SCI issued Grant's paychecks for his work for Thruway Direct, just like NICA and CANE previously issued Grant's paychecks for his work for TXX. (*Id*. at ¶ 71.)

368. The assertion that Raghubir "exercised his discretion" is a conclusion and/or argument that is improper in a 56.1 statement. Accordingly, no response to that assertion is necessary. Plaintiffs deny that "Raghubir engaged in providing transportation services to SCI"

and admit the remaining assertions in this paragraph.  By way of further response, a driver named Jake, not Raghubir, made deliveries for SCI.  (Pagano Ex. 363 (Raghubir Dep.) 70:16-18.)  The SCI work lasted for just a few months.  (*Id*. at 69:18-23.)

369.    Defendants have failed to support the assertion that SCI was "a Long Island-based provider of death care products and services" by citation to admissible and relevant evidence.  Accordingly, no response to that assertion is necessary.  Plaintiffs deny the remaining assertions in this paragraph.  By way of further response, Raghubir stopped working for SCI because he was not making any money from that work.  (*Id*. at 76:7-9.)

370.    Plaintiffs deny the assertions in this paragraph.  (Ortellado Decl. ¶¶ 59-61.)

371.    Plaintiffs admit the assertions in this paragraph.  By way of further response, for the first month or two that he worked for TXX, Paul made deliveries for another company in the afternoon after he was done with his TXX work.  Since that first month or two, TXX has been Paul's only job.  (Paul Decl. ¶ 36.)

372.    Plaintiffs admit the assertions in this paragraph.  By way of further response, Opt-In Plaintiffs "used" business cards by giving them to TXX upon demand.  (Pagano Ex. 335 (Franco Dep. day 1) 48:21-23; B. Gonzalez Decl. ¶ 36; Pagano Ex. 349 (Grant Dep.) 78:8-19; Pagano Ex. 353 (Morris Dep.) 23:10-22; Pagano Ex. 362 (Rizzo Dep.) 16:12-22.)

373.    Plaintiffs admit the assertions in this paragraph with respect to Campos.  To the extent this paragraph purports to describe Opt-In Plaintiffs other than Campos, Defendants have failed to support such assertions by citation to relevant and admissible evidence.

374.    Plaintiffs admit the assertions in this paragraph.  By way of further response, the only advertising Morris engaged in was for his musical work, not transportation work.  (Morris Decl. ¶ 46.)  Most other Discovery Plaintiffs who took a deduction for advertising did not know

what the deduction was for or surmised that it was for business cards.  (Pagano Ex. 338 (Gonzalez Dep.) 112:22-113:20; Pagano Ex. 364 (Lindsay Dep.) 141:6-12; Pagano Ex. 361 (Marin Dep.) 67:17-24; Pagano Ex. 363 (Raghubir Dep.) 114:3-11.)

375.   Plaintiffs deny the assertions in this paragraph.  By way of further response, Paul's LinkedIn page was not an effort to promote his "business" and create other opportunities.  (Paul Decl. ¶ 37; Pagano Ex. 342 (Paul Dep.) 86:15-87:16.)  Wadada did not advertise on the internet and did not recognize Pagano Exs. 308 to 312 when they were presented to him at his deposition. (Pagano Ex. 348 (Wadada Dep.) 93:23-24 ("I am not even sure of this document.") (referring to Pagano Ex. 308), 94:6-8 ("Q: Do you recall way back in 2013 maybe putting His Imperial Majesty on the internet – A: No, sir."), 95:8-9 ("No, I don't recall this.") (referring to Pagano Ex. 309), 98:25-99:3 ("Q: Do you recall putting His Imperial Majesty, Inc. in the Yellow Pages?  A: No, sir.") (referring to Pagano Ex. 310), 101:2-4 ("Q: Do you recall submitting the information on behalf of His Imperial Majesty, Inc. to the Yellow Pages?  A: No, sir.") (referring to Pagano Ex. 311), 101:21-25 ("Q: Do you recall on behalf of His Imperial Majesty, Inc. submitting this information to New York Business Review in 2013?  A: No, sir.") (referring to Pagano Ex. 312).) In fact, Pagano Exs. 308 to 312 do not appear to be advertisements at all, but merely websites that aggregate publicly available information.  (*Compare* Pagano Exs. 308-312 *with* Schulman Ex. 34.) To be sure, the supposed Yellow Pages "advertisement" states, "Is this your business?  Take charge of this listing[.]" further indicating that the listing was not placed by Wadada.  (Pagano Ex. 310.) Similarly, Ortellado did not advertise or seek additional work.  Her husband found work for himself to perform with a tractor-trailer.  (Ortellado Decl. ¶ 59; Pagano Ex. 334 (Ortellado Dep.) 74:8-14.)

376.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Agreement and the TXX Owner/Operator Agreement.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Agreement was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 35, 36, 44.)   The assertion that the CANE Owner/Operator Agreement and TXX Owner/Operator Agreement "reflect the agreement and understanding" of Opt-In Plaintiffs is a conclusion and/or argument that is improper in a 56.1 statement, and in any event that assertion is not supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.

377.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

378.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**Y. TXX Does Not Set Minimum of Maximum Hours of Transportation Services**

379.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible

evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

380.   Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

381.   Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence. In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

382.   Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence. In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**Z. TXX's Employee Handbook Confirms that Transportation Service Providers Are Not, and Must Not be Treated as, Employees**

383.   Plaintiffs admit the assertions in this paragraph.

384.   Plaintiffs admit the assertions in this paragraph.

385.   Plaintiffs admit that this paragraph accurately quotes the cited page of the Employee Handbook.  Defendants have failed to support the assertion that the quoted language "remind[ed] TXX employees" of anything by citation to admissible and relevant evidence. Accordingly, no response to that assertion is necessary.

386.    Plaintiffs admit that this paragraph accurately quotes the cited page of the Employee Handbook.  Defendants have failed to support the assertion that the quoted language "remind[ed] TXX employees" of anything by citation to admissible and relevant evidence. Accordingly, no response to that assertion is necessary.

387.    Plaintiffs admit that this paragraph accurately quotes the cited page of the Employee Handbook.  Defendants have failed to support the assertion that the quoted language "remind[ed] TXX employees" of anything by citation to admissible and relevant evidence. Accordingly, no response to that assertion is necessary.

388.    Plaintiffs admit that this paragraph accurately quotes the cited page of the Employee Handbook.  Defendants have failed to support the assertion that the quoted language "remind[ed] TXX employees" of anything by citation to admissible and relevant evidence. Accordingly, no response to that assertion is necessary.

389.    Plaintiffs admit that this paragraph accurately quotes the cited page of the Employee Handbook.  Defendants have failed to support the assertion that the quoted language "remind[ed] TXX employees" of anything by citation to admissible and relevant evidence. Accordingly, no response to that assertion is necessary.

390.    Plaintiffs admit that this paragraph accurately quotes the cited pages of the Employee Handbook.  Defendants have failed to support the assertion that the quoted language "remind[ed] TXX employees" of anything by citation to admissible and relevant evidence. Accordingly, no response to that assertion is necessary.

**AA. The Income Tax Returns that Transportation Service Providers Signed, Under Penalty of Perjury, Demonstrate that They Considered Themselves Independent Contractors, and were Truly Engaged in Business for Themselves**

391.    The assertion that the Discovery Plaintiffs' income tax returns "demonstrat[e] the exercise of discretion concerning different entrepreneurial decisions and investments made in their businesses" is an argument and/or conclusion that is improper in a 56.1 statement.  The assertion that the Discovery Plaintiffs filed income tax returns "as independent contractors, not as employees," is a legal conclusion that is improper in a 56.1 statement.  Accordingly, no response to those assertions is necessary.  Notwithstanding the foregoing, the Discovery Plaintiffs did not classify their income from TXX as "wages" on their tax returns, and the Discovery Plaintiffs filed Schedules C with their individual income tax returns.  Plaintiffs further admit that the Discovery Plaintiffs filed income tax returns with the IRS which they signed under penalty of perjury.

392.    Plaintiffs admit the assertions in this paragraph.

393.    Plaintiffs admit the assertion the Discovery Plaintiffs' tax returns included various Schedule C business deductions which varied by Discovery Plaintiff.  The assertion that such differences were "a result of [the Discovery Plaintiffs'] own entrepreneurial decisions" is a conclusion or argument that is improper in a 56.1 statement and, in any event, is not supported by citation to admissible and relevant evidence.  Accordingly, no response to that assertion is necessary.

394.    Plaintiffs admit the assertions in this paragraph.

395.    Plaintiffs admit the assertions in this paragraph.

396.    Plaintiffs admit that TXX issued Form 1099s to Opt-In Plaintiffs.  By way of further response, the tax treatment of TXX's payments to Discovery Plaintiffs was dictated by the contracts TXX required Discovery Plaintiffs to sign.  (*See*, *e.g.*, Pagano Ex. 256 ¶ 11; Pagano Ex.

257 ¶ 6.3; Pagano Ex. 258 at ¶ Fifth; Pagano Ex. 259 at ¶ Fifth; Pagano Ex. 359 (Baratta Dep.) 29:11-30:8; Pagano Ex. 350 (Dean Dep.) 86:9-24; Grant Decl. ¶ 76.)  The assertion that this was done "in accordance with applicable law" is a legal conclusion that is improper in a 56.1 statement and, in any event, is not supported by citation to admissible and relevant evidence.  Accordingly, no response to that assertion is necessary.

397.    Plaintiffs admit that when Raghubir started working for TXX, he understood that independent contractor pays his or her own taxes and deducts expenses.  By way of further response, Raghubir also testified that "at that point I didn't know too much what the term [independent contractor] meant."  (Pagano Ex. 363 (Raghubir Dep.) 25:22-24.)  Plaintiffs deny the remaining assertions in this paragraph, as they mischaracterize the cited deposition testimony.

398.    Plaintiffs deny the assertions in this paragraph.  Cunningham reviews his expense records and adds up various categories of expenses to give to his accountant for tax purposes. (Pagano Ex. 341 (Cunningham Dep.) 75:22-79:25.)

399.    Plaintiffs admit that this paragraph accurately quotes the NICA Independent Contractor Agreement.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.   In any event, Plaintiffs deny that assertion and deny that the NICA Independent Contractor Agreement was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 28, 31.)  The assertion that the quote "reflects the agreement and understanding of the Transportation Service Providers" is a conclusion and/or argument that is improper in a 56.1 statement and is not supported by citation to relevant and admissible evidence.  Accordingly, no response to that assertion is necessary.

400.    Plaintiffs admit that this paragraph accurately quotes the CANE Independent Driver Service Agreement.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Independent Driver Service Agreement was provided to and/or signed by all Opt-In Plaintiffs. (*See* responses *supra* ¶¶ 32, 33.)  The assertion that the quote "reflects the agreement and understanding of the Transportation Service Providers" is a conclusion and/or argument that is improper in a 56.1 statement.  Accordingly, no response to that assertion is necessary.

401.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

402.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

403.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

404.    Plaintiffs admit that this paragraph accurately quotes the CANE Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion and deny that the CANE Owner/Operator Review was provided to and/or signed by all Opt-In Plaintiffs.  (*See* responses *supra* ¶¶ 46, 48.)

405.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

406.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

407.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

408.    Plaintiffs admit that this paragraph accurately quotes the TXX Owner/Operator Review.  Defendants have failed to support the assertion that the Opt-In Plaintiffs "read, understood and did their best to comply with" that document by citation to relevant and admissible evidence.  In any event, Plaintiffs deny that assertion.  (*See* response *supra* ¶ 50.)

**BB. The New York State Unemployment Insurance Appeal Board Affirmed the Post-Hearing Determination That Opt-In Plaintiff Joseph Morris and Similarly Situated Transportation Service Providers Were Independent Contractors**

409.     Plaintiffs admit the assertion that Morris filed a claim for unemployment insurance naming TXX as his employer.  Plaintiffs deny the remaining assertions in this paragraph.  (Morris Decl. ¶¶ 59-60; Pagano Ex. 196 (May 8, 2014 Unemployment Ins. Hearing Tr.) 111:16-19 ("We don't have that.  No driver have that opportunity.  They tell us what to do.  As I say, they have control over when and where and how we do our work.")

410.     Plaintiffs deny the assertions in this paragraph.  (Morris Decl. ¶¶ 59-60.)  By way of further response, Morris testified at his deposition that he recalled "giving testimony[,]" not that he recalled the substance of his testimony.  He further testified that he told the truth to the best of his knowledge and belief and that he did not want to change his testimony.  (Pagano Ex. 353 (Morris Dep.) 14:10-12, 15:7-12.)  Morris's deposition was conducted four to five years after the several unemployment insurance hearing dates.  (*Id.* at 1 (deposition held on January 9, 2019); Pagano Ex. 193 at 1 (unemployment insurance hearing held on February 7, 2014; Pagano Ex. 194 at 1 (unemployment insurance hearing held on March 12, 2014); Pagano Ex. 195 at 1 (unemployment insurance hearing held on May 8, 2014); Pagano Ex. 196 at (unemployment insurance hearing held on July 10, 2014); Pagano Ex. 197 at 1 (unemployment insurance hearing held on October 2, 2014); Pagano Ex. 198 at 1 (unemployment insurance hearing held on January 8, 2015).)

411.     Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

412.     Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

413.    Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

414.    Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

415.    Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

416.    Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

417.    Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

418.    Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

419.    Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

420.    Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

421.    Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

422.    Plaintiffs admit the assertions in the paragraph but deny that they are material to this motion.

## CC.  Patricia Hunt Is Not an Employer of Any of the Plaintiffs or Opt-In Plaintiffs

423.    Plaintiffs admit the assertions in this paragraph.

424.    Plaintiffs deny that P. Hunt's responsibilities are limited to matters relating to expenses and admit the remaining assertions in this paragraph.  (Armstrong Decl. ¶¶ 25-28; Schulman Ex. 32 at Dean205-206 (entering Dean269-271 as hearing exhibit 2); *id.* at Dean 243-44; *id.* at Dean183, 247-48; *id.* at Dean 200-201, 211-12, 215, 231, 246; Alexander Decl. ¶ 23 & Alexander Ex. 2; Morocho Decl. ¶ 46 & Morocho Ex. 1; Fernandez Decl. ¶ 55 & Fernandez Ex. 1; Schulman Ex. 16 (contract dated May 1, 2006 signed by P. Hunt).)

425.    Plaintiffs admit that P. Hunt gave birth to her first child in 2001 and deny all other assertions in this paragraph.  (Armstrong Decl. ¶¶ 25-28; Grant Decl. ¶¶ 26-27; Schulman Ex. 32 at Dean205-206 (entering Dean269-271 as hearing exhibit 2); *id.* at Dean 243-44; *id.* at Dean183, 247-48; *id.* at Dean 200-201, 211-12, 215, 231, 246; Alexander Decl. ¶ 23 & Ex. 2; Morocho Decl. ¶ 46 & Morocho Ex. 1; Fernandez Decl. ¶ 55 & Fernandez Ex. 1; Schulman Ex. 16 (contract dated May 1, 2006 signed by P. Hunt).)

426.    Plaintiffs deny the assertions in this paragraph.  (Armstrong Decl. ¶¶ 25-28; Grant Decl. ¶¶ 26-27; Schulman Ex. 32 at Dean205-206 (entering Dean269-271 as hearing exhibit 2); *id.* at Dean 243-44; *id.* at Dean183, 247-48; *id.* at Dean 200-201, 211-12, 215, 231, 246; Alexander Decl. ¶ 23 & Alexander Ex. 2; Morocho Decl. ¶ 46 & Morocho Ex. 1; Fernandez Decl. ¶ 55 & Fernandez Ex. 1; Schulman Ex. 16 (contract dated May 1, 2006 signed by P. Hunt).)

427.    Plaintiffs deny the assertions in this paragraph.  (Armstrong Decl. ¶¶ 25-28; Grant Decl. ¶¶ 26-27; Schulman Ex. 32 at Dean205-206 (entering Dean269-271 as hearing exhibit 2); *id.* at Dean 243-44; *id.* at Dean183, 247-48; *id.* at Dean 200-201, 211-12, 215, 231, 246; Alexander Decl. ¶ 23 & Alexander Ex. 2; Morocho Decl. ¶ 46 & Morocho Ex. 1; Fernandez Decl. ¶ 55 & Fernandez Ex. 1.)

428.    Plaintiffs deny the assertions in this paragraph.  (Schulman Ex. 32 at Dean200-201, 212, 215 (TXX's controller describing P. Hunt as his "superior[,]" as the person he "work[s] for[,]" and as the person he informed when he received notification that unemployment insurance benefits had been awarded to Dean).)

429.    Plaintiffs deny the assertions in this paragraph.  (Pagano Ex. 365 (P. Hunt Dep. day 1) 58:9-59:17.)

## PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

### A. Plaintiffs' Work Histories with TXX

430.    Discovery Plaintiff Lester Alexander worked for TXX as a delivery driver from the mid-1990s to 2014.  (Alexander Decl. ¶ 2.)

431.    Discovery Plaintiff Richard Armstrong has worked for TXX as a delivery driver from approximately 1996 to the present.  (Armstrong Decl. ¶ 2.)

432.    Discovery Plaintiff Nicholas Baratta has worked for TXX as a delivery driver from approximately February 2008 to the present, with two breaks in service.  (Baratta Decl. ¶ 2.)

433.    Discovery Plaintiff Edgar Campos has worked for TXX as a delivery driver from approximately 2007 to the present.  (Campos Decl. ¶ 2.)

434.    Discovery Plaintiff Cushi Cunningham has worked for TXX as a delivery driver from approximately 2008 to the present.  (Cunningham Decl. ¶ 2.)

435.    Discovery Plaintiff John Dean worked for TXX as a delivery driver from approximately August 2007 to March 2012.  (Dean Decl. ¶ 2.)

436.    Discovery Plaintiff Eduardo Fernandez has worked for TXX as a delivery driver from approximately March 2003 to the present.  (Fernandez Decl. ¶ 2.)

437.    Discovery Plaintiff Alexis Franco worked for TXX as a delivery driver from approximately August or September 2015 to some point in 2018.  (Pagano Ex. 335 (Franco Dep. day 1) 14:23-15:14, 31:22-32:17, 33:6-9.)

438.    Discovery Plaintiff Branne Gonzalez worked for TXX as a delivery driver from approximately June 2008 to June 2014.  (B. Gonzalez Decl. ¶ 2.)

439.    Discovery Plaintiff James Grant has worked for TXX as a delivery driver from approximately December 2005 to the present.  (Grant Decl. ¶ 2.)

440.    Discovery Plaintiff Carl Henry has worked for TXX as a delivery driver from approximately 2005 to the present.  (Henry Decl. ¶ 2.)

441.    Discovery Plaintiff Winston Lindsay has worked for TXX as a delivery driver from 2005 to the present.  (Pagano Ex. 364 (Lindsay Dep.) 13:16-18, 15:19-21, 56:2-7.)

442.    Discovery Plaintiff Rosa Marin has worked for TXX as a delivery driver from approximately June 2008 to the present.  (Marin Decl. ¶ 2.)

443.    Discovery Plaintiff Anita Morocho has worked for TXX as a delivery driver from approximately June 2008 to the present.  (Morocho Decl. ¶ 2.)

444.    Discovery Plaintiff Joseph Morris worked for TXX as a delivery driver from approximately 2000 to September 2013.  (Morris Decl. ¶ 2.)

445.    Discovery Plaintiff Marlon Oliveira has worked for TXX as a delivery driver from approximately 2007 to the present.  (Oliveira Decl. ¶ 2.)

446.    Discovery Plaintiff Adriana Ortellado worked for TXX as a delivery driver from approximately December 2011 to March 2016.  (Ortellado Decl. ¶ 2.)

447.    Discovery Plaintiff Degou Paul has worked for TXX as a delivery driver from approximately 2006 to the present.  (Paul Decl. ¶ 2.)

448.    Discovery Plaintiff Tejdhari Raghubir has worked for TXX as a delivery driver from 2007 to the present.  (Pagano Ex. 278 (contract dated March 26, 2007); Pagano Ex. 363 (Raghubir Dep.) 50:25-51:5.)

449.    Discovery Plaintiff Rupperto Rizzo worked for TXX as a delivery driver from approximately 2010 to February 2016.  (Rizzo Decl. ¶ 2.)

450.    Discovery Plaintiff Harpal Sawhney worked for TXX as a delivery driver from 2001 to 2012. (Pagano Ex. 346 (Sawhney Dep. day 1) 16:23-17:2; Pagano Ex. 347 (Sawhney Dep. day 2) 155:24-156:15.)

451.    Discovery Plaintiff Ireal Wadada has worked for TXX as a delivery driver from 2005 to the present.  (Pagano Ex. 302 (contract dated September 17, 2005); Pagano Ex. 348 (Wadada Dep.) 22:16-21.)

452.    TXX assigned each Discovery Plaintiff an identifying number, referred to as a driver number or vendor number ("Driver Number").  (B. Gonzalez Decl. ¶ 10; Morocho Decl. ¶ 12; Ortellado Decl. ¶ 22; Pagano Ex. 354 (Baquero Dep.) 128:15-20.)

453.    TXX did not require Discovery Plaintiffs to have any professional delivery experience before working at TXX.  (Alexander Decl. ¶ 3; Armstrong Decl. ¶ 3; Cunningham Decl. ¶ 3; Grant Decl. ¶ 3; Morris Decl. ¶ 3; Ortellado Decl. ¶ 3; Paul Decl. ¶ 3; Rizzo Decl. ¶ 13; Pagano Ex. 363 (Raghubir Dep.) 20:10-24:19.)

454.    The Discovery Plaintiffs did not need commercial driver's licenses in order to work for TXX.  (Alexander Decl. ¶ 3; Armstrong Decl. ¶ 3; Cunningham Decl. ¶ 4; Fernandez Decl. ¶ 4; Grant Decl. ¶ 4; Henry Decl. ¶ 4; Ortellado Decl. ¶ 3; Paul Decl. ¶ 4.)

455.    The Discovery Plaintiffs' job duties were physically moving freight, driving, using an electronic scanner, and completing paperwork.  (Fernandez Decl. ¶ 3; Grant Decl. ¶ 3; Henry Decl. ¶ 3.)

456.    The Discovery Plaintiffs did not need any special skills in order to work for TXX. The job was easy to learn.   (Alexander Decl. ¶ 3; Armstrong Decl. ¶ 3; Cunningham Decl. ¶¶ 3, 14; Fernandez Decl. ¶ 3; Grant Decl. ¶ 3; Henry Decl. ¶ 3; Morris Decl. ¶ 3; Ortellado Decl. ¶ 7; Paul Decl. ¶ 3; Rizzo Decl. ¶¶ 6, 14.)

457.    The Discovery Plaintiffs relied on their income from TXX to support themselves. (Pagano Ex. 359 (Baratta Dep.) 159:17-19 ("Q: No, so why didn't you walk away?  A: Again, I need to provide food on the table for my position."); Pagano Ex. 361 (Marin Dep.) 115:21-23 ("Q: So why didn't you leave?  A: Because I need a job and that's all I know how to do."); Pagano Ex. 334 (Ortellado Dep.) 115:17-25 ("Q: Why didn't Just In Time just cease providing service to TXX if it was unacceptable economically to continue? . . . . A: The money was not enough, but I needed it.")).

458.    While working for TXX, TXX was the Discovery Plaintiffs' primary or only job. (Alexander Decl. ¶ 21; Armstrong Decl. ¶ 44; Campos Decl. ¶¶ 6-7; Cunningham Decl. ¶ 66; Dean Decl. ¶ 38; Fernandez Decl. ¶ 51; B. Gonzalez Decl. ¶ 38; Grant Decl. ¶¶ 62, 67-74; Henry Decl. ¶ 48; Marin Decl. ¶¶ 35-37; Morocho Decl. ¶ 43; Morris Decl. ¶¶ 43, 47; Ortellado Decl. ¶ 55; Paul Decl. ¶ 36; Rizzo Decl. ¶¶ 38-39.)

459.    However, at one point some drivers were paid for deliveries for the TXX customer RDC through a company called Petersburg Ground.  (B. Gonzalez Decl. ¶¶ 39-40.)

460.    TXX required those drivers to sign Petersburg Ground paperwork, but the drivers continued to pick up RDC freight from TXX and use the TXX scanner to scan that freight.  TXX supervisors continued to supervise that work for RDC.  (Id. at ¶¶ 43-44 & B. Gonzalez Ex. 2.)

461.    TXX also distributed the "Petersburg Ground" paychecks and settlement reports, which are documents that show the deliveries a driver is paid for each week.  Those settlement reports included drivers' TXX Driver Numbers.  (B. Gonzalez Decl. ¶ 45 & B. Gonzalez Ex. 3.)

462.    Beginning in 2009 or 2010, TXX required drivers to work for TXX through a business entity.  (B. Gonzalez Decl. ¶ 34; Morris Decl. ¶ 42; Alexander Decl. ¶¶ 18-19; Armstrong Decl. ¶¶ 41-42 (formed d/b/a at TXX's behest); Pagano Ex. 16 at TVD1005 (business certificate

dated November 30, 2010); Cunningham Decl. ¶¶ 54-56; Pagano Ex. 78 at TVD332 (business certificate date January 15, 2010); Dean Decl. ¶¶ 34-36; Pagano Ex. 84 (business certificate form 2010); Grant Decl. ¶¶ 59-60; Pagano Ex. 131 at TVD678 (business certificate dated July 23, 2010); Henry Decl. ¶¶ 43-44; Marin Decl. ¶¶ 27-28; Pagano Ex. 170 at TVD637 (business certificate dated August 18, 2010); Morocho Decl. ¶¶ 39-40; Pagano Ex. 175 (business certificate dated January 18, 2010); Pagano Ex. 363 (Raghubir Dep.) 18:19-23; Pagano Ex. 264 (business certificate dated December 9, 2010).)

463.    Most Discovery Plaintiffs who worked for TXX before that time worked and were paid in their individual capacities. (Alexander Decl. ¶¶ 16-17; Armstrong Decl. ¶ 40; Cunningham Decl. ¶ 54 & Cunningham Ex. 2; Pagano Ex. 77 at TVD313 (contract entered into by Cunningham in his individual capacity); Dean Decl. ¶ 34; Pagano Ex. 82 at TVD701 (contract entered into by Dean in his individual capacity); Pagano Ex. 83 at TVD 713 (same); B. Gonzalez Decl. ¶ 33 & B. Gonzalez Ex. 1; Pagano Ex. 115 at TVD881 (contract entered into by Gonzalez in her individual capacity); Grant Decl. ¶ 59; Pagano Ex. 129 at TVD660 (contract entered into by Grant in his individual capacity); Pagano Ex. 130 at TVD651 (same); Henry ¶ 43 & Henry Ex. 1; Pagano Ex. 140 at Henry 1891, 1893, 1894, 1896 (1099s issued to "Carl Henry"); Marin Decl. ¶ 27; Pagano Ex. 169 at TVD618 (contract entered into by Marin in her individual capacity); Morocho Decl. ¶ 39; Pagano Ex. 183 at TVD31 (contract entered into by Morocho in her individual capacity); Pagano Ex. 184 at TVD35 (same); Morris Decl. ¶ 9; Pagano Ex. 212 at TVD87, TVD94 (contracts entered into by Morris in his individual capacity); Paul Decl. ¶ 32; Pagano Ex. 256 at TVD348 (contract entered into by Paul in his individual capacity); Pagano Ex. 364 (Lindsay Dep.) 13:16-18, 15:19-21, 56:2-8; Pagano Ex. 156 (Winbird Courier business certificate dated October 25, 2010; Pagano Ex. 158 (contract entered into by Lindsay in his individual capacity on August 30,

2008); Pagano Ex. 363 (Raghubir Dep.) 18:16-23; Pagano Ex. 347 (Sawhney Dep. day 2) 177:24-178:13 & errata.)

464.    Most of the Discovery Plaintiffs formed and/or used a business entity to work for TXX solely because TXX required them to do so.  (Alexander Decl. ¶¶ 16-17; Armstrong Decl. ¶¶ 40-42; Baratta Decl. ¶¶ 33-35; Cunningham Decl. ¶¶ 54-56; Dean Decl. ¶¶ 34-36; B. Gonzalez Decl. ¶ 33-34; Grant Decl. ¶¶ 59-60; Henry Decl. ¶ 6; Marin Decl. ¶¶ 27-28; Morocho Decl. ¶¶ 39-40; Morris Decl. ¶¶ 9, 42-45; Ortellado Decl. ¶¶ 11-12, 14-15; Paul Decl. ¶¶ 33-34; Rizzo Decl. ¶ 8; Pagano Ex. 335 (Franco Dep. day 1) 28:13-24; Pagano Ex. 364 (Lindsay Dep.) 10:22-11:13; Pagano Ex. 363 (Raghubir Dep.) 18:16-23; Pagano Ex. 346 (Sawhney Dep. day 1) 25:13-14.)

465.    Defendants could and did dictate the type of entity Plaintiffs used to work for TXX. For example, Ortellado initially formed an LLC to work for TXX.  However, TXX vice president of business development Juan Carlos Baquero told her she needed to have a corporation instead. At that point, Ortellado formed a corporation.  (Ortellado Decl. ¶¶ 11-12, 14-15; Pagano Ex. 354 (Baquero Dep.) 9:21-10:21.)

466.    In addition, after Rizzo had worked for TXX for roughly two years under the business name RR Delivery, which was a d/b/a, TXX dispatcher Chatchai Sangern told him he needed to form a corporation in order to continue working for TXX.  At that point, Rizzo formed Julie's Delivery Service, a corporation, so that he could keep his job.  (Rizzo Decl. ¶¶ 8, 11-12; Pagano Ex. 340 (Sangern Dep.) 4:16-19, 21:25-23:17.)

467.    TXX also directed Franco to form a corporation.  (Pagano Ex. 335 (Franco Dep. day 1) 28:13-24.)

468.    The Discovery Plaintiffs have worked out of TXX's facilities in Long Island, Carlstadt, New Jersey (and its predecessor location in New Jersey), and Brooklyn.  (Armstrong ¶¶

12-13, 21; Baratta Decl. ¶ 6; Cunningham ¶¶ 5, 29; Dean Decl. ¶ 3, 19-20; Fernandez Decl. ¶¶ 5, 26; B. Gonzalez Decl. ¶¶ 7-9; Grant Decl. ¶¶ 28-29; Henry Decl. ¶¶ 5, 27; Marin Decl. ¶ 3; Morocho Decl. ¶¶ 8-9; Morris Decl. ¶ 12; Oliveira Decl. ¶¶ 3-4; Ortellado Decl. ¶¶ 5, 20; Paul Decl. ¶¶ 5, 16; Rizzo Decl. ¶¶ 4, 23; Pagano Ex. 355 (Alexander Dep.) 67:12-13; Pagano Ex. 344 (Campos Dep.) 11:18-21; Pagano Ex. 335 (Franco Dep. day 1) 58:9-19; Pagano Ex. 343 (Lewis Dep.) 49:2-6; Pagano Ex. 364 (Lindsay Dep.) 20:22-25, 30:8-20; Pagano Ex. 346 (Sawhney Dep. day 1) 19:6-10.)

469.    TXX's Brooklyn location opened in late 2015 or 2016.  (Pagano Ex. 354 (Baquero Dep.) 126:18-25; Pagano Ex. 352 (J. Hunt Dep. day 2) 12:17-22.)

**B. TXX's Business**

470.    TXX's customers contract with TXX to provide delivery services.  (Schulman Ex. 13 at TCC1 ("Carrier [defined as TXX] is engaged in the pickup, transportation and delivery business. . . . The parties intend by this Agreement to set forth their obligations to each other for an arrangement under which Carrier will provide Services to ABDC for the pickup, transportation and delivery of such Products and other services as may be required."); Schulman Ex. 15; Schulman Ex. 16 at TCC173 ("WHEREAS, Customer desires to retain Carrier [defined as TXX] and Carrier desires to be retained to provide pickup and delivery services . . . . Carrier will provide Customer pickup and delivery services[.]"); Schulman Ex. 17 at TCC180 (contract titled "Transportation Services Agreement" stating, "CARRIER [defined as TXX] desires to furnish to SHIPPER, and SHIPPER desires to obtain from CARRIER motor carrier services for the transportation of general commodities pursuant to the terms and conditions of this Agreement").)

471.    TXX's customers pay TXX "[f]or deliveries."  (Pagano Ex. 351 (J. Hunt Dep. day 1) 20:23-21:3.)

472.     During the time period covered by this lawsuit, TXX's customers have included pharmaceutical distributers, such as Amerisource Bergen, Bellco, HD Smith, RDC, Cardinal Health, and Kinray; Fuji Film; North Fork Bank; Capital One Bank (later handled under the company RR Donnelly); and Newgistics, which coordinated pick ups and deliveries for the United States Postal Services.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 39:22-40:4, 41:24-42:21; 57:21-58:2, 65:22-66:21, 67:23-25; Schulman Ex. 13 at TCC1; Schulman Ex. 14; Pagano Ex. 335 (Franco Dep. day 1) 30:4-22.)

473.     It is TXX's obligation to get its customers' freight delivered to retail establishments or other locations.  (Pagano Ex. 351 (J. Hunt Dep. day 1) 23:13-25.)

474.     TXX's "responsibility is to find people, companies, that will make these deliveries in a timely fashion."  (*Id*. at 23:3-8.)

475.     This "service is what provides [TXX's] income."  (*Id*. at 24:2-3.)

476.     The difference between what TXX's customers pay TXX and what TXX pays vendors to make deliveries is TXX's profit.  (*Id*. at 112:8-22.)

477.     Before August 27, 2010, TXX was licensed as a motor property common carrier, not as a broker, and provided the exact same services that it provides today.  (Schulman Exs. 39, 40; *e.g.* Armstrong Decl. ¶ 17 (had the same Route for over 20 years).)

478.     TXX can incur financial penalties or lose business if TXX's drivers make late deliveries.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 29:8-30:4, 51:22-53:15, 197:13-199:20; Schulman Ex. 25; Pagano Ex. 354 (Baquero Dep.) 101:3-11.)

479.     Some customers require TXX to achieve certain scanning rates (*i.e.*, freight scanning by drivers) and complain directly to TXX president John Hunt when those rates are not achieved.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 23:19-24:5; Schulman Ex. 12 at TC70006

("Scanning has also been very low on all new stops so we are also taking a beating on that.");
Pagano Ex. 351 (J. Hunt Dep. day 1) 6:11-18.)

480.    John Hunt has been the president of TXX since approximately 2001 or 2002.
(Pagano Ex. 351 (J. Hunt Dep. day 1) 6:11-18.)

481.    John Hunt and TXX CEO Patricia Hunt are responsible for contracting with TXX's
customers and negotiating what TXX's customers pay TXX for its services.   TXX drivers,
including the Discovery Plaintiffs, have no say in this.   (*Id.* at 20:10-21:9; Schulman Ex. 16
(customer contract signed by P. Hunt); Schulman Ex. 32 at Dean246.)

482.    In fact, with the exception of Capital One employees who worked at the Capital
One banks on drivers' Routes, drivers, including the Discovery Plaintiffs, did not directly interact
with representatives of TXX customers.  (Baratta Decl. ¶ 28; B. Gonzalez Decl. ¶ 46; Henry Decl.
¶ 22; Marin Decl. ¶ 30.)

483.    TXX obtains new work from customers by submitting a proposal in response to a
request for proposal.  (Pagano Ex. 352 (J. Hunt dep. day 2) 68:7-70:2.)

484.    A customer has never proposed a price to TXX.  TXX either gets the work at its
bidded price or does not get the work.  (*Id.* at 75:2-20.)

485.    Mike Mills has been TXX's executive vice president since 2009.  (Pagano Ex. 321
(Mills Reply Decl.) ¶ 1.)

486.    Juan Carlos Baquero has been TXX's vice president of business development since
2013 or 2014.  From 2009 until he became vice president, he was an account coordinator (also
referred to as a dispatcher).  (Pagano Ex. 354 (Baquero Dep.) 9:21-10:21, 82:4-6; Pagano Ex. 340
(Sangern Dep.) 8:15-19.)

487.    Oscar Arevalo is TXX's vice president of operations.  (Pagano Ex. 354 (Baquero Dep.) 91:20-21.)

488.    Oscar Maya has been TXX's regional manager since October 2017.  Before that, he was a dispatcher at TXX's Carlstadt, New Jersey location.  (Schulman Ex. 1 (Maya Dep.) 7:17-22, 8:5-14, 12:23-13:4.)

489.    The dispatchers who have worked out of TXX's Long Island facility include Chatchai Sangern, aka Tiki; Jean Exantus; Tom Juliano; Jose Portillo; Lucas; Charlie; Dan Keating; Christian Rodriguez; Mateo; and Junior.  (Schulman Ex. 2 (Rodriguez Dep.) 30:4-19, 32:8-33:1;  Pagano Ex. 340 (Sangern Dep.) 4:16-19, 21:25-23:20;  Armstrong Decl. ¶ 5; Cunningham Decl. ¶ 10; Grant Decl. ¶ 8.)

490.    The dispatchers who worked out of TXX's Brooklyn facility include Jose Portillo and Christian Rodriguez.  (Schulman Ex. 2 (Rodriguez Dep.) 30:20-24, 32:12-19.)

491.    The dispatchers who have worked out of TXX's New Jersey facility include Oscar Maya, Marco Baez, and Victor Ramachie.  (Schulman Ex. 1 (Maya Dep.) 28:4-24, 42:6-14 & errata.)

492.    Dispatchers hire drivers, assign work to drivers, supervise drivers, and communicate with TXX customers.  (Armstrong Decl. ¶¶ 5-7, 13, 15, 19-22, 29, 32-33, 41, 53; Baratta Decl. ¶¶ 5, 9-12, 15-16, 18-19, 21-22, 25-26, 30; Cunningham Decl. ¶¶ 6-8, 11-13, 18, 20-25, 27-28, 30-37, 39, 45-50, 52, 55, 58, 63, 65; Dean Decl. ¶¶ 4-7, 9-13, 15-16, 18, 21, 23-24, 27-29, 31-32; Fernandez Decl. ¶¶ 5-6, 8-9, 12, 15-18, 24, 26, 28, 30-39, 43, 47, 50; B. Gonzalez Decl. ¶¶ 11, 13, 15, 19-24, 27-31, 44; Grant Decl. ¶¶ 5-9, 11-12, 16-18, 21-22, 25-26, 29, 32, 41, 43-44, 50-58; Henry Decl. ¶¶ 5, 7, 9-11, 13, 15, 21-24, 28-35, 38-39, 41, 47; Marin Decl. ¶¶ 4-8, 11-12, 17-20, 23-26, 28, 34; Morocho Decl. ¶¶ 10-11, 15-19, 24-25, 33, 36-38; Morris Decl. ¶¶ 5-6, 13-

14, 18-23, 29, 33-37, 40; Oliveira Decl. ¶ 17; Paul Decl. ¶¶ 6-9, 16-17, 24, 29, 31; Rizzo Decl. ¶ 5-6, 10-11, 14, 16-18, 20-25, 28-32, 35-36; Pagano Ex. 340 (Sangern Dep.) 19:2-5; Schulman Ex. 1 (Maya Dep.) 40:16-41:16.)

493.    Dispatchers are classified by TXX as employees, and TXX reports dispatchers' earnings on IRS Forms W-2.  (Schulman Ex. 1 (Maya Dep.) 30:9-13; Schulman Ex. 2 (Rodriguez Dep.) 18:12-19; Pagano Ex. 340 (Sangern Dep.) 9:2-10:4.)

494.    Many TXX dispatchers and managers also maintain business names with driver numbers in order to make deliveries for TXX.  (Pagano Ex. 340 (Sangern Dep.) 163:2-167:3; Pagano Ex. 352 (J. Hunt Dep. day 2) 171:21-172:18, 173:7-19; Schulman Ex. 1 (Maya Dep.) 151:12-24.)

495.    TXX pays these employees for their deliveries, either directly or through their business names, as though they are classified as independent contractors.  That is, TXX provides these employees (or their business names) with the same type of settlement reports that TXX provides the Discovery Plaintiffs, and that pay is not included in the employees' regular paychecks. (Pagano Ex. 340 (Sangern Dep.) 158:9-159:14.)

496.    Many dispatchers and managers who have driver number also have drivers who work directly for them making deliveries.  Dispatchers get preferential treatment in Route assignments.  (Armstrong Decl. ¶¶ 51-52; Baratta Decl. ¶¶ 42-43; Fernandez Decl. ¶¶ 17-18; Grant Decl. ¶ 84; Pagano Ex. 340 (Sangern Dep.) 168:13-169:6; Pagano Ex. 352 (J. Hunt Dep. day 2) 172:4-8; Schulman Ex. 1 (Maya Dep.) 152:7-11; Pagano Ex. 363 (Raghubir Dep.) 83:12-20.)

497.    Dispatchers give the drivers who work for them instructions during their dispatcher shifts.  (Grant Decl. ¶ 84.)

498.    Dispatchers have also directed Discovery Plaintiffs to assist with the dispatchers' own deliveries for no compensation.  (Fernandez Decl. ¶¶ 17-18.)

**C. Types Of Deliveries**

499.    Discovery Plaintiffs' regular, recurring groups of stops are referred to by different parties as "routes" or geographic areas" (referred to herein as "Routes").  Once a driver is assigned a Route, it is his or her responsibility for an indefinite period of time.  (Pagano Ex. 340 (Sangern Dep.) 129:15-22; Cunningham Decl. ¶ 15; Grant Decl. ¶ 14; Pagano Ex. 352 (J. Hunt Dep. day 2) 14:10-15:9.)

500.    There are Monday to Friday Routes, Saturday Routes, and Sunday Routes. (Cunningham Decl. ¶ 16.)

501.    TXX – not the Discovery Plaintiffs – has always decided which stops to group together in a Route.  (Paul Decl. ¶ 17; Oliveira Decl. ¶¶ 5-9; Pagano Ex. 334 (Ortellado Dep.) 99:24-100:15; Pagano Ex. 354 (Baquero Dep.) 53:19-54:13, 55:7-10; Pagano Ex. 352 (J. Hunt Dep. day 2) 116:22-117:3; *see also* Alexander Decl. ¶ 6; Armstrong Decl. ¶¶ 24-25; Cunningham Decl. ¶¶ 26, 28; Dean Decl. ¶ 15; Fernandez Decl. ¶¶ 29-30; B. Gonzalez Decl. ¶¶ 16-18; Henry Decl. ¶¶ 16-19; Morocho Decl. ¶¶ 14-16; Ortellado Decl. ¶ 32; Paul Decl. ¶ 12; Rizzo Decl. ¶ 35.)

502.    In general, Routes are classified as either "next day" or "same day."  (Pagano Ex. 340 (Sangern Dep.) 63:23-64:8.)

503.    Next day Routes consist of freight that has been ordered by a pharmacy or other delivery location the day before delivery to that location.  (Pagano Ex. 340 (Sangern Dep.) 63:23-64:4.)

504.    Next day Routes may include deliveries for multiple customers of TXX (such as, *e.g.*, Amerisource Bergen, HD Smith, RDC, and Cardinal Health).  (Pagano Ex. 354 (Baquero Dep.) 62:11-13; Cunningham Decl. ¶ 16; Grant Decl. ¶ 16.)

505.    Routes that include deliveries on behalf of multiple TXX customers are called commingled Routes.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 16:9-14; Pagano Ex. 340 (Sangern Dep.) 121:17-122:10.)

506.    TXX – not the Discovery Plaintiffs or TXX's customers – has always decided which stops to group together into commingled Routes.  (Pagano Ex. 354 (Baquero Dep.) 53:19-55:10; Pagano Ex. 352 (J. Hunt Dep. day 2) 116:15-117:9; Pagano Ex. 340 (Sangern Dep.) 121:17-122:10.)

507.    TXX maintained commingled Routes even when it resulted in customer complaints.  (Schulman Ex. 46 at TC231547 (TXX customer relaying complaint from Retailer that did not want to receive deliveries of products from multiple distributors at the same time).)

508.    Now, most of TXX's next day work is part of commingled Routes.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 16:15-17:4.)

509.    TXX has reorganized geographic delivery areas, or Routes, for various reasons. John Hunt was the primary decision-maker in these reorganizations.  (*Id*. at 109:21-110:10, 116:18-117:9; Pagano Ex. 354 (Baquero Dep.) 53:19-54:13, 55:7-10.)

510.    Each TXX customer identifies its deliveries using an internal "route number." However, Discovery Plaintiffs refer to all of the stops on the commingled Route that TXX created as their "Route."  (Cunningham Decl. ¶ 16; Grant Decl. ¶ 14.)

511.    Drivers pick up the freight for next day Routes from a TXX facility in the morning. (Pagano Ex. 354 (Baquero Dep.) 62:11-22.)

512.     Same day Routes consist of freight that has been ordered by a pharmacy or other delivery location the same day as delivery to that location.  Same day Routes consist of deliveries for single TXX customer.  Drivers pick up the freight for same day Routes from a TXX customer's facility.  (Pagano Ex. 354 (Baquero Dep.) 61:23-62:10; Pagano Ex. 340 (Sangern Dep.) 63:23-64:8.)

513.     Those TXX customer facilities include Amerisource Bergen (formerly Bellco) in Amityville, Long Island; Kinray in Whitestone, New York; and, until February or March 2019, HD Smith in Kearny, New Jersey.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 13:23-14:9, 26:16-27:5; Pagano Ex. 348 (Wadada Dep.) 33:13-34:19.)

514.     TXX has a dispatcher on site at all customer facilities where drivers pick up freight for same day Routes.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 13:23-14:5; Armstrong Decl. ¶ 20; Fernandez Decl. ¶ 34.)

515.     The TXX dispatcher at the customer sites distributes freight to drivers, makes sure the drivers have the correct freight, and gives drivers assignments.  (Armstrong Decl. ¶ 20; Cunningham Decl. ¶ 25; Henry Decl. ¶¶ 22, 24; Morris Decl. ¶ 20; Pagano Ex. 340 (Sangern Dep.) 88:21-90:4.)

516.     Drivers do not interact with TXX's customers' staff when they pick up freight from customer facilities.  (Cunningham Decl. ¶ 25; Henry Decl. ¶ 22.)

517.     In addition to next day and same day Routes, TXX has also had bank Routes (for North Fork Bank and then Capital One, the latter of which was at one point serviced via the TXX customer RR Donnelly) and post office Routes, which involved pick ups from and deliveries to banks and post offices, rather than the delivery of merchandise purchased by a delivery location. (Dean Decl. ¶ 17; Pagano Ex. 352 (J. Hunt Dep. day 2) 65:22-66:21, 67:3-6.)

518.     Non-Route deliveries are referred to as "specials" or "hot-shots" (referred to herein as "Specials").  (Schulman Ex. 1 (Maya Dep.) 80:3-25.)

519.     "Specials" are one-time or irregular deliveries.   This can include emergency deliveries, freight that does not fit on a driver's vehicle and has to be delivered by someone else, seasonal work like flower deliveries around Valentine's Day or Mother's Day, or covering for another driver who is out.  (Pagano Ex. 354 (Baquero Dep.) 78:10-79:8; Pagano Ex. 352 (Hunt Dep. day 2) 18:4-19:2; Pagano Ex. 340 (Sangern Dep.) 30:3-11; Dean Decl. ¶ 32; Baratta Decl. ¶ 8.)

**D. Discovery Plaintiffs' Work Assignments**

520.     The contracts that the Discovery Plaintiffs signed to work for TXX did not state which Routes or Specials, if any, the Discovery Plaintiffs would perform.  (*See*, *e.g.*, Pagano Exs. 256-259.)

521.     Some Discovery Plaintiffs who worked as delivery drivers before working for TXX started working for TXX when TXX acquired the Routes they were already performing.  (Pagano Ex. 344 (Campos Dep.) 30:17-31:17; Pagano Ex. 335 (Franco Dep. day 1) 31:20-32:17; B. Gonzalez Decl. ¶¶ 3-7; Morocho Decl. ¶¶ 3-7.)

522.     These Discovery Plaintiffs generally continued performing the same Route at the same pay rate or, in the case of the Discovery Plaintiff who came to TXX from Kinray, a slightly higher pay rate to reflect the fact that TXX charged a 9% administration fee.  (B. Gonzalez Decl. ¶¶ 3-7; Morocho Decl. ¶¶ 3-7; Pagano Ex. 354 (Baquero Dep.) 120:2-121:3.)

523.     Discovery Plaintiffs who did not have a Route when they started working for TXX typically started off working for TXX by taking whatever extra work, *i.e.*, Specials, was available. (Armstrong Decl. ¶ 7; Cunningham Decl. ¶ 7; Dean Decl. ¶ 8; Fernandez Decl. ¶¶ 7, 11; Grant

Decl. ¶ 10; Henry Decl. ¶¶ 7, 9; Morris Decl. ¶¶ 11, 16; Paul Decl. ¶ 7; Rizzo Decl. ¶ 14; Pagano Ex. 356 (Oliveira Dep.) 74:20-75:18.)

524.     TXX's dispatchers assigned work to Discovery Plaintiffs who did not have regular Routes.  Specifically, a dispatcher would approach a Discovery Plaintiff and tell him or her which deliveries to make that day.  (Armstrong Decl. ¶¶ 6, 7; Cunningham Decl. ¶¶ 7-8; Dean Decl. ¶¶ 8-9; Fernandez Decl. ¶¶ 7-9; Grant Decl. ¶¶ 9-11; Henry Decl. ¶¶ 7, 9, 11; Morris Decl. ¶¶ 11, 14-15; Paul Decl. ¶ 7; Rizzo Decl. ¶ 14.)

525.     When dispatchers assigned Specials, sometimes they told Discovery Plaintiffs what the pay rate would be, and sometimes Discovery Plaintiffs did not find out their pay until they received their weekly paycheck and settlement report/invoice, which is a document that shows the deliveries TXX paid a driver for each week.  (Cunningham Decl. ¶ 7; Fernandez Decl. ¶ 8; Grant Decl. ¶ 11; Henry Decl. ¶¶ 7, 11; Morris Decl. ¶¶ 11, 14; Paul Decl. ¶ 7; Rizzo Decl. ¶ 14; *see also*, *e.g.*, Pagano Exs. 12, 22, 45, 46, 61, 76, 80, 125, 155, 371 (settlement reports/invoices).)

526.     Before Henry had an afternoon Route, Sangern sometimes told him to go to the TXX customer Bellco's warehouse in the afternoon, only for Henry to find that there was no work for him to do that day.  (Henry Decl. ¶ 24.)

527.     The Discovery Plaintiffs who started off at TXX by taking Specials eventually got one or more Routes.  (Armstrong Decl. ¶ 7; Cunningham Decl. ¶¶ 17-18, 21-22, 24; Dean Decl. ¶¶ 11, 16; Fernandez Decl. ¶¶ 12-13, 28, 33; Grant Decl. ¶¶ 13, 16-17, 19, 25; Henry Dec. ¶¶ 15, 21; Morris Decl. ¶¶ 18-20; Paul Decl. ¶¶ 8-9; Rizzo Decl. ¶ 20; Pagano Ex. 356 (Oliveira Dep.) 75:19-76:14.)

528.     Discovery Plaintiffs who previously worked for another company whose Routes were acquired by TXX were sometimes assigned one or more additional Routes after working for TXX for a while.  (B. Gonzalez Decl. ¶ 24; Morocho Decl. ¶ 29.)

529.     For the most part, the Discovery Plaintiffs got Routes when a TXX dispatcher or supervisor/manager offered them a specific Route.  (Armstrong ¶¶ 6-7, 9, Cunningham Decl. ¶¶, 8, 17-18, 21-22, 24, 63; Dean Decl. ¶¶ 11, 16; Fernandez Decl. ¶¶ 9, 12, 13, 28, 33; B. Gonzalez Decl. ¶ 24; Grant Decl. ¶¶ 12-13, 16-17, 19, 25; Henry Decl. ¶¶ 11, 15, 21; Marin Decl. ¶ 13; 15; Morris Decl. ¶¶ 15, 17-21; Ortellado Decl. ¶¶ 16, 41-44; Paul Decl. ¶¶ 8-10; Rizzo Decl. ¶¶ 19-20, 31; Pagano Ex. 356 (Oliveira Dep.) 76:11-14; Pagano Ex. 348 (Wadada Dep.) 29:23-30:13.)

530.     When a dispatcher assigned a Discovery Plaintiff a Route, sometimes the dispatcher told the Discovery Plaintiff what the pay rate would be, and sometimes the Discovery Plaintiff did not find out the pay rate until he or she received the first paycheck and settlement report/invoice for the Route.  (Armstrong Decl. ¶ 9; Cunningham Decl. ¶¶ 8, 18, 21-22; Dean Decl. ¶ 11; Fernandez Decl. ¶¶ 9, 33; B. Gonzalez Decl. ¶¶ 22, 24; Henry Decl. ¶ 15; Grant Decl. ¶¶ 11, 17-18; Marin Decl. ¶ 13; Morocho Decl. ¶ 19; Morris Decl. ¶¶ 18, 20; Ortellado Decl. ¶¶ 40-44; Paul Decl. ¶¶ 9-10; Rizzo Decl. ¶¶ 31-32; Pagano Ex. 348 (Wadada Dep.) 31:2-7.)

531.     Former TXX head dispatcher James Inzinna testified that he was "in charge of assigning the routes to drivers.  As things became available, it was up to [him] to give it out." (Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 10:22-11:2, 23:11-13.)

532.     Inzinna described the process of offering routes to drivers as follows: "We tell you: You wanna do this route?  They'd ask what it pays, we tell them, then they can either refuse it or take it."  (*Id.* at 10:22-11:2, 13:16-18.)

533.    Inzinna continued, "Well, with me, I would just tell 'em: This is what it pays.  Like, I – I couldn't – I wasn't in charge of any pricing.  So whatever I was told the route pays is what I told the driver."  (*Id*. at 13:22-25.)

534.    Once a Discovery Plaintiff was assigned a Route, that Route was his or hers indefinitely.  (Pagano Ex. 340 (Sangern Dep.) 129:15-22.)

535.    As a result, Discovery Plaintiffs had the same Route(s) for as many as 20 years.  (Armstrong Decl. ¶ 8, 17, 23; Campos Decl. ¶ 3; Fernandez Decl. ¶¶ 12-14; B. Gonzalez Decl. ¶¶ 16, 24; Grant Decl. ¶ 19; Henry Decl. ¶ 16; Oliveira Decl. ¶ 5;  Paul Decl. ¶ 11; Pagano Ex. 356 (Oliveira Dep.) 46:3-9, 54:6-8; Pagano Ex. 342 (Paul Dep.) 100:16-25.)

536.    TXX could and did change the Discovery Plaintiffs' Routes by adding or removing stops.  (Alexander Decl. ¶ 6; Armstrong Decl. ¶¶ 24-25; Cunningham Decl. ¶¶ 26, 28; Dean Decl. ¶ 15; Fernandez Decl. ¶¶ 29-30; B. Gonzalez Decl. ¶¶ 16-17; Grant Decl. ¶¶ 20-21; Henry Decl. ¶ 16; Marin Decl. ¶¶ 16-17; Morocho Decl. ¶¶ 14-15; Morris Decl. ¶ 22; Ortellado Decl. ¶ 32; Paul Decl. ¶ 12; Rizzo Decl. ¶ 34.)

537.    TXX made these changes without notice to or input from the Discovery Plaintiffs.  (Armstrong Decl. ¶¶ 24-25; Cunningham Decl. ¶ 26; Fernandez Decl. ¶ 29; B. Gonzalez Decl. ¶ 18; Grant Decl. ¶ 20; Henry Decl. ¶ 18; Marin Decl. ¶ 17; Morocho Decl. ¶ 15; Morris Decl. ¶ 22; Ortellado Decl. ¶ 32; Paul Decl. ¶ 12; Rizzo Decl. ¶ 34.)

538.    For example, Inzinna testified that when a stop was added to a Route, he was responsible for "find[ing] a spot in the route for it – you know, time-wise of (sic) geographic-wise."  (Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 23:22-24:4.)

539. Consistent with Inzinna's testimony, e-mails produced by TXX show that when a customer adds a new stop, TXX typically tells the customer what Route it will be part of and the expected delivery time.  (Schulman Ex. 45.)

540. When TXX added stops to the Discovery Plaintiffs' Routes, TXX required the Discovery Plaintiffs to take those stops.  If a Discovery Plaintiff tried to refuse a stop on his or her Route, TXX would threaten to take away the entire Route.  (Alexander Decl. ¶ 6-7; Cunningham Decl. ¶¶ 26-27; Dean Decl. ¶ 15; B. Gonzalez Decl. ¶¶ 17-20; Grant Decl. ¶ 20; Henry Decl. ¶¶ 18-19; Marin Decl. ¶ 16; Morocho Decl. ¶¶ 15-16; Paul Decl. ¶ 12.)

541. The only reason Discovery Plaintiffs would not deliver to a stop that TXX placed on their Routes was if the freight did not fit in their vehicles.  In such circumstances, a TXX dispatcher had to confirm that the freight would not fit, and the dispatchers frequently pushed the Discovery Plaintiffs to try to make excess freight fit in their vehicles.  (Cunningham Decl. ¶ 27; Marin Decl. ¶ 18; Morris Decl. ¶ 23; Pagano Ex. 360 (Armstrong Dep.) 35:22-37:2; Pagano Ex. 334 (Ortellado Dep.) 103:2-105:10, 170:10-171:6.)

542. When TXX added stops to the Discovery Plaintiffs' Routes, sometimes dispatchers told them what the pay rate would be for the new stops, and sometimes the Discovery Plaintiffs found out the rate when they received their weekly settlement reports/invoices.  (Armstrong Decl. ¶ 24; B. Gonzalez Decl. ¶ 19; Marin Decl. ¶ 17; Morris Decl. ¶ 22.)

543. The pay rate for an added stop was not necessarily the same rate that a Discovery Plaintiff was receiving for other stops on the Route.  (B. Gonzalez Decl. ¶ 19; Henry Decl. ¶ 20.)

544. TXX has taken stops away from Discovery Plaintiffs and given them to other drivers even when there were no complaints about late deliveries or other delivery issues. (Armstrong Decl. ¶¶ 25-26; Cunningham Decl. ¶ 28.)

545.    When Cunningham complained that TXX changed the composition of his Route, resulting in him earning less money while making more stops, the dispatcher Lucas told him that the decision "came from the top."  (Cunningham Decl. ¶ 28.)

546.    TXX has taken Routes away from Discovery Plaintiffs without advance notice. (Baratta Decl. ¶ 25; Fernandez Decl. ¶¶ 16, 25; Pagano Ex. 335 (Franco Dep. day 1) 94:6-10.)

547.    When TXX has lost a customer account or a customer stated they did not want a certain driver making deliveries for them anymore, TXX has taken away entire Routes from Discovery Plaintiffs, even though those Routes also included deliveries for other customers. (Cunningham Decl. ¶¶ 19-20; Marin Decl. ¶¶ 9-10.)

548.    Once Discovery Plaintiffs had Routes, dispatchers continued to assign them Specials.  (Cunningham Decl. ¶ 26; Fernandez Decl. ¶¶ 26, 29; Henry Decl. ¶ 24; Marin Decl. ¶¶ 16-17; Morocho Decl. ¶¶ 29, 38; Morris Decl. ¶ 22; Rizzo Decl. ¶ 28; Pagano Ex. 363 (Raghubir Dep.) 39:18-25, 40:23-41:6.)

549.    TXX required Discovery Plaintiffs to take certain assignments.  (Alexander Decl. ¶ 6; Fernandez Decl. ¶ 15; Morocho Decl. ¶¶ 15-16; Morris Decl. ¶¶ 22-23; Rizzo Decl. ¶¶ 28-29; Pagano Ex. 335 (Franco Dep. day 1) 36:8-37:3.)

550.    For example, when Baquero gave Ortellado an afternoon Route, she wanted to give up her morning Route because the timing of the morning Route did not allow her to make the afternoon deliveries on time.  Baquero told her that if she gave up the morning Route he would take away her afternoon Route.  As a result, Ortellado had to hire others to perform the morning Route so that she could keep the afternoon Route.  Because of the expenses she incurred by hiring others to perform the morning Route that Baquero required her to keep, Ortellado actually lost money on that Route.  (Ortellado Decl. ¶¶ 45-52.)

551.     Dispatchers threatened to take Discovery Plaintiffs' and other drivers' Routes away when they attempted to reject work.  As a result, Discovery Plaintiffs took work assignments they did not want.  (Alexander Decl. ¶ 7; Morocho Decl. ¶¶ 15-16; *see also* Pagano Ex. 361 (Marin Dep.) 44:12-17; Baratta Decl. ¶ 22; Ortellado Decl. ¶¶ 41-50.)

552.     TXX has in fact taken away Routes when Discovery Plaintiffs turned down work.  For example, on one occasion a dispatcher wanted Henry to meet another driver who had broken down and pick up that driver's freight.  After Henry said that he was unable to do so, the dispatcher Danny called Henry and said that if Henry would not help the driver who broke down, Henry would not have his afternoon Route that day, and someone else would be doing Henry's afternoon Route that day.  (Henry Decl. ¶ 34.)

553.     On one occasion, Rizzo attempted to turn down a Special assignment that he had done twice before.  Portillo threatened to fire Rizzo if he did not take the Special, so Rizzo made the delivery.  However, TXX paid Rizzo for that delivery at just half the rate that it had previously paid him for the same assignment.  (Rizzo Decl. ¶ 30.)

**E. Defendants Had Ultimate Authority Over Plaintiffs' Pay Rates**

**i.     TXX set Discovery Plaintiffs' pay rates**

554.     When TXX dispatchers or supervisors/managers gave the Discovery Plaintiffs work assignments, they either told the Discovery Plaintiffs the pay rate upfront or the Discovery Plaintiffs performed the work and found out their pay rates when they received their weekly pay and settlement reports/invoices.  (Armstrong Decl. ¶¶ 9, 24, 53; Cunningham Decl. ¶¶ 7-8, 18, 21-22, 50; Fernandez Decl. ¶¶ 6, 8, 9, 17-23, 31, 33; B. Gonzalez Decl. ¶¶ 7, 18-19; Grant Decl. ¶¶ 7, 11-12, 17, 21; Marin Decl. ¶¶ 12-13, 17; Morocho Decl. ¶¶ 17, 19, 38; Morris Decl. ¶¶ 14, 20, 22;

Ortellado Decl. ¶¶ 16, 33, 43-44; Rizzo Decl. ¶¶ 14, 17, 31; Pagano Ex. 356 (Oliveira Dep.) 217:2-6.)

555.    At all relevant times, TXX has prepared the Discovery Plaintiffs' settlement reports/invoices from TXX's Datatrac computer system.  (Pagano Ex. 358 (Barnes Dep. day 2) 35:5-22, 36:3-9 (discussing Schulman Ex. 28).)

556.    TXX routinely pays drivers different rates for stops for different customers on the same Route.  This is TXX's decision.  (Armstrong Decl. ¶ 11; B. Gonzalez Decl. ¶¶ 16-20; Henry Decl. ¶ 20; Morocho Decl. ¶ 17; Paul Decl. ¶¶ 13, 20-23 & Paul Ex. 1 (showing numerous instances where Paul was not paid $8 per stop, which was the rate he submitted in his "bid"); Ortellado Decl. ¶¶ 36-39 & Ortellado Ex. 2; Pagano Ex. 350 (Dean Dep.) 120:4-7; Oliveira Decl. ¶¶ 13-14.)

557.    TXX typically did not raise the Discovery Plaintiffs' pay rates in response to their complaints about low pay rates.  (B. Gonzalez Decl. ¶ 22; Marin Decl. ¶ 14; Pagano Ex. 359 (Baratta Dep.) 58:9-24; Pagano Ex. 350 (Dean Dep.) 120:14-121:3; Pagano Ex. 337 (Morocho Dep.) 190:17-23; Pagano Ex. 356 (Oliveira Dep.) 217:7-9; Pagano Ex. 334 (Ortellado Dep.) 33:2-7.)

558.    Instead, when Discovery Plaintiffs and other drivers have complained to dispatchers that TXX's pay rates were too low or asked for more money, sometimes the dispatchers told the drivers that they could do the work at the rate TXX paid or not at all and that if they did not want the work other drivers would.  (B. Gonzalez Decl. ¶¶ 19-21; Marin Decl. ¶¶ 13-15; Morocho Decl. ¶ 18; Rizzo Decl. ¶¶ 16, 32.)

559.    Other times the dispatchers responded to complaints about low pay rates by saying that the rates were the "boss's" decision or that they could not pay more.  (Marin Decl. ¶¶ 12, 19.)

560.    Baquero and Arevalo told Ortellado that she should not complain about low pay for stops added to her Route because the stops were already on her way.  (Ortellado Decl. ¶ 34.)

561.    TXX has taken away Discovery Plaintiffs' Routes when they complained about pay or asked for more money.  (Alexander Decl. ¶ 10; Marin Decl. ¶¶ 14-15.)

562.    Because of TXX's hostility to drivers asking to be paid more, oftentimes Discovery Plaintiffs simply did not ask for higher pay.  (*E.g.*, Rizzo Decl. ¶ 15; (Pagano Ex. 362 (Rizzo Dep.) 71:10-11; Pagano Ex. 339 (Henry Dep.) 76:20-25.)

563.    TXX has increased Discovery Plaintiffs' workload and hours worked without any additional compensation.  Before TXX moved its Long Island warehouse to its current Hauppauge location, TXX employees sorted each driver's freight.  At the current Hauppauge warehouse, each driver has to remove his or her own freight from a conveyor belt and organize it him or herself.  TXX did not provide any additional compensation to drivers for this additional work, which takes drivers hours to complete.  TXX unilaterally decided that drivers would have to sort their own freight at the current Hauppauge location.  (Armstrong Decl. ¶ 31; Baratta Decl. ¶ 7; Cunningham Decl. ¶ 29; Grant Decl. ¶ 30; Henry Decl. ¶ 26; Morris Decl. ¶ 25.)

**ii.    TXX reduced Discovery Plaintiffs' pay rates and refused to pay them at all for certain work**

564.    Sometimes TXX did not pay the Discovery Plaintiffs the pay rate a dispatcher or supervisor/manager had promised.  For example, a dispatcher told Grant that he would receive $6 per stop for a Route for the TXX customer Bellco.  However, TXX paid Grant just $5.25 per stop for that Route.  Even though Grant complained about this, TXX never raised his pay for that Route to $6 per stop.  (Grant Decl. ¶ 18.)

565.    Another time, a dispatcher added a new stop to Grant's Route and said that TXX would pay Grant extra for that stop.  However, TXX did not in fact pay Grant extra for that stop.

When Grant complained about this, the dispatcher said that Grant got paid enough anyway. Even though TXX never paid Grant extra for that stop, when TXX took that stop away from Grant after approximately two years, TXX reduced Grant's pay for that Route. (*Id*. at ¶¶ 21-22.)

566. One time Portillo gave Rizzo a delivery to a location near Maine. Portillo told Rizzo that he would receive $1,000 for that delivery. However, TXX paid Rizzo just $300 for that delivery. When Rizzo complained, Portillo responded that $300 was the pay. (Rizzo Decl. ¶ 31.)

567. In 2012, John Hunt told Fernandez that TXX would pay him $13 per stop for Capital One work that was going to be done through the company RR Donnelly. At Hunt's direction, Fernandez filled out a form to that effect. (Fernandez Decl. ¶¶ 20-22.)

568. However, a week later Mills called Fernandez and told him that TXX would pay him just $8 per stop for the Capital One work. When Fernandez said that Hunt – who as president was Mills's boss – had told him the rate was $13 per stop, Mills brushed off Fernandez' complaint. (*Id*. at ¶ 23; Pagano Ex. 351 (J. Hunt Dep. day 1) 68:10-12.)

569. TXX told several Discovery Plaintiffs that they would receive 51% of what TXX's customer paid for the deliveries they made. However, TXX never showed the Discovery Plaintiffs what its customers paid for the deliveries they made so that they could verify they were actually being paid 51%. (Armstrong Decl. ¶ 4; Fernandez Decl. ¶ 6; Grant Decl. ¶ 7.)

570. When Grant asked Sangern how he would know whether he actually received 51%, Sangern merely said, "Trust us." (Grant Decl. ¶ 7.)

571. At one point, when TXX unilaterally decreased Grant's pay, Grant asked a dispatcher what happened to the 51% he was promised. The dispatcher responded that the 51% did not apply anymore. (*Id*. at ¶ 7.)

572.     In fact, TXX has often unilaterally decreased the Discovery Plaintiffs' pay rates and has even stopped paying Discovery Plaintiffs for certain work.  (Alexander ¶ 8; Baratta Decl. ¶¶ 17-19; B. Gonzalez Decl. ¶ 23; Grant Decl. ¶¶ 7, 23; Marin Decl. ¶ 20; Morocho Decl. ¶ 18; Paul Decl. ¶¶ 14-15; Pagano Ex. 359 (Baratta Dep.) 158:25-159:14.)

573.     When Discovery Plaintiffs complained about these reductions, dispatchers responded by saying things like if they did not want the work, someone else would take it; TXX reduced all drivers' pay; or too many drivers were going to a stop.  (Alexander Decl. ¶ 9; B. Gonzalez Decl. ¶ 23; Marin Decl. ¶ 20; Morocho Decl. ¶ 18.)

574.     When Paul complained about pay reductions that were made after this lawsuit started, dispatchers told him that the reductions were because of this lawsuit.  (Paul Decl. ¶ 15.)

575.     TXX has reduced Discovery Plaintiffs' pay rates in retaliation for Discovery Plaintiffs' requests for higher pay or expressing work preferences.  For example, in 2007 a dispatcher gave Grant a Capital One Route that paid $200 per day.  At one point, Grant asked a dispatcher for more money for that Route because his toll and gas expenses had increased.  The dispatcher said he would talk to Patricia Hunt about that.  A few weeks later, the dispatcher told Grant that instead of paying Grant more, TXX was going to reduce his pay for that Route by $25.  TXX in fact reduced Grant's pay by $25.  (Grant Decl. ¶¶ 24-27; Pagano Ex. 349 (Grant Dep.) 3:8-34:4.)

576.     On another occasion, TXX reduced Rizzo's pay rate when he attempted to refuse an assignment.  (Rizzo Decl. ¶ 30.)

577.     Defendants unilaterally refused to pay Plaintiffs at all for some work.  (Armstrong Decl. ¶ 54; Rizzo Decl. ¶ 18.)

578.    On one occasion Rizzo completed a mail route but did not receive any pay for it. When he complained, the dispatcher Jose told him he would not be paid for that job and "the only payment was the big door out there that [Rizzo] can turn and leave through."  (Pagano Ex. 362 (Rizzo Dep.) 89:4-9.)

579.    Before Baratta had a Route, some days he spent hours waiting at TXX's warehouse for an assignment without ever getting one.  Even though dispatchers told him he would be paid for his waiting time, TXX never paid him for his waiting time.  (Baratta Decl. ¶ 11.)

### iii.    When TXX made mistakes in paying Discovery Plaintiffs, TXX unilaterally decided whether or not to correct those mistakes

580.    When TXX made mistakes in paying Discovery Plaintiffs (such as not paying for a stop or paying the wrong rate), Discovery Plaintiffs typically raised these discrepancies, if at all, with dispatchers.  (Rizzo Decl. ¶ 18; Pagano Ex. 360 (Armstrong Dep.) 99:23-100:14; Pagano Ex. 359 (Baratta Dep.) 59:13-60:9; Pagano Ex. 345 (Fernandez Dep.) 55:15-56:6; Pagano Ex. 336 (Franco Dep. day 2) 93:5-16; Pagano Ex. 338 (Gonzalez Dep.) 83:4-10; Pagano Ex. 363 (Raghubir Dep.) 149:18-23; Pagano Ex. 347 (Sawhney Dep. day 2) 125:22-126:21; Pagano Ex. 348 (Wadada Dep.) 167:20-168:9.)

581.    When Discovery Plaintiffs complained to TXX about mistakes in their pay, sometimes TXX corrected those mistakes, and sometimes it did not.  (Armstrong Decl. ¶ 54; Rizzo Decl. ¶ 18; Pagano Ex. 359 (Baratta Dep.) 59:13-60:21; Pagano Ex. 344 (Campos Dep.) 128:19-129:17; Pagano Ex. 347 (Sawhney Dep. day 2) 125:22-126:16; Pagano Ex. 348 (Wadada Dep.) 169:15-170:16.)

582.    Sometimes Discovery Plaintiffs did not bother raising pay mistakes with TXX because it was very difficult to get TXX to correct those mistakes, and Discovery Plaintiffs feared retaliation from TXX.  (Baratta Decl. ¶ 20; Pagano Ex. 362 (Rizzo Dep.) 89:11-15.)

583.    Around April 2013, Morris complained to Portillo about pay mistakes.  Portillo told Morris that Morris had to fill out a "bid sheet" in order to resolve the mistakes.  Morris had never before seen a bid sheet at TXX.  (Morris Decl. ¶ 54.)

584.    Morris did not fill out that bid sheet because he already had his long-time Routes, and it did not make sense that he would have to fill out a bid sheet in order to be paid for work he already performed.  (*Id*. at ¶ 55.)

585.    It took months – and the involvement of Morris's wife – to get TXX to actually pay the money it owed Morris for these discrepancies.  (*Id*. at ¶¶ 54-57.)

**iv.    TXX took deductions from Discovery Plaintiffs' pay**

586.    TXX unilaterally took non-negotiable deductions from the Discovery Plaintiffs' pay for things like an undefined "administration fee" and scanner rentals.  (Alexander Decl. ¶ 15; Armstrong Decl. ¶ 34; Cunningham Decl. ¶ 40; Dean Decl. ¶ 22; Fernandez Decl. ¶ 42; B. Gonzalez Decl. ¶ 49; Grant Decl. ¶¶ 43, 47, 49; Henry Decl. ¶ 36; Marin Decl. ¶ 32; Morocho Decl. ¶ 44; Morris Decl. ¶ 31; Ortellado Decl. ¶ 57; Paul Decl. ¶ 25.)

587.    The Discovery Plaintiffs do not know what the administration fee is for, and TXX has unilaterally increased that fee.  (Cunningham Decl. ¶ 40; Fernandez Decl. ¶ 42; Grant Decl. ¶¶ 49; Morris Decl. ¶ 31.)

588.    TXX has deducted a fee for the scanner rental from Discovery Plaintiffs who did not use a scanner.  (Alexander Decl. ¶ 15; Pagano Ex. 355 (Alexander Dep.) 104:13-19; Pagano Ex. 364 (Lindsay Dep.) 52:16-25.)

**F. Defendants' Own Witnesses Do Not Agree On What "Bidding" Is Or How It Was Implemented At TXX**

589.    Over the course of this litigation, Defendants and their representatives have used the term "bidding" to refer to numerous different activities, as discussed *infra* ¶¶ 590-95.  To be

sure, towards the end of the Sangern deposition, Defendants' counsel stated, "I think the word 'bidding' has been thrown around.  I don't know what it is anymore."  (Pagano Ex. 340 (Sangern Dep.) 255:13-15.)

590.    Sangern initially testified at deposition that in 2007 drivers got routes by bidding on them.  However, he subsequently testified that he did not know how that bidding process worked or how drivers got routes in 2007, and in fact he did not know whether drivers bid on routes in 2007.  (*Id*. at 122:15-20, 126:4-15.)

591.    Sangern characterized the rate agreement (described *supra* ¶ 177 and *infra* ¶¶ 621-23) as a document for "one time bidding," but also stated that it was a document that is signed after a pay rate has been agreed to.  (*Id*. at 138:12-23.)

592.    Sangern also characterized as bidding the instances when he claimed he called a driver who worked in a specific geographic area and asked the driver whether he wanted an additional stop or stops in that area.  (*Id*. at 258:20-259:11.)

593.    Sangern testified that when he was a driver before becoming a dispatcher, he got a Fuji Route by bidding on it.  He described the "bid" process as follows: an account coordinator offered him a specific Route, Sangern asked what the pay was, and Sangern agreed to take the Route at that rate.  Although Sangern stated that he "negotiate[d]" the pay rate, in fact he did not ask for more money than he was offered.  (*Id*. at 156:25-157:7.)

594.    Oscar Maya also worked for TXX as a driver before becoming a dispatcher. (Schulman Ex. 1 (Maya Dep.) 8:15-20.)

595.    Maya testified that as a driver he got work by "[b]idding."  (*Id*. at 14:21-15:2.) When asked how he bid, he stated that he would go to TXX's facility, and a manager would ask him if he wanted to take a job or not.  (*Id*. at 15:6-21.)

148

596.     John Hunt and Juan Carlos Baquero testified at deposition that TXX kept most Kinray drivers on their Routes when Kinray became a TXX customer in 2013 and did not put the Kinray Routes out for bidding to the general driver population.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 115:11-116:9; Pagano Ex. 354 (Baquero Dep.) 120:2-5.)

597.     Moreover, J. Hunt is the person at TXX who decides what work to put up for bid. (Pagano Ex. 352 (J. Hunt Dep. day 2) 95:15-20.)

598.     Nonetheless, TXX's accounts payable employee Melissa Barnes and dispatcher Jose Portillo testified at Joseph Morris' unemployment insurance hearing that Kinray work was available for bidding when Kinray became a TXX customer.  (Pagano Ex. 194 (Mar. 12, 2014 Unemployment Ins. Hearing Tr.) 99:13-20; Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 42:20-25, 98:7-99:15, 100:22-23; Pagano Ex. 358 (Barnes Dep. day 2) 8:12-13.)

599.     Sangern testified at Morris' unemployment insurance hearing that TXX put *all* Routes up for bidding in August 2013.  (Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 280:10-281:2.)

600.     However, J. Hunt testified at deposition that there was never a time when TXX put all work up for bidding.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 95:15-20, 102:18-103:19.)

**G. There Was Not Even The Appearance Of Bidding At TXX Prior To 2013, And The Discovery Plaintiffs Have Almost Never Obtained Work From TXX Through Bidding**

601.     The Discovery Plaintiffs never heard about "bidding" at TXX until 2013 or later. (Armstrong Decl. ¶ 46; Baratta Decl. ¶ 40; Cunningham Decl. ¶ 60; Fernandez Decl. ¶ 48; Grant Decl. ¶ 78; Henry Decl. ¶ 45; Morocho Decl. ¶ 35; Morris Decl. ¶ 52.)

602.     At times in 2013 and later, TXX attempted to elicit sham bids from drivers on their existing Routes.  (Armstrong Decl. ¶¶ 46-48; Grant Decl. ¶ 82; Morris Decl. ¶¶ 54-55.)

603.     Before 2013 at the earliest, when a Route became available (whether because it was a new Route, because TXX reorganized Routes, or because the driver responsible for that Route left TXX or TXX took the Route away from him or her), TXX did not make that availability known to the general TXX driver population.  (Armstrong Decl. ¶¶ 46, 49; Cunningham Decl. ¶¶ 60-62; Fernandez Decl. ¶¶ 48-49; Morocho Decl. ¶¶ 34-35; Morris Decl. ¶¶ 52-55; Pagano Ex. 352 (J. Hunt Dep. day 2) 107:8-108:13, 121:2-6; Pagano Ex. 354 (Baquero Dep.) 48:14-17.)

604.     TXX has received a total of approximately 19 handwritten, paper bids (as opposed to electronic bids) from drivers.  With the exception of two bids dated September 11, 2013 and September 25, 2013, all of these bids are dated between May 14, 2013 and June 17, 2013.  None of these bids were placed by Discovery Plaintiffs.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 103:20-104:8 (discussing Schulman Ex. 26.)  It is not clear what if anything those bids were submitted in response to.  (*Id*. at 95:25-96:10.)

605.     At some point in 2013, TXX listed some Routes that became available on its website, and drivers could submit bids for those Routes.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 107:8-108:13; Pagano Ex. 354 (Baquero Dep.) 48:14-17.)

606.     This practice was short-lived, as TXX did not put any Routes out for bidding to drivers between September 2013 and May 2016.  (Pagano Ex. 352 (J. Hunt day 2) 116:10-14.)

607.     Nevertheless, Discovery Plaintiffs were assigned new Routes between September 2013 and 2016.  For example, Juan Baquero assigned Ortellado two Kinray Routes – one for weekdays and one for Saturdays – in September or October 2013 even though she did not place a bid on either of those routes, whether online or otherwise.  (Ortellado Decl. ¶¶ 41-44; Pagano Ex. 334 (Ortellado Dep.) 121:24-122:5 (discussing Schulman Ex. 43, which reflects a start date of October 5, 2013 for Ortellado's Saturday Kinray Route); Schulman Decl. ¶ 43 & Schulman Ex.

42; Pagano Ex. 194 (Mar. 12, 2014 Unemployment Ins. Hearing Tr.) 99:13-20 (Kinray work began in September when Morris lost his Bellco work); Pagano Ex. 193 (Feb. 7, 2014 Unemployment Ins. Hearing Tr.) 25:18-26:6 (Morris lost his Bellco work on September 11, 2013).)

608.     In 2014, Sangern called Oliveira and offered him a Route that was available because the previous driver on that Route had left.  (Pagano Ex. 356 (Oliveira Dep.) 148:6-149:23.)

609.     Similarly, in late early 2015 or early 2016, Sangern gave Fernandez an afternoon Route.  (Fernandez Decl. ¶ 33.)

610.     Fernandez did not bid on that Route; Sangern told Fernandez what the pay rate would be.  (*Id*. at ¶¶ 33, 49.)

611.     In 2016, TXX again placed available Routes on its website.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 113:11-117:2.)

612.     Most of the Discovery Plaintiffs have never bid on work, either before or after 2016. Rather, TXX dispatchers and supervisors have assigned Routes and Specials as described *supra*. (*E.g.*, Armstrong Decl. ¶¶ 46-49; Baratta Decl. ¶¶ 9, 41; Cunningham Decl. ¶¶ 62-63; Fernandez Decl. ¶¶ 48-49; B. Gonzalez Decl. ¶ 25; Henry Decl. ¶¶ 46-47; Morris Decl. ¶¶ 52-55; Ortellado Decl. ¶ 44; Rizzo Decl. ¶ 19; Pagano Ex. 364 (Lindsay Dep.) 59:13-16; Pagano Ex. 337 (Morocho Dep.) 8:11-12; Pagano Ex. 344 (Campos Dep.) 108:9-11, 262:13-16; Pagano Ex. 347 (Sawhney Dep. day 2) 150:20-22.)

613.     Until 2016, no Discovery Plaintiff obtained a Route through bidding.  (Armstrong Decl. ¶¶ 46-49; Baratta Decl. ¶¶ 9, 41; Cunningham Decl. ¶¶ 62-63; Fernandez Decl. ¶¶ 48-49; B. Gonzalez Decl. ¶ 25; Henry Decl. ¶¶ 46-47; Morris Decl. ¶¶ 52-55; Ortellado Decl. ¶ 44; Rizzo Decl. ¶ 19; Pagano Ex. 364 (Lindsay Dep.) 59:13-16; Pagano Ex. 337 (Morocho Dep.) 8:11-12;

Pagano Ex. 344 (Campos Dep.) 108:9-11, 262:13-16; Pagano Ex. 347 (Sawhney Dep. day 2) 150:20-22; Pagano Ex. 335 (Franco Dep. day 1) 68:5-22; Pagano Ex. 363 (Raghubir Dep.) 79:21-24; Grant Decl. ¶¶ 80-81; *cf.* Pagano Ex. 361 (Marin Dep.) 136:16-138:4 (driver working under Marin's driver number placed a bid but did not get the Route on which he bid); Oliveira Decl. ¶¶ 6-17; Paul Decl. ¶¶ 17-19.)

614.     Only two Discovery Plaintiffs – Paul and Oliveira – obtained a Route by a process that even remotely resembled bidding.  In 2016, TXX reorganized Paul and Oliveira's pre-existing Routes, and TXX allocated their stops among multiple new Routes which it placed up for bidding. Paul and Oliveira, who each lost a Route in TXX's reorganization, then "placed bids" on the Routes that included the stops from their previous Routes in order to keep as much of their previous work as possible.  (Oliveira Decl. ¶¶ 6-10; Paul Decl. ¶ 17.)  The other Discovery Plaintiffs who were working for TXX in 2016 simply kept their existing Routes without submitting bids.  (*E.g.*, Armstrong Decl. ¶¶ 8, 17 46-49; Pagano Ex. 359 (Baratta Dep.) 97:17-18; Baratta Decl. ¶ 41; Pagano Ex. 341 (Cunningham Dep.) 34:2-7, 97:12-25, 101:17-102:6; Pagano Ex. 339 (Henry Dep.) 12:22-13:10; Pagano Ex. 349 (Grant Dep.) 61:8-13, 62:11-24; Grant Decl. ¶ 80; Pagano Ex. 364 (Lindsay Dep.) 19:20-20:3, 59:13-16.)

615.     Paul and Oliveira each got one of the Routes on which they bid.  Those Routes included many of the stops that were on Paul and Oliveira's Routes before they placed bids. (Oliveira Decl. ¶¶ 10, 12; Paul Decl. ¶¶ 17, 19.)

616.     This bidding process was a sham, as TXX did not pay Paul and Oliveira their bidded rates.  No one from TXX told Paul or Oliveira in advance that TXX was not going to pay their bidded rates.  (Oliveira Decl. ¶¶ 11, 13-15; Paul Decl. ¶¶ 18, 20-23 & Paul Ex. 1 (reflecting numerous instances where TXX did not pay Paul his bidded rate of $8 per stop, such as, for

example, on October 17, 2016 (TS69757) $105 for Kinray route number FK, $7 for Rochester

Drug Corporation route number 4355, $22.50 for HD Smith route number 4355, and $7.50 for a

Bellco stop).)

617.    When Paul asked the manager Oscar why TXX did not pay him what he bid, Oscar

responded by saying that is what TXX pays.  (Paul Decl. ¶ 22.)

618.    Specials have never been placed on the TXX website for bidding.  (Pagano Ex. 354

(Baquero Dep.) 79:9-11.)

619.    Dispatchers have always been responsible for assigning Specials to drivers.

(Pagano Ex. 352 (J. Hunt Dep. day 2) 122:14-123:10; Pagano Ex. 354 (Baquero Dep.) 79:9-15;

Armstrong Decl. ¶¶ 6-7; Baratta Decl. ¶¶ 8-10; Cunningham Decl. ¶¶ 7-8; Dean Decl. ¶¶ 8-9;

Fernandez Decl. ¶¶ 7-9; Grant Decl. ¶¶ 10-12; Henry Decl. ¶ 9; Marin Decl. ¶¶ 11-12; Paul Decl.

¶ 7; Rizzo Decl. ¶¶ 14, 28-30.)

620.    When Specials are available, dispatchers approach a Discovery Plaintiff or other

driver and offer or require him or her to take the assignment.  (Pagano Ex. 345 (Fernandez Dep.)

57:18-58:5; Pagano Ex. 334 (Ortellado Dep.) 120:2-121:2; Armstrong Decl. ¶ 53; Fernandez Decl.

¶ 50; Morocho Decl. ¶¶ 36-37.)

621.    In 2013 or 2014, TXX began using rate agreements to memorialize the rates to be

paid to drivers.  Rate agreements are used primarily for Specials.  (Pagano Ex. 352 (J. Hunt Dep.

day 2) 79:24-81:3 (discussing Schulman Ex. 18); Pagano Ex. 340 (Sangern Dep.) 138:12-23;

Armstrong Decl. ¶ 53; Fernandez Decl. ¶ 50; Morocho Decl. ¶ 36.)

622.    Rate agreements are typically filled out by dispatchers, not by drivers, and they are

signed after a driver has agreed to take an assignment.  (Pagano Ex. 340 (Sangern Dep.) 138:20-

23; Pagano Ex. 344 (Campos Dep.) 105:2-20 (discussing Pagano Ex. 57); Pagano Ex. 345 (Fernandez Dep). 71:6-72:4 (referring to Pagano Ex. 96 at TRA3021), 87:22-89:9.)

624. TXX sets the rates on the rate agreements. (Armstrong Decl. ¶ 53; Fernandez Decl. ¶ 50; Morocho Decl. ¶¶ 36-37; Pagano Ex. 364 (Lindsay Dep.) 87:22-89:7 (discussing Pagano Ex. 162); Pagano Ex. 334 (Ortellado Dep.) 165:22-166:4.)

## H. Defendants Directed Discovery Plaintiffs And Other Drivers To Share Work With Specific People

624. Most of the time, the Discovery Plaintiffs worked for TXX on their own without a helper. (Armstrong Decl. ¶ 39; Baratta Decl. ¶ 37; Cunningham Decl. ¶¶ 41-44; Fernandez Decl. ¶ 45; B. Gonzalez Decl. ¶ 48; Grant Decl. ¶ 87; Henry Decl. ¶ 37; Paul Decl. ¶¶ 26, 28; Rizzo Decl. ¶ 37; Pagano Ex. 353 (Morris Dep.) 212:17-22; Pagano Ex. 348 (Wadada Dep.) 36:12-15.)

625. TXX dispatchers and managers have recommended and vetoed helpers for the Discovery Plaintiffs to use. (Ortellado Decl. ¶¶ 18-19.)

626. TXX dispatchers and managers have specified the pay range for helpers used by Discovery Plaintiffs. (Ortellado Decl. ¶ 18.)

627. TXX dispatchers and managers have arranged for Discovery Plaintiffs to work under and be paid through another driver's number. (Ortellado Decl. ¶ 6; Rizzo Decl. ¶ 7.)

628. In fact, when Ortellado wanted to work directly for TXX rather than being paid through another driver, Arevalo told he she was moving too quickly and she had to work for the other driver a while longer before she could have her own Route. (Ortellado Decl. ¶¶ 11-13.)

629. TXX dispatchers have directed Discovery Plaintiffs to pick up and drop off items with themselves or other drivers, including drivers working directly for the dispatchers. (Armstrong Decl. ¶ 33; Cunningham Decl. ¶¶ 49-50; Dean Decl. ¶ 23; Fernandez Decl. ¶¶ 17-18;

Morris Decl. ¶ 34; Pagano Ex. 339 (Henry Dep. 99:3-13); Pagano Ex. 364 (Lindsay Dep.) 106:11-109:6.)

630.     Sometimes TXX paid Discovery Plaintiffs for this work, and sometimes it did not. (Armstrong Decl. ¶ 33; Cunningham Decl. ¶¶ 49-50; Dean Decl. ¶ 23; Fernandez Decl. ¶¶ 17-18; Morris Decl. ¶ 34.)  When TXX paid for this work, TXX set the pay rate.  (Cunningham Decl. ¶ 50; Morris Decl. ¶ 34.)

**I. The Discovery Plaintiffs Were Not Free To Determine Their Own Schedules**

631.     TXX dictated what time the Discovery Plaintiffs had to arrive at a TXX or customer facility to start work.  (Armstrong Decl. ¶¶ 12-13, 19; Cunningham Decl. ¶¶ 7, 24, 30; Dean Decl. ¶ 21; Fernandez Decl. ¶ 32; B. Gonzalez Decl. ¶ 8; Grant Decl. ¶ 29; Henry Decl. ¶ 28; Morocho Decl. ¶ 11; Morris Decl. ¶¶ 13, 29; Ortellado Decl. ¶¶ 9, 20, 45; Paul Decl. ¶ 16; Rizzo Decl. ¶ 23.)

632.     Dispatchers have admonished drivers to come to work on time.  (Dean Decl. ¶ 29; Fernandez Decl. ¶ 32; Grant Decl. ¶ 52; Rizzo Decl. ¶ 35.)

633.     Dispatchers have threatened to take Routes away from drivers who are late to work. (Dean Decl. ¶ 29; Fernandez Decl. ¶ 32; Morocho Decl. ¶ 24.)

634.     Dispatchers have in fact taken Routes away from drivers who were late to work. (Grant Decl. ¶ 32; Rizzo Decl. ¶ 24.)

635.     On one occasion when Morris was late, TXX made a $20 deduction from his settlement report that said, "late to work."  (Morris Decl. ¶ 30 & Morris Ex. 2; *see also* Grant Decl. ¶ 31; Rizzo Decl. ¶ 24.)

636.    TXX requires drivers to return empty totes, returned merchandise, and paperwork from next day Routes by a set time each day.  (Armstrong Decl. ¶ 15; Cunningham Decl. ¶ 31; Grant Decl. ¶ 44; Marin Decl. ¶ 22.)

637.    TXX has charged drivers who returned certain paperwork late.  (Marin Decl. ¶ 23.)

638.    Drivers cannot take breaks of longer than a few minutes while making deliveries because longer breaks would make it impossible for them to make their deliveries on time. (Armstrong Decl. ¶ 37; Cunningham Decl. ¶ 67; Fernandez Decl. ¶ 41; B. Gonzalez Decl. ¶ 26; Grant Decl. ¶ 45.)

639.    TXX has also instructed drivers not to make extra stops while making deliveries. (Cunningham Decl. ¶ 47; Grant Decl. ¶¶ 54-55; Pagano Ex. 356 (Oliveira Dep.) 175:15-17.)

640.    TXX has threatened to take drivers' Routes away if they make extra stops.  (Grant Decl. ¶ 55.)

641.    TXX has always required drivers to give advance notice when they will take time off.  (Armstrong Decl. ¶ 38; Cunningham Decl. ¶ 52; Fernandez Decl. ¶ 43; Grant Decl. ¶ 57; Henry Decl. ¶ 41; Morocho Decl. ¶ 33; Morris Decl. ¶ 40; Paul Decl. ¶ 29.)

642.    At one point, TXX had a form that drivers had to fill out to get permission to take time off.  (Armstrong Decl. ¶ 38; Cunningham Decl. ¶ 52; Grant Decl. ¶ 58; Henry Decl. ¶ 41; Morris Decl. ¶ 41 & Morris Ex. 3.)

643.    Before this lawsuit was filed, TXX routinely found replacement drivers when a Discovery Plaintiff missed work, whether for a vacation or otherwise.   TXX paid these replacement drivers directly.  (Armstrong Decl. ¶ 38; Baratta Decl. ¶¶ 30-32; Cunningham Decl. ¶ 53; Fernandez Decl. ¶¶ 43-44; Grant Decl. ¶ 57; Henry Decl. ¶ 42; Morocho Decl. ¶¶ 30, 33; Morris Decl. ¶ 40; Paul Decl. ¶ 29.)

644.     After this lawsuit was filed, TXX has required some Discovery Plaintiffs to secure their own replacements.  However, even after this lawsuit was filed TXX has secured replacement drivers for Discovery Plaintiffs who took time off from work.  TXX directly pays the replacement drivers it secures.  (Armstrong Decl. ¶ 38; Baratta Decl. ¶¶ 30-32; Cunningham Decl. ¶ 53; Fernandez Decl. ¶¶ 43-44; Grant Decl. ¶ 57; Henry Decl. ¶ 42; Paul Decl. ¶ 27.)

645.     Even when Discovery Plaintiffs have tried to find their own replacement driver, TXX has not always allowed the Discovery Plaintiffs to use the replacement driver of their choice. When Paul has asked Laura Zamora, one of Defendants' declarants on this motion, to cover for him, she has told him to talk to Sangern.  When Paul has then talked to Sangern, on some occasions Sangern has said that Zamora cannot cover for Paul.  (Paul Decl. ¶¶ 30-31.)

646.     TXX has threatened to take away Discovery Plaintiffs' Routes for missing work and has in fact done so.  (Dean Decl. ¶¶ 31-32; Pagano Ex. 343 (Lewis Dep.) 141:11-23, 181:3-22; Pagano Ex. 347 (Sawhney Dep. day 2) 155:10-156:15.)

647.     TXX has required Discovery Plaintiffs to work certain days or times.  (Pagano Ex. 364 (Lindsay Dep.) 132:10-133:2; Dean Decl. ¶ 18; Henry Decl. ¶ 24; Rizzo Decl. ¶¶ 28-30.)

**J. TXX Set Vehicle Requirements**

648.     Dispatchers have told Discovery Plaintiffs what type of vehicle they should use for a Route.  (Baratta Decl. ¶¶ 25-26; Cunningham Decl. ¶¶ 18, 21; Dean Decl. ¶ 4; Henry Decl. ¶ 39; Ortellado Decl. ¶¶ 16-31; Rizzo Decl. ¶ 21.)

649.     Discovery Plaintiffs have purchased and/or attempted to purchase those types of vehicles at dispatchers' direction.  (Baratta Decl. ¶¶ 25-26; Dean Decl. ¶ 5; Henry Decl. ¶ 39; Ortellado Decl. ¶¶ 17-31.)

650.    Baratta purchased a car at a dispatcher's direction in order to take a Capital One Route, which Baratta believed would be his indefinitely.  However, unbeknownst to Baratta, the dispatcher merely wanted Baratta to cover the Route for two weeks while the regular driver was out.  After two weeks, the dispatcher took the Route away from Baratta, and Baratta realized that he had wasted his money on the car the dispatcher told him to purchase, as a car was not large enough to transport the containers that were used for non-Capital One Routes.  (Baratta Decl. ¶¶ 25-27.)

651.    In late 2018 or early 2019, TXX told Fernandez he needed to buy a bigger vehicle because the company was going to add stops to his Route, and if he didn't like it "just to go elsewhere."  (Pagano Ex. 345 (Fernandez Dep.) 64:10-65:2.)

652.    At one point, TXX instructed drivers to install tinted windows and safety locks on their vehicles.  TXX provided the locks and installation.  (Morris Decl. ¶ 35.)

653.    TXX arranged for a discounted vehicle rental for Henry when his vehicle broke down.  (Henry Decl. ¶ 40.)

## K. TXX Supervised and Directed Drivers' Work

654.    Dispatchers have instructed Discovery Plaintiffs on how to load their vehicles, how to complete paperwork, and how to use electronic scanners.  (Cunningham Decl. ¶¶ 11, 13, 39, 46; Grant Decl. ¶¶ 9, 50; Henry Decl. ¶¶ 12-13; Marin Decl. ¶¶ 5-6; Morris Decl. ¶ 36.)

655.    TXX dispatchers or supervisors sometimes rode along with the Discovery Plaintiffs or other drivers.  For example, on Cunningham's first day doing a Cardinal Route, John Hunt told the dispatcher Mateo, "Go with him [Cunningham] because I don't want him to f[---] it up."  Mateo then rode with Cunningham while he did the Cardinal Route.  (Cunningham Decl. ¶ 23.)

656.    When Portillo assigned Henry to cover a bank Route while another driver was on vacation, Portillo directed Mateo to go with Henry on that Route because Henry was new to TXX. (Henry Decl. ¶ 10.)

657.    When Lewis first started his morning Route, the dispatchers Jean and Tom each rode with him for a day so he could learn the Route.  (Pagano Ex. 343 (Lewis Dep.) 192:4-17.)

658.    On June 30, 2014, in response to customer complaints about late deliveries, Juan Baquero e-mailed the customer stating, "Oscar Arevalo, our Ops Manager will be riding with the carrier today.  We are looking into all the causes of the delays."  (Schulman Ex. 5 at TC0004494.)

659.    Dispatchers have given Discovery Plaintiffs maps and/or driving directions for new stops or Routes.  (Baratta Decl. ¶ 15; Cunningham Decl. ¶ 12; Dean Decl. ¶ 10; Fernandez Decl. ¶ 37; Grant Decl. ¶ 9; Pagano Ex. 364 (Lindsay Dep.) 15:2-16.)

660.    Dispatchers have told Discovery Plaintiffs the order in which they must make deliveries.  (Cunningham Decl. ¶¶ 23, 38; Fernandez Decl. ¶ 36; B. Gonzalez Decl. ¶ 13; Grant Decl. ¶ 46; Morris Decl. ¶ 32; Ortellado Decl. ¶¶ 27-28; Pagano Ex. 195 (May 8, 2014 Unemployment Ins. Hearing Tr.) 23:22-24:4; Pagano Ex. 360 (Armstrong Dep.) 34:8-15.)

661.    TXX requires drivers to keep their vehicle doors locked.  Dispatchers regularly remind drivers to lock their doors, and TXX dispatchers have checked to make sure drivers' vehicles' doors are locked before they leave the TXX warehouse.  (Cunningham Decl. ¶ 34; Grant Decl. ¶ 40; Morris Decl. ¶ 24; Ortellado Decl. ¶ 25.)

662.    TXX sometimes followed the Discovery Plaintiffs and other drivers to check whether their doors were locked and to ask personnel at delivery sites how the drivers were doing. (Grant Decl. ¶ 41; Marin Decl. ¶ 7; Morris Decl. ¶ 37; Dean Decl. ¶ 24.)

663.    TXX has fired drivers for leaving their vehicle doors unlocked.  (Grant Decl. ¶ 56.)

664.    At other times, dispatchers have held meetings with drivers in the morning after they caught a driver with unlocked doors to single out the driver who left his or her doors unlocked and yell at the drivers to lock their doors.  (Marin Decl. ¶ 7; *see also* Grant Decl. ¶ 55.)

665.    TXX gave the Discovery Plaintiffs TXX forms to use for returned merchandise and as a proof of delivery in lieu of a manifest.  (Fernandez Decl. ¶ 56 & Fernandez Ex. 2; Ortellado Decl. ¶ 30 & Ortellado Ex. 1.)

666.    Drivers needed permission from TXX to leave the warehouse in the morning. (Pagano Ex. 343 (Lewis Dep.) 148:2-22; Pagano Ex. 353 (Morris Dep.) 198:20-199:6; Ortellado Decl. ¶ 26.)

667.    Dispatchers checked that Discovery Plaintiffs had the correct number of totes before they left the TXX warehouse.  (Cunningham Decl. ¶ 33; Grant Decl. ¶ 40; Ortellado Decl. ¶ 24.)

668.    Dispatchers checked that Discovery Plaintiffs properly scanned their freight before they left the TXX warehouse.  (B. Gonzalez Decl. ¶ 15.)

669.    TXX monitors drivers in the TXX warehouse to make sure that drivers remove the correct freight from the conveyor belt.  (Pagano Ex. 356 (Oliveira Dep.) 40:24-41:2.)

670.    TXX requires Discovery Plaintiffs to call or text a dispatcher the times of their first and last afternoon stops.  (Armstrong Decl. ¶ 22; Cunningham Decl. ¶¶ 35-37; Fernandez Decl. ¶ 35; Henry Decl. ¶ 23; Morris Decl. ¶ 28 & Morris Ex. 1.)

671.    TXX has always required Discovery Plaintiffs to call its office if they are in an accident, have a vehicle problem, are running late, if a store they are delivering to is closed, or if they have damaged freight.  (Armstrong Decl. ¶¶ 35-36 & Armstrong Ex. 1; Cunningham Decl. ¶ 51; Dean Decl. ¶¶ 25-26; B. Gonzalez Decl. ¶ 28; Henry Decl. ¶ 38; Morris Decl. ¶¶ 38-39.)

672.     Now, TXX requires Discovery Plaintiffs to send TXX a photo of the door of any delivery location that is closed.  (Grant Decl. ¶ 50; Henry Decl. ¶ 38.)

673.     When Discovery Plaintiffs are on the road, dispatchers or supervisors call or text them to give additional assignments or instructions, check on delivery times, address delivery issues, and generally check in with them.  (Armstrong Decl. ¶¶ 32-33; Cunningham Decl. ¶ 49; Dean Decl. ¶¶ 7, 23; Fernandez Decl. ¶¶ 17-18, 24; B. Gonzalez Decl. ¶¶ 11, 13; Henry Decl. ¶ 34; Marin Decl. ¶¶ 25, 31; Morris Decl. ¶ 34; Pagano Ex. 376 at Cunningham415-416, 426, 438; Pagano Ex. 320 at Wadada 154; Pagano Ex. 104 at Fernandez778-79, 802; Pagano Ex. 345 (Fernandez Dep.) 47:10-13, 62:17-64:4; Pagano Ex. 362 (Rizzo Dep.) 100:9-21.)

674.     At one point TXX gave Discovery Plaintiffs devices equipped with GPS.  TXX tracked the Discovery Plaintiffs through these devices.  (Cunningham Decl. ¶ 35; Rizzo Decl. ¶ 36.)

675.     TXX told drivers that it conducted monthly checks on them with the Department of Motor Vehicles.  (Alexander Decl. ¶ 23 & Alexander Ex. 2.)

676.     TXX monitors replacement drivers, *i.e.*, drivers who were covering a Route that they did not normally do, closely.  On May 12, 2014, Juan Baquero sent an e-mail to customercare@txx.com to which he attached a "list of things that need to be reminded to all new carrier and to any carrier covering a route."  (Schulman Ex. 3 at TC0001558.)  The attachment stated, among other things, "Make sure that the carrier has a cell phone and a charger" and "Carrier must understand that Account Coordinators will be calling to check on the status of the route to provide the sippers [*sic*] with updates."  (*Id.* at TC0001559.)  In 2014, all TXX dispatchers and managers received e-mails send to customercare@txx.com. (Pagano Ex. 354 (Baquero Dep.) 67:16-69:2.)

677.    The attachment also stated, "Account coordinator must follow up with new carriers, or covering carriers every hour to get an update on the status of the route and to make an assessment if there is any assistance required in order to complete the route within the delivery timed [*sic*] demanded by the shippers.  If there is any need to send assistance, the account coordinators will determinate [*sic*] what stops must be removed for [*sic*] the vehicle to be assigned to other carrier." (Schulman Ex. 3 at TC1559)

678.    Consistent with the directive in that e-mail, Defendants have produced many internal TXX e-mails that provide status updates on replacement drivers.  (Schulman Ex. 4; *see also*, *e.g.*, Schulman Ex. 44.)

679.    When TXX failed to monitor replacement drivers, senior management expressed their displeasure.  For example, on May 12, 2014, in response to a customer inquiry regarding a late delivery, J. Hunt sent an e-mail to TXX staff stating, "I guess this means that we had a replacement carrier and did not check on them????   Or did and did not supply relief????" (Schulman Ex. 22.)

680.    Similarly, in January 22, 2015, in response to a customer inquiry regarding a late delivery, J. Hunt sent an e-mail to TXX staff stating, "Why didn't we monitor the replacement carrier?  A morning run that won't be finished till 5 is a problem we should have been solving hours ago!"  (Schulman Ex. 23.)

681.    TXX addresses customer complaints with drivers.  For example, on April 10, 2014, J. Hunt responded to a customer complaint about a driver with a bad attitude by stating, "We addressed this with the carrier and there should be no issues going forward.  I will have a supervisor visit the store to make sure we are getting the outcome we are looking for."  (Schulman Ex. 21; *see also*, *e.g.*, Schulman Ex. 46 at TC584 ("We have words with Saturday driver[.]"), 2018 ("I will

also have a conversation with the carrier about modifying his behavior on the stores."), 5302-5303, 6657-58, 25508-509, 32241-42, 51328-30, 136308, 18080-81, 156858-59, 200572-74.)

682.    TXX tracks drivers' "service failures," which can include not making a delivery on time, not properly filling out and returning paperwork, or not appearing for their routes.  (Pagano Ex. 354 (Baquero Dep.) 156:11-21, 157:13-159:16; Schulman Exs. 6, 7 (e-mails discussing service failures); *see also*, *e.g.*, Schulman Ex. 46 at TC97, 4627, 5302-5303, 18867-68, 20607, 22623-25, 25508-509, 44891.)

683.    On November 20, 2015, Baquero e-mailed TXX staff, "As a consequence of multiple service failures reported against this contractor, please discontinue the use of Mocca Corporation for any work other than the one that they have already contracted.  They should not cover any additional work for TXX, and please advise of this to any other contractor that uses Mocca corporation's services." (Schulman Ex. 8 at TC0165335.)

**L. TXX Dispatchers and Supervisors Threatened and Disciplined Drivers**

684.    Dispatchers and TXX supervisors/managers often yell at the Discovery Plaintiffs and other drivers.  (Baratta Decl. ¶ 21; Dean Decl. ¶ 29; Fernandez Decl. ¶¶ 38-40; Gonzalez Decl. ¶¶ 29-30, 32; Morocho Decl. ¶ 24.)

685.    As a result, some Discovery Plaintiffs do not bother speaking up for themselves because it does not seem worth the trouble, especially since nothing at TXX usually changes in response to a complaint.  (Fernandez Decl. ¶ 40.)

686.    Portillo often yelled at drivers, calling them stupid and telling them that if they did not take all of their assigned freight they had to leave their whole Route.  (*Id*. at ¶ 38; Morocho Decl. ¶ 24.)

687.     If drivers did not carry things as fast as Portillo wanted, he would yell, "Move it! Move it!"  (Morocho Decl. ¶ 24.)

688.     In fact, Portillo said that his boss paid him to "bother the drivers."  (*Id*. at ¶ 25.)

689.     When drivers complained to Portillo, he would say, the door is open, *i.e.*, if they did not like something at TXX, they should leave.  (*Id*. at ¶ 24.)

690.     Sangern yelled at drivers when Laura Zamora, one of Defendants' declarants on this motion, complained to him about another driver.  Those complaints could be about matters as minor as where drivers were parking.  (Armstrong Decl. ¶ 29.)

691.     When Fernandez objected to Sangern's taking a stop away from him, Sangern started screaming at Fernandez.  (Fernandez Decl. ¶ 39.)

692.     Arevalo regularly yelled and cursed at drivers for making late deliveries, losing items, and other problems.  He often threatened to take work away from drivers.  (B. Gonzalez Decl. ¶¶ 29, 30.)

693.     Baquero also yelled and cursed at drivers and threatened to take their work away. Sometimes he yelled at drivers for eating in the TXX warehouse in the morning instead of working. (B. Gonzalez Decl. ¶ 32.)

694.     Dispatchers have threatened to take drivers' Routes away for leaving doors open, being late to work, turning down a stop, finishing Routes late, asking for higher pay, having a problem with an employee at a delivery location, losing an item, not picking up empty totes, and making mis-deliveries.  (Baratta Decl. ¶¶ 21-22; Dean Decl. ¶¶ 28-29; Fernandez Decl. ¶¶ 32, 38; Gonzalez Decl. ¶ 29-30; Grant Decl. ¶¶ 33, 36; Henry Decl. ¶ 32; Marin Decl. ¶ 8; Morocho Decl. ¶ 24; Rizzo Decl. ¶ 16.)

695.    When Marin misdelivered some freight, Sangern said he was going to take away her Route.  After she begged to keep her Route, Sangern let Marin pay TXX for the misdelivery and keep her Route.  (Marin Decl. ¶ 24.)

696.    TXX has taken drivers' Routes away as punishment for mistakes or for questioning dispatchers.  (Alexander Decl. ¶ 10; Grant Decl. ¶ 32; Marin Decl. ¶ 9; Rizzo Decl. ¶ 24.)

697.    TXX has fined drivers.  For example, when Marin forgot to return an envelope, TXX charged her $250 to pay for another driver to pick it up.  (Pagano Ex. 361 (Marin Dep.) 41:13-42:5.)

698.    Portillo fined Henry $650 for making a misdelivery, even though Portillo never showed Henry any proof that the misdelivery actually cost $650.  (Henry Decl. ¶ 35.)

699.    TXX fined Morris $20 for arriving at the Hauppauge warehouse late.  (Morris Decl. ¶ 30 & Morris Ex. 2.)

700.    When a customer complained on February 29, 2016 about a driver who refused to pick up empty totes, Baquero sent an e-mail to John Hunt and other TXX staff stating, "What would you like to do?  Set up an example?  I think that we need We need to show the gun a couple of times.  The effect would be to our advantage."  (Schulman Ex. 10 at TC0185864.)

701.    The February 29, 2016 customer complaint to which Baquero responded did not ask for any driver to be removed from a route.  The customer merely asked "that [TXX] speak to the driver to get this resolve."  (*Id*. at TC0185865.)

702.    On October 22, 2015, John Hunt responded to a complaint from the customer Kinray about delivery issues by stating, "Obviously this was a disaster none of the protocol that we have in place was followed by the carrier.  As a result we will not be utilizing this carrier DSL1

going forward to provide service to Kinray on an emergency basis." (Schulman Ex. 24 at TC0160472.)

703.    The customer e-mails to which Hunt responded on October 22, 2015 did not ask TXX to bar any driver from making deliveries for Kinray. (*Id*. at TC160472-73.)

704.    On December 28, 2015, Juan Baquero responded to a complaint from a customer about a driver who refused to pick up empty totes by stating, "This is an unacceptable behavior, and a clear violation of the service agreement signed by the Carrier. We will be terminating our contract with this carrier." (Schulman Ex. 9 at TC0173465.)

705.    The customer e-mails to which Baquero responded on December 28, 2015 did not ask TXX to change the driver on the route at issue or to terminate any driver's contract. (*Id*. at TC0173465-66.)

**M. Dispatchers Held Meetings with Drivers**

706.    Throughout the time period relevant to this action, dispatchers have often gathered drivers in the TXX warehouses in the morning for meetings. (Cunningham Decl. ¶ 45; Dean Decl. ¶ 27; Grant Decl. ¶¶ 50-51; Henry Decl. ¶ 31; Marin Decl. ¶ 5; Morris Decl. ¶ 36; Rizzo Decl. ¶ 35.)

707.    At the meetings, dispatchers singled drivers out for mistakes that they made and warned all drivers present not to make the same mistake. (Cunningham Decl. ¶ 48; Dean Decl. ¶¶ 28-29; Grant Decl. ¶ 55; Henry Decl. ¶ 31; Marin Decl. ¶ 7; Pagano Ex. 344 (Campos Dep.) 257:8-15.)

708.    Dispatchers discussed other rules and procedures at these meetings, such as how to use the scanner, how to fill out manifests, how to handle narcotics, how to handle returns and damaged items, when to arrive at the TXX warehouse in the morning, and collecting empty totes

from delivery locations.  (Cunningham Decl. ¶ 46; Grant Decl. ¶¶ 50, 52; Henry Decl. ¶ 31; Marin Decl. ¶¶ 5-6; Morris Decl. ¶ 36; Rizzo Decl. ¶ 35; Pagano Ex. 337 (Morocho Dep.) 91:22-92:12.)

709.    At a meeting a few months ago, Sangern told the drivers that they have to send a photo of the door of any delivery location that is closed to TXX.  (Grant Decl. ¶ 50.)

710.    Dispatchers have also told drivers at meetings that they were not allowed to stop for gas or food while they were making deliveries for TXX.  (Cunningham Decl. ¶ 47; Grant Decl. ¶ 54.)

711.    At one meeting, a dispatcher told the drivers that he caught several drivers making unauthorized stops after leaving the TXX warehouse and that if he caught them again they would lose their Routes.  (Grant Decl. ¶ 55.)

## N. TXX Required Drivers to Wear Uniforms

712.    TXX used to require Discovery Plaintiffs to wear uniform items bearing the TXX logo.  (Alexander Decl. ¶¶ 11-12; Baratta Decl. ¶ 39; Cunningham Decl. ¶ 58; Fernandez Decl. ¶ 47; Morris Decl. ¶ 50-51.)

713.    One of these shirts also displayed the individual driver's name.  (Morris Decl. ¶ 50 & Morris Ex. 4; Alexander Decl. ¶ 13.)

714.    Other uniform items identified the wearer as an "Agent for TXX Transportation Services."  (Baratta Decl. ¶ 39 & Baratta Ex. 1.)

## O. TXX's Investment In Its Business

715.    From 2010 to 2016, TXX spent between $579,394.18 and $1,700,191.29 per year on rent.  Over those six years, TXX spent a total of $6,287,615.42 on rent.  (Schulman Ex. 36.)

716.    From 2010 to 2016, TXX spent $1,085,984.18 on utilities and telephone service. (*Id*.)

717.    From 2010 to 2016, TXX spent $485,401.66 on Department of Transportation equipment.  (*Id*.)

718.    From 2010 to 2016, TXX spent $16,211,460.31 on "wages" and "account coordinators."  (*Id*.)

719.    From 2010 to 2016, TXX spent $445,402.97 on vehicle repairs.  (*Id*.)

720.    From 2010 to 2016, TXX spent $377,655.90 on tolls.  (*Id*.)

721.    From 2010 to 2016, TXX spent $325,433.71 on truck and equipment rentals.  (*Id*.)

722.    From 2010 to 2016, TXX spent $870,164.73 on fuel.  (*Id*.)

723.    From 2010 to 2016, TXX spent $325,878.05 on auto leases.  (*Id*.)

724.    From 2010 to 2016, TXX's total cost of sales was $136,491,594.10.  In each of those years, TXX had a gross profit (*i.e.*, revenue minus cost of sales).  (*Id*.)

725.    From 2010 to 2016, TXX's total expenses not classified as cost of sales were $30,141,136.25.  In each of those years, TXX had annual net income of over $1 million  (*Id*.)

**P. Patricia Hunt**

726.    Patricia Hunt is the CEO and an owner of TXX.  (Pagano Ex. 365 (P. Hunt Dep. day 1) 30:19-33:2; 45:17-20.)

727.    P. Hunt made the decision to classify TXX's drivers as independent contractors rather than employees.  Before she made that decision, TXX classified its drivers as employees. (*Id*. at 20:8-14, 21:7-11, 22:15-17, 23:13-19, 38:19-39:5.)

728.    P. Hunt has remained involved in the classification of TXX's drivers as independent contractors.  In opposing Plaintiff John Dean's unemployment insurance application in 2012, P. Hunt submitted to the New York Department of Labor a letter setting forth TXX's view of why

Dean was an independent contractor rather than an employee. (Schulman Ex. 32 at Dean205-206 (entering Dean269-271 as hearing exhibit 2); *id*. at Dean243-244.)

729.    P. Hunt testified at Dean's September 19, 2012 unemployment insurance hearing that she was "the one that answered the charges" from the Department of Labor regarding Dean's unemployment insurance application. (*Id*. at Dean183, 247.)

730.    P. Hunt further testified at Dean's unemployment insurance hearing that she believed the response to his unemployment insurance application was so important that she did "all the background work on [it herself]" and went "back and forth [between Patterson and her] office for about a two-week-two and a half week period." (*Id*. at Dean 248.)

731.    With respect to hearing exhibit 2 (*Id*. at Dean269-271), P. Hunt testified, "I responded back to the Department of Labor on June 5th, by fax, and then again by mail[,]" and she identified that fax number at the bottom of hearing exhibit 2 as her office fax number. (*Id*. at Dean 244.)

732.    P. Hunt's testimony at Dean's unemployment insurance hearing was under oath. (*Id*. at Dean 240.)

733.    Although P. Hunt claimed responsibility at Dean's unemployment insurance hearing for preparing hearing exhibit 2, at her January 17, 2019 deposition in this action she denied any knowledge of that document. When presented with hearing exhibit 2 at her deposition, she stated, "I've never seen this document before." (Pagano Ex. 366 (P. Hunt dep. day 2) 16:2-18 (discussing Schulman Ex. 29).)

734.    Louis Echevarria, TXX's controller, identified P. Hunt as his "superior." (Schulman Ex. 32 at Dean200-201, 212.)

735.     Echevarria notified P. Hunt when he learned that Dean had been awarded unemployment insurance benefits because Echevarria "work[s] for her."  (*Id*. at Dean212, 215.)

736.     Echevarria testified that P. Hunt works in the same location as him, which is TXX's location at 425 B Oser Avenue, Hauppauge, NY.  (*Id*. at Dean201, 212.)

737.     P. Hunt receives e-mails from TXX's payroll service provider regarding unemployment insurance matters.  (*Id*. at Dean211, 231.)

738.     P. Hunt communicates by e-mail with TXX's customers.  (*Id*. at Dean246.)

739.     P. Hunt has signed contracts on behalf of TXX.  (Pagano Ex. 352 (J. Hunt Dep. day 2) 56:20-23 (discussing Schulman Ex. 16).)

740.     P. Hunt has authority to sign checks on behalf of TXX and in fact signed checks payable to Contractor Associates of the North East ("CANE"), the company that TXX used to pay Discovery Plaintiffs for several years.  (Schulman Ex. 41; Pagano Ex. 351 (J. Hunt Dep. day 1) 130:20-131:2, 133:21-134:6; Pagano Ex. 128 at Grant554-57 (1099s issued by CANE).)

741.     TXX has distributed memos from P. Hunt regarding Department of Motor Vehicles checks on drivers, administrative fee increases, and total annual compensation paid to Discovery Plaintiffs and other drivers.  (Alexander Decl. ¶ 23 & Alexander Ex. 2; Fernandez Decl. ¶ 55 & Fernandez Ex. 1; Morocho Decl. ¶ 46 & Morocho Ex. 1.)

742.     For much of 2019, P. Hunt was present at TXX's Hauppauge location on an almost daily basis.  (Armstrong Decl. ¶ 27.)

743.     After Richard Armstrong complained to P. Hunt in 2019 about stops that were taken away from him, he got one of those stops back.  (Armstrong Decl. ¶¶ 27-28.)

Dated: New York, New York
       February 10, 2020

<u>/s/ Denise A. Schulman</u>
Denise A. Schulman
D. Maimon Kirschenbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
212-688-5640

*Attorneys for Plaintiffs and Opt-In Plaintiffs*