**Twomey Latham**
SHEA, KELLEY, DUBIN & QUARTARARO, LLP

**Jeffrey W. Pagano**
Partner
NY, NJ & DC BARS

O:631.727.2180 x205
M:516.635.8411
jpagano@suffolklaw.com

33 West Second St.
P.O. Box 9398
Riverhead, NY 11901
suffolklaw.com

November 21, 2021

VIA ECF
The Honorable Steven I. Locke, United States Magistrate Judge
United States District Court, E.D.N.Y.
100 Federal Plaza
Central Islip, New York 11722

  Re: Cecil Thomas, et al. v. TXX Services, Inc., et al.
     U.S.D.C., E.D.N.Y. Civil Action No. 2:13-CV-02789-SIL

Dear Magistrate Judge Locke:

  Defendants, TXX Services, Inc. ("TXX") and Patricia Hunt, respond to that portion of Plantiffs' letter dated November 18, 2021 (the "Letter") [Dkt No. 274] which seeks to bring a motion for discovery sanctions.

  **Background**.  Plaintiffs' counsel have known since this case began that Discovery Plaintiffs whose driver corporations contract with TXX use a hand-held device to scan a label for each pick-up and delivery.  Electronic scanning is accomplished before loading items onto vehicles, and when items are picked up or delivered, to satisfy chain-of-custody recordkeeping required by the DEA and to support billing to customers and payments to driver corporations.  As Plaintiffs' counsel has been aware throughout the litigation, the scanner transmits wirelessly to a company called Datatrac, which maintains each scan record at Datatrac's facilities.  Datatrac serves hundreds of companies in a variety of industries.  Its proprietary software and databases are structured to support myriad features not used by TXX, at a scale far beyond that required by TXX.  Accordingly, the information received and stored by Datatrac is not maintained in a structure or format that would be readily reviewable stop by stop of each driver corporation each day, as the raw data is unrelated to each driver corporation. Instead, the raw data relates to the time of the scan across all of TXX's operations moment by moment.  Moreover, the sheer number of TXX scan records exceed the capabilities of familiar analytical tools like Microsoft Excel.

  The record is clear that not only did Plaintiffs' counsel know about the raw data maintained by Datatrac since the case began, they repeatedly discussed it with TXX throughout the discovery process and affirmatively chose not to incur the significant expense of retaining consultants with the expertise to obtain, manipulate and analyze the raw data.  Plaintiffs' counsel did not seek assistance from the Court in obtaining the raw data, nor did they subpoena the raw data directly from Datatrac or commence a meet and confer after October 25, 2017.

  The sole and dispositive issue before the Court on summary judgment was liability, concerning whether Plaintiffs were independent contractors.  After this Court denied summary judgment on that issue and allowed the parties to participate in mediation, TXX undertook to bring clarity to the mediation's discussion of potential damages.  TXX hired a nationally-respected economic consulting firm on a privileged basis, to extract, sort, reformat, and analyze the Datatrac data, and to create computer tools to permit analysis of that data.  Doing this was expensive, and



took months.  As Plaintiffs have now revealed, TXX then gave the analyzed data and tools to Plaintiffs under the protections of the parties' Mediation Agreement, so that Plaintiffs could validate and analyze it.  TXX also allowed Plaintiffs to ask questions about the data and analysis prior to the second mediation session, so that all could be well-refined prior to the actual meeting.

Consistent with the adage that no good deed goes unpunished, Plaintiffs now seek to have TXX sanctioned for undertaking this expensive and transparent effort.  In short, the analyzed data in question did not exist until TXX deployed an economic consulting firm to extract and refine the raw data for mediation.  TXX then provided it to Plaintiffs, along with computer tools to manipulate it. This Court should not even entertain Plaintiffs' sanctions motion, for these reasons:

**Violating The Sanctity Of Mediation**.  Plaintiffs should not be allowed to bring a sanctions motion, because Plaintiffs have willfully and brazenly violated the sanctity of mediation, as well as the express terms of the Mediation Agreement, as follows:

> A Party receiving documents or information in accordance with this Agreement will not use such documents or information (or any information contained in such documents), ***the fact that such documents or information were produced, or the fact that a mediation-related or settlement-related production took place at all*** for any purpose in the Action or in any other legal, arbitral, or administrative proceeding, unless and until such time as such documents or information are produced in response to a formal discovery request or disclosure obligation in said proceeding. (emphasis added)

The Mediation Agreement also includes a procedure to follow if disclosure to the Court is sought in connection with approval of a settlement; a good-faith litigant would have followed that procedure in connection with something less-consequential like a discovery motion.

Plaintiffs easily could have raised their baseless assertions about the Datatrac raw scan data in a manner that did not violate the Mediation Agreement.  Oddly, having unquestionably violated the Mediation Agreement, Plaintiffs then claim not to be able to say anything more because of the Mediation Agreement (See Letter, p. 2, n.2).  The confidentiality attendant to mediation is what makes frank and productive discussions possible and often leads to settlement.  An appropriate consequence for Plaintiffs' misconduct would be to prohibit their discovery sanctions motion.

**Violation of this Court's Individual Rules**.  Plaintiffs never discussed this particular issue with us before sending the Letter to the Court, in violation of this Court's rule 4.A.1.

**No Misconduct By Defendants**.  Every production request even possibly relating to the raw scan data was the subject of detailed objections by Defendants.  Moreover, Plaintiffs' concerns about the existing raw scan data were fully addressed at the parties' meet and confer telephone conference on various discovery disputes, conducted on October 25, 2017, including the request raised in section H of Plaintiffs' October 4, 2017 letter concerning the existing raw scan data, as well as written communications on November 6, 2017, November 13, 14 and 20, 2017.  Specifically, the undersigned and Ira Saxe advised counsel for Plaintiffs that TXX does not maintain records of each Discovery Plaintiff's hours worked.  We further advised counsel for



Plaintiffs that the raw scan data reflecting pick-up and delivery times did not show hours worked, and that the raw data was not stop-by-stop, driver corporation by driver corporation. We explained that the raw scan data only shows when and at what stop items were picked up or delivered on behalf of a driver corporation throughout the TXX platform moment by moment.  As well, discovery revealed that the individual who picked up or delivered items at any given moment could be any individual deployed by or on behalf of a driver corporation, whether or not a Discovery Plaintiff.  Further, discovery demonstrated that the activities of the Discovery Plaintiffs in the time between deliveries was their own, and may or may not reflect hours worked.  Following the October 25, 2017 meet and confer telephone conference, the parties further communicated with each other concerning these issues, as set forth above.  The undersigned sent counsel for Plaintiff a letter, dated November 2, 2017, in connection with their "letter to us, dated October 4, 2017 of [Letter, Exh. 2], our subsequent telephone conference on October 25, 2017" and other communications between counsel (Exh. A hereto).  The fact that the November 2, 2017 letter did not address the raw scan data demonstrates that, as counsel for Defendants understood it, that matter had been resolved in the meet and confer telephone conference.

We respectfully disagree with Plaintiffs' characterization of the April 19, 2021 Status Conference. There was certainly no disrespect intended to the Court or to opposing counsel in relation to this issue.  The relief that Plaintiffs intend to seek is neither warranted, necessary or appropriate.  Plaintiffs' counsel has long been aware of the existence of the raw scan data. Indeed, the words "scan(s)", "scanning" or "scanned" appeared over 400 times in the transcripts of depositions in this action. Plaintiffs had four years to move to compel production of the raw scan data, from the October 25, 2017 telephone conference, if they disagreed with Defendants' position, or could have subpoenaed it directly from Datatrac.  They chose not to do so.

In sum, Plaintiffs' counsel have known of the raw scan data since shortly after they commenced this action, if not before.  It appears that Plaintiffs' counsel did not want to expend the time and effort to extract and process volumes of raw data reflecting stops made by all driver corporations throughout the TXX business platform over the period of the statute of limitations to the present, particularly given that the case was at that time focused on the dispositive issue of independent contractor status, not damages, and neither Plaintiffs' requests nor Defendants' summary judgment submissions sought to use that data on the question of independent contractor status.  Once TXX deployed an economic consulting firm to organize the raw Datatrac data to help determine the quantum of potential damages in furtherance of mediation, TXX promptly shared this organized data – which did not exist prior to the mediation – with Plaintiffs in October 2021, paid the economic consulting firm to help answer Plaintiffs' questions.  While Plaintiffs have not requested to use the developed data for other purposes in this action, subject to Defendants' reservation of all rights to object to its use, Defendants would consider such a request.  Defendants respectfully contend that, under the circumstances, entertaining a sanctions motion is neither appropriate nor necessary. Thank you for your consideration of this response.

Respectfully submitted,

/s/ Jeffrey W. Pagano
Jeffrey W. Pagano