JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

| | |
|---|---|
| Charles Joseph | 32 Broadway, Suite 601 |
| D. Maimon Kirschenbaum | New York, NY 10004 |
| Denise Schulman | Tel: 212-688-5640 |
| Josef Nussbaum | Fax: 212-688-2548 |
| Lucas Buzzard | www.jk-llp.com |
| Leah Seliger | |
| Michael DiGiulio | |

February 21, 2022

**VIA ECF**

Hon. Steven I. Locke
United States Magistrate Judge
United States District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

   **Re: Thomas *v.* TXX Services, Inc.**
      **Case No. 13-CV-02789-SIL**

Dear Judge Locke:

  We represent the Plaintiffs in the above-referenced action. In accordance with the Court's November 22, 2021 Order, the parties submit their proposals for a trial plan.

  **I. Plaintiffs' proposal**

  Plaintiffs propose that, as an initial matter, the Court schedule four test trials. As the Court is aware, approximately 24 of the Plaintiffs have participated in discovery (the "Discovery Plaintiffs"), out of 99 total Plaintiffs in this case. Plaintiffs propose that Plaintiffs and Defendants each choose two Discovery Plaintiffs for this initial round of trials, which the trials alternating between Plaintiffs' selection and Defendants' selection.

  Fed. R. Civ. P. 42(b) provides that a court "may order a separate trial of any claim . . . or any separate issue . . . always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution . . . ." Fed. R. Civ. P. 42(b). Pursuant to this rule, federal courts have the authority to conduct "bellwether" or "test" trials. As explained by the Fifth Circuit:

> The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one […] If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts. Common issues or even general liability may also be resolved in a bellwether context in appropriate cases.

*In re Chevron U.S.A.*, 109 F.3d 1016, 1019 (5th Cir. 1997); *see also, e.g., Cty. of Suffolk v. Amerada Hess Corp.* (*In re Methyl*.), Nos. 1:00-1898, MDL 1358 (SAS), M21-88, 2007 U.S. Dist. LEXIS 45543 (S.D.N.Y. June 15, 2007) ("[E]very experienced litigator understands that there are often a handful of crucial issues on which the litigation primarily turns. A bellwether trial allows each party to present its best arguments on these issues for resolution by a trier of fact.").

Scheduling Orders requiring test trials have "achieved general acceptance by both bench and bar" because "the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts." *Chevron*, 109 F.3d at 1019; *accord In re Methyl*, 2007 U.S. Dist. LEXIS 45543, at *6 (test trial "often facilitates settlement of the remaining claims."). Here, Plaintiff propose to conduct four separate test trials to help advance the litigation and give both sides an opportunity to put litigation theories in practice and allow juries to evaluate the value of Plaintiffs' claims.[1] *See, e.g., Flores v Velocity Express, LLC*, No. 12 CV 5790 (JST) (N.D. Cal.) at Dkt. No. 188 (scheduling 3 bellwether trials in an FLSA case involving 620 opt-ins); *Davis v. Legend Energy Servs. LLC*, No. 6:13-CV-1, Minute Entry 10/7/2014 (S.D. Tex. Oct. 7, 2014) (setting 4 bellwether trials in an FLSA case involving 70 opt-ins). While these outcomes of these trials would not be binding on other Plaintiffs, they would enable the parties to better evaluate the likelihood of success of other Plaintiffs' claims and, perhaps, increase the possibility of settling those claims.

Defendants have also proposed some additional discovery for the Discovery Plaintiffs selected for trial. The parties have not yet conferred about this matter, as that proposal was presented to Plaintiffs when this letter was due. However, to the extent that Discovery Plaintiffs are required to supplement their discovery responses, Defendants should likewise be required to supplement their production of the categories of documents they previously produced, such as pay records, up to the present for Discovery Plaintiffs who continued working for TXX after the discovery period.

Plaintiffs oppose Defendants' proposal to alternate trials between Discovery and Non-Discovery Plaintiffs. No Non-Discovery Plaintiffs should proceed to trial until the trials of all Discovery Plaintiffs are complete. The Discovery Plaintiffs are essentially trial ready. Alternating between trials of Discovery Plaintiffs and Non-Discovery Plaintiffs would only serve to draw out this litigation by requiring extensive additional discovery between trials. Moreover, with the exception of four Discovery Plaintiffs who provided declarations in opposition to Defendants' initial motion for judgment on the pleadings, Defendants chose the Discovery Plaintiffs. When they did so, Defendants obviously believed that the Discovery Plaintiffs' facts were sufficiently representative of the range of fact patterns among Plaintiffs both to move for summary judgment and seek decertification of the collective. Thus, Defendants are in no way prejudiced by going to

---

[1] Defendants appear to object to Plaintiffs' proposal on the grounds that the Plaintiffs selected for trial would not be "representative" of the claims of the non-trial Plaintiffs, and they cite *In re Chevron* for this proposition. However, in *Chevron*, the Fifth Circuit explicitly permitted a trial of 30 out of 3,000 plaintiffs that would result in 30 individual judgments. 109 F.3d at 1021. This is precisely the process that Plaintiffs are proposed here: individual trials of 4 Plaintiffs that would be binding only on the Plaintiffs going to trial. The process that the *Chevron* court rejected was a trial of 30 out of 3,000 plaintiffs that would be binding on the plaintiffs who did not go to trial. *Id*. at 1020. Plaintiffs in this case have not proposed that any of the initial round of Plaintiffs' trials be binding on any other Plaintiffs. Accordingly, Defendants' reference below to *Chevron* is misplaced.

trial for the Discovery Plaintiffs first. While Plaintiffs are not opposed in theory to some degree of discovery related to Non-Discovery Plaintiffs going forward while the Discovery Plaintiffs proceed to trial, that discovery should not delay resolution of the claims of the Discovery Plaintiffs, who completed discovery in 2019.

## II. Defendants' proposal

As reflected above, Plaintiffs propose an approach where four Plaintiffs would be selected from the group of 23 "Discovery Plaintiffs" for the first round of trials to serve as so-called "bellwether trials," allegedly providing a "representative" sampling of the claims brought by 101 individual Plaintiffs. Defendants oppose this approach for two principal reasons.

*First*, the putative class has been decertified, and therefore none of the individual Plaintiffs serve in any representative capacity for any of the other Plaintiffs. Each individual case must ultimately stand or fall on its own merits.

*Second,* the method advocated by Plaintiffs would not result in the selection of "bellwether" cases that are "representative" of the claims of the 101 Plaintiffs as a whole – the very purpose upon which Plaintiffs' proposal is based. Indeed, in *In re Chevron U.S.A.*, 109 F.3d 1016, 1019 (5th Cir. 1997), the principal authority Plaintiffs cite, the Fifth Circuit rejected the approach advocated by Plaintiffs. In *Chevron,* the district court approved a process where a total of 30 cases out of a total of 3,000 were to be selected to be tried first, with the plaintiffs selecting 15 cases and the defendants selecting the other 15. As the Fifth Circuit correctly determined, a process approved by the district court that permits each side to "cherry pick" the first cases to be tried would not yield a representative sampling of the plaintiffs' claims as a whole:

> Whatever may be said about the trial contemplated by the district court's December 19, 1996 order, one thing is clear. It is not a bellwether trial. It is simply a trial of fifteen (15) of the "best" and fifteen (15) of the "worst" cases contained in the universe of claims involved in this litigation. There is no pretense that the thirty (30) cases selected are representative of the 3,000 member group of plaintiffs.

109 F.3d at 1019. Here, any individual Discovery Plaintiff's claims are not necessarily representative of the claims of any other Discovery Plaintiff, much less representative of the claims of the remaining 78 non-Discovery Plaintiffs. The facts and legal issues relating to any individual Plaintiff's claims are likely to be extremely fact specific, which is precisely why the parties recognized that decertification of the FLSA collective was appropriate and the Plaintiff class was unlikely to be certified. Permitting each party to select their two "best" cases from the group of Discovery Plaintiffs (as each side could be expected to do pursuant to Plaintiffs' suggested approach), moreover, would increase the likelihood that the cases selected would be "outliers" relative to the Plaintiffs' claims as a whole.

While Defendants oppose the "bellwether trial" approach advocated by Plaintiffs, Defendants fully recognize that (1) the parties and the Court must identify a fair, effective and efficient means by which to adjudicate all of the Plaintiffs' claims; and (2) the parties may benefit

from knowing the results of the initial sets of claims that are adjudicated as they assess the remaining claims and their respective settlement positions. With that in mind, Defendants propose the following method for scheduling Plaintiffs' claims for trial.

Recognizing that discovery has already been undertaken with respect to the Discovery Plaintiffs, Defendants agree that it makes sense, for efficiency reasons, to select claims for the first round of trials from the group of Discovery Plaintiffs. Accordingly, Defendants agree with Plaintiffs that the parties should select four Plaintiffs from the group of 23 Discovery Plaintiffs for the first round of trials. Defendants propose, however, a different method for selecting the initial trials. Defendants propose that each party identify four Plaintiffs for the initial round of trials from among the Discovery Plaintiffs. Thereafter, Plaintiffs would select two Plaintiffs from the group of four that Defendants identified, and Defendants would select two Plaintiffs from the group of four that Plaintiffs identified. The four selected cases would then proceed to trial in alternating fashion, starting with the first Plaintiff selected by Defendants (from Plaintiffs' initial group of four), followed by the first Plaintiff selected by Plaintiffs (from Defendants initial group of four). Defendants propose as well that the Discovery Plaintiffs selected for trial through this process update their written discovery and document production covering the remaining period of time that the applicable Driver Corporations were engaged by TXX.

Defendants further propose that four Plaintiffs be selected from the remaining group of 78 non-Discovery Plaintiffs for the next round of trials. The four Plaintiffs selected from the group of non-Discovery Plaintiffs would be selected on a random basis at the same time that the parties select the Discovery Plaintiffs for the first round of trials. To avoid unnecessary delay, Defendants propose that the parties initiate written discovery with respect to the four non-Discovery Plaintiffs within ten days of their selection, with the written discovery to be completed prior to the end of the first round of trials. Defendants further propose that each of the four identified non-Discovery Plaintiffs would be scheduled for deposition within 45 days of the competition of the first round of trials (absent the parties being able to agree to earlier deposition dates), thereby enabling the second round of trials to begin within 60 days of the completion of the first round of trials. Plaintiffs' concerns regarding discovery for the non-Discovery Plaintiffs are misplaced. Such discovery would be very limited, based on the discovery already conducted on the Discovery Plaintiffs, which consisted of one deposition of each Discovery Plaintiff, interrogatories and document production, which would be utilized for each non-Discovery Plaintiff.

Defendants propose that this same method be utilized, in alternating fashion (selecting four cases from the group of remaining Discovery Plaintiffs and then four cases from non-Discovery Plaintiffs) until all of Plaintiffs' claims are litigated or the parties reach an amicable settlement.

Plaintiffs oppose the scheduling of trials as to the Non-Discovery Plaintiffs, contending that by choosing the Discovery Plaintiffs for deposition and discovery Defendants deemed them to be representative of all Plaintiffs. There is absolutely no basis whatsoever for this conclusion. At no time did Defendants even suggest, much less assert, that the Discovery Plaintiffs were representative in any way. Indeed, to the contrary, it has been Defendants' position that each Plaintiff must individually stand or fall as to independent contractor status. Allowing each Plaintiff an opportunity for selection to participate in a trial by including both Discovery Plaintiffs and the remainder of the Plaintiffs provides a better avenue to secure an examination of the multiple types

of independent contractors at issue.  This examination allows the Court to analyze the entire scope of the compliant TXX independent contractor platform, which results in different types of independent contractors that exercise different business judgments effectuating different business strategies.  These independent contractor strategies include, but are not limited to, deploying multiple vehicles and engaging multiple other independent contractors to provide transportation services, choosing to play a minimal role, if any, in the provision of transportation services by subcontracting to other independent contractors, and various other types of business strategies.

                Respectfully submitted,

                /s/ Denise A. Schulman
                Denise A. Schulman


cc: All Counsel (via ECF)